bfcoa supl elc.frm

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | |
| | | Chapter 13 |
| Gabriel Bravo | : | |
| | : | Bankruptcy No. 21-12926 |
| | : | Adversary No. |
| | : | Civil Action No. 22-4820 |

## SUPPLEMENTAL TRANSMISSION OF DOCUMENTS
## RE: CERTIFICATE OF APPEAL FROM ORDER OF
## THE BANKRUPTCY JUDGE ENTERED
## 10/18/2022 (#106) & 11/22/2022 (#118)
## ENTERED ON THE DOCKET 10/19/2022 (#106) & 11/22/2022 (#118)

I, Timothy B. McGrath, Clerk of the U.S. Bankruptcy Court, Eastern District of Pennsylvania, herewith electronically transmit the supplemental record on appeal filed 12/04/2022 and certify that the above proceeding was properly before the Honorable Magdeline D. Coleman, Bankruptcy Judge.

For the Court

Timothy B. McGrath
Clerk

By:  Antoinette Stevenson
Deputy Clerk

**Counsel of Record**

David A. Scholl, Esquire
Law Office of David A. Scholl
512 Hoffman Street Philadelphia, PA 19148
Counsel for Debtor, Gabriel Bravo/Appellant

Justin L. Krik, Esquire
JLK Law PLLC d/b/a Krik Law
1500 JFK Blvd.

Suite 630
Philadelphia, PA 19102
Counsel for Creditor E-Z Cashing, LLC

Kenneth E. West, Esquire
Office of the Chapter 13 Standing Trustee
1234 Market Street
Suite 1813
Philadelphia, PA 19107
Chapter 13 Trustee

United States Trustee
Office of the United States Trustee Robert
N.C. Nix Federal Building
900 Market Street
Suite 320
Philadelphia, PA 19107

Repeat−PAEB, RepeatPACER, APPEAL

# U.S. Bankruptcy Court
## Eastern District of Pennsylvania (Philadelphia)
## Bankruptcy Petition #: 21−12926−mdc

*Date filed:* 10/28/2021
*Deadline for filing claims:* 01/06/2022
*Deadline for filing claims (govt.):* 04/26/2022

*Assigned to:* Chief Judge Magdeline D. Coleman
Chapter 13
Voluntary
Asset

*Debtor*
**Gabriel Bravo**
1168 South 9th Street
Philadelphia, PA 19147
PHILADELPHIA−PA
SSN / ITIN: xxx−xx−6638

represented by **DAVID A. SCHOLL**
Law Office of David A. Scholl
512 Hoffman Street
Philadelphia, PA 19148
610 550 1765
Email: judgescholl@gmail.com

*Trustee*
**KENNETH E. WEST**
Office of the Chapter 13 Standing Trustee
1234 Market Street − Suite 1813
Philadelphia, PA 19107
215−627−1377

represented by **KENNETH E. WEST**
Office of the Chapter 13 Standing
Trustee
1234 Market Street − Suite 1813
Philadelphia, PA 19107
215−627−1377
Fax : 215−627−6299
Email: ecfemails@ph13trustee.com

*U.S. Trustee*
**United States Trustee**
Office of United States Trustee
Robert N.C. Nix Federal Building
900 Market Street
Suite 320
Philadelphia, PA 19107
(215)597−4411

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 10/28/2021 | | 1 | Chapter 13 Voluntary Petition for Individual . Fee Amount $313 Filed by Gabriel Bravo. Government Proof of Claim Deadline: 04/26/2022. Atty Disclosure Statement due 11/12/2021. Chapter 13 Plan due by 11/12/2021. Schedules AB−J due 11/12/2021. Statement of Financial Affairs due 11/12/2021. Summary of Assets and Liabilities Form B106 due 11/12/2021. Incomplete Filings due by 11/12/2021. (SCHOLL, DAVID) (Entered: 10/28/2021) |
| 10/28/2021 | | 2 | Matrix List of Creditors Filed. Number of pages filed: 2, Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo. (SCHOLL, DAVID) (Entered: 10/28/2021) |
| 10/28/2021 | | 3 | Statement of Social Security Number Received. Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo. (SCHOLL, DAVID) (Entered: 10/28/2021) |

| | | | |
|---|---|---|---|
| 10/28/2021 | | | Receipt of Voluntary Petition (Chapter 13)( 21−12926) [misc,volp13a] ( 313.00) Filing Fee. Receipt number A23697811. Fee Amount $ 313.00. (re: Doc# 1) (U.S. Treasury) (Entered: 10/28/2021) |
| 10/28/2021 | | 4 | Certificate of Credit Counseling Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo. (SCHOLL, DAVID) (Entered: 10/28/2021) |
| 10/29/2021 | | 5 | Order Entered the debtor having failed to file or submit with the petition all of the documents required by Fed. R. Bankr.P.1007, It is hereby ORDERED that this case **MAY BE DISMISSED WITHOUT FURTHER NOTICE** if the documents listed are not filed by deadlines listed: Means Test Calculation Form 122C−2 −If Applicable− Due: 11/12/2021. Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period Form 122C−1 Due 11/12/2021. Atty Disclosure Statement due 11/12/2021. Chapter 13 Plan due by 11/12/2021. Schedules AB−J due 11/12/2021. Statement of Financial Affairs due 11/12/2021. Summary of Assets and Liabilities Form B106 due 11/12/2021. Any request for an extension of time must be filed prior to the expiration of the deadlines listed. (D., Tasha) (Entered: 10/29/2021) |
| 10/29/2021 | | | Name of Trustee assigned to case: KENNETH E. WEST. (D., Tasha) (Entered: 10/29/2021) |
| 10/29/2021 | | 6 | Motion to Extend Automatic Stay Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). (SCHOLL, DAVID) (Entered: 10/29/2021) |
| 10/29/2021 | | 7 | Notice of (related document(s): 6 Motion to Extend Automatic Stay ) Filed by Gabriel Bravo. Hearing scheduled 11/23/2021 at 10:30 AM at nix2 − Courtroom #2. (SCHOLL, DAVID) (Entered: 10/29/2021) |
| 10/31/2021 | | 8 | BNC Certificate of Mailing − Voluntary Petition. Number of Notices Mailed: (related document(s) (Related Doc # 5)). No. of Notices: 1. Notice Date 10/31/2021. (Admin.) (Entered: 11/01/2021) |
| 11/01/2021 | | 9 | Entry/Notice of Appearance and Request for Notice by JUSTIN L. KRIK Filed by JUSTIN L. KRIK on behalf of E−Z Cashing, LLC. (KRIK, JUSTIN) **Modified on 11/2/2021−To add wording to reflect PDF**. (D., Tasha). (Entered: 11/01/2021) |
| 11/04/2021 | | 10 | Disclosure of Compensation of Attorney for Debtor in the amount of $1000 Debtor Gabriel Bravo Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo. (SCHOLL, DAVID) (Entered: 11/04/2021) |
| 11/05/2021 | | 11 | Response to Motion to Extend Automatic Stay filed by Debtor Gabriel Bravo Filed by E−Z Cashing, LLC (related document(s)6). (Attachments: # 1 Service List # 2 Proposed Order) (KRIK, JUSTIN) (Entered: 11/05/2021) |
| 11/05/2021 | | 12 | Schedules A/B − J ,*Summaries, and Statement of Financial Affairs* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo. (SCHOLL, DAVID) (Entered: 11/05/2021) |
| 11/05/2021 | | 13 | Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period for 3 Years Form 122C−1. Disposable Income Is Determined Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo. (SCHOLL, DAVID) (Entered: 11/05/2021) |

| | | | |
|---|---|---|---|
| 11/05/2021 | | <u>14</u> | Chapter 13 Plan Filed by Gabriel Bravo. (SCHOLL, DAVID) (Entered: 11/05/2021) |
| 11/10/2021 | | <u>15</u> | Meeting of Creditors. The Debtor has filed a Plan. This Plan proposes payment to the trustee of $100.00 per month for 36 months. Filed by KENNETH E. WEST. 341(a) meeting to be held on 12/15/2021 at 09:30 AM at ALTERNATE TELEPHONIC CONFERENCE (For Trustee Use Only). Objection to Dischargeability of Certain Debts due: 2/13/2022. Proofs of Claims due by 1/6/2022. Government Proof of Claim Deadline: 04/26/2022. Last day to Object to Confirmation 12/27/2021.Confirmation Hearing scheduled 1/6/2022 at 09:30 AM at nix2 − Courtroom #2. (WEST, KENNETH) (Entered: 11/10/2021) |
| 11/12/2021 | | <u>16</u> | BNC Certificate of Mailing − Meeting of Creditors. Number of Notices Mailed: (related document(s) (Related Doc # <u>15</u>)). No. of Notices: 11. Notice Date 11/12/2021. (Admin.) (Entered: 11/13/2021) |
| 11/15/2021 | | <u>17</u> | The upcoming 341(a) meeting is scheduled to be held remotely..For participation by telephone, please call and to join the meeting.. More information can be found in the attached pdf document.. (WEST, KENNETH) (Entered: 11/15/2021) |
| 11/19/2021 | | <u>18</u> | Objection to Claim Number 1 by Claimant EZ Cashing, LLC. Filed by Gabriel Bravo. (SCHOLL, DAVID) (Entered: 11/19/2021) |
| 11/19/2021 | | <u>19</u> | Notice of Objection to claim *of EZ Cashing, LLC* Filed by Gabriel Bravo (related document(s)<u>18</u>). Hearing scheduled 1/5/2022 at 10:30 AM at nix2 − Courtroom #2. (SCHOLL, DAVID) (Entered: 11/19/2021) |
| 11/22/2021 | | <u>20</u> | Hearing RESCHEDULED <u>6</u> Motion to Extend Automatic Stay Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). Hearing scheduled 1/6/2022 at 11:00 AM at nix2 − Courtroom #2. (G., Eileen) (Entered: 11/22/2021) |
| 11/22/2021 | | 21 | Hearing RESCHEDULED on <u>18</u> Objection to Claim Number 1 by Claimant EZ Cashing, LLC. Filed by Gabriel Bravo. filed by Debtor Gabriel Bravo. Hearing RE−scheduled 1/6/2022 at 11:00 AM at nix2 − Courtroom #2. (G., Eileen) (Entered: 11/22/2021) |
| 11/23/2021 | | 22 | Hearing Continued on <u>6</u> Motion to Extend Automatic Stay Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel).Hearing scheduled 1/6/2022 at 11:00 AM at nix2 − Courtroom #2. (G., Eileen) (Entered: 11/23/2021) |
| 11/23/2021 | | <u>23</u> | Order entered Granting Motion to Extend Automatic Stay(Related Doc # <u>6</u>. A further hearing on the Motion shall be held on January 6, 2022, at 11:00 AM in Bankruptcy Courtroom No. 2, Robert N.C. Nix Federal Building & Courthouse, 900 Market Street, Second Floor, Philadelphia Pennsylvania to consider further extension of the automatic stay. Counsel for Debtor shall serve this Order on all interested parties by Electronic Means and/or first class mail. (D., Virginia) (Entered: 11/23/2021) |
| 11/23/2021 | | 24 | Hearing Set <u>6</u> Motion to Extend Automatic Stay Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). Hearing scheduled 1/6/2022 at 11:00 AM at nix2 − Courtroom #2. (D., Virginia) (Entered: 11/23/2021) |
| 11/24/2021 | | <u>25</u> | |

| | | | |
|---|---|---|---|
| | | | BNC Certificate of Mailing − Hearing Set. Number of Notices Mailed: (related document(s) (Related Doc # 20)). No. of Notices: 2. Notice Date 11/24/2021. (Admin.) (Entered: 11/25/2021) |
| 11/25/2021 | | 26 | BNC Certificate of Mailing − PDF Document. (related document(s) (Related Doc # 23)) No. of Notices: 11. Notice Date 11/25/2021. (Admin.) (Entered: 11/26/2021) |
| 11/30/2021 | | 27 | Monthly Operating Report for Filing Period Initial Certification of Business Debtor Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo. (SCHOLL, DAVID) (Entered: 11/30/2021) |
| 12/07/2021 | | 28 | Monthly Operating Report for Filing Period November, 2021 Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo. (SCHOLL, DAVID) (Entered: 12/07/2021) |
| 12/13/2021 | | 29 | Response to Objection to Claim filed by Debtor Gabriel Bravo Filed by E−Z Cashing, LLC (related document(s)18). (Attachments: # 1 Exhibit # 2 Proposed Order # 3 Service List) (KRIK, JUSTIN) (Entered: 12/13/2021) |
| 12/16/2021 | | | Meeting of Creditors Held and Concluded on: 12/15/2021. (WEST, KENNETH) (Entered: 12/16/2021) |
| 12/21/2021 | | 30 | Amended Chapter 13 Plan Filed by Gabriel Bravo (related document(s)14). (SCHOLL, DAVID) (Entered: 12/21/2021) |
| 12/21/2021 | | 31 | Amended Schedule J − Your Expenses Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo. (SCHOLL, DAVID) (Entered: 12/21/2021) |
| 01/05/2022 | | 32 | Exhibit *EXHIBITS IN SUPPORT OF MOTION TO EXTEND STAY. COPIES HAVE BEEN PROVIDED TO RESPONDENT. D−1, D−2, D−3.* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)6). (SCHOLL, DAVID) (Entered: 01/05/2022) |
| 01/05/2022 | | 33 | Certificate of Service *of Motion to Extend Automatic Stay and Court's Order of November 23, 2021* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)6). (SCHOLL, DAVID) (Entered: 01/05/2022) |
| 01/06/2022 | | 34 | Confirmation Hearing scheduled 2/10/2022 at 09:30 AM at Courtroom #2. (D., Tasha) (Entered: 01/06/2022) |
| 01/06/2022 | | 35 | Hearing Continued on 6 Motion to Extend Automatic Stay Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). filed by Debtor Gabriel Bravo. Trial scheduled 2/15/2022 at 01:00 PM at Courtroom #2. (D., Tasha) (Entered: 01/06/2022) |
| 01/06/2022 | | 36 | Hearing Continued on 18 Objection to Claim Number 1 by Claimant EZ Cashing, LLC. Filed by Gabriel Bravo. filed by Debtor Gabriel Bravo. Trial scheduled 2/15/2022 at 01:00 PM at Courtroom #2. (D., Tasha) (Entered: 01/06/2022) |
| 01/07/2022 | | 37 | Proposed Order Re: *Continuing Hearing and Extending Stay* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)6). (SCHOLL, DAVID) (Entered: 01/07/2022) |
| 01/10/2022 | | 38 | |

| | | | |
|---|---|---|---|
| | | | Order: It is hereby ORDERED that pending further order of this court the automatic stay is EXTENDED with respect to all creditors who were served with the Motion or Notice of the Motion and shall remain in effect until February 15, 2022, unless modified by the court in accordance with 11 U.S.C. section 362(d) and Bankruptcy Rule 4001(a) and a further hearing on the Motion shall be held on February 15, 2022, at 1:00 PM in Bankruptcy Courtroom No. 2 to consider further extension of the automatic stay. (related document(s)6). (S., Antoinette) (Entered: 01/10/2022) |
| 01/12/2022 | | 39 | BNC Certificate of Mailing − PDF Document. (related document(s) (Related Doc # 38)). No. of Notices: 1. Notice Date 01/12/2022. (Admin.) (Entered: 01/13/2022) |
| 01/23/2022 | | 40 | Order governing procedures at evidentiary hearing conducted remotely by video conference. (related document(s)6, 18). (S., Antoinette) (Entered: 01/24/2022) |
| 01/24/2022 | | 41 | Entry of Appearance and Request for Notice by PAMELA ELCHERT THURMOND Filed by PAMELA ELCHERT THURMOND on behalf of CITY OF PHILADELPHIA. (THURMOND, PAMELA) **Modified on 1/25/2022 to change text to match PDF document.** (S., Antoinette). (Entered: 01/24/2022) |
| 01/26/2022 | | 42 | BNC Certificate of Mailing − PDF Document. (related document(s) (Related Doc # 40)). No. of Notices: 1. Notice Date 01/26/2022. (Admin.) (Entered: 01/27/2022) |
| 02/10/2022 | | 43 | Pre−Trial Statement Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo. (SCHOLL, DAVID) (Entered: 02/10/2022) |
| 02/10/2022 | | 44 | Document in re: *Part II of Two Parts.Pre−Trial Statement including Exhibit and Witness Lists(see Part I)* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)6). (SCHOLL, DAVID) (Entered: 02/10/2022) |
| 02/10/2022 | | 45 | Confirmation Hearing Continued on 15 Confirmation Hearing scheduled 3/10/2022 at 09:30 AM at Courtroom #2. (S., Antoinette) (Entered: 02/10/2022) |
| 02/10/2022 | | 46 | **INCORRECT ENTRY−WRONG CASE NUMBER ON ATTACHMENT**Pre−Trial Statement Filed by JUSTIN L. KRIK on behalf of E−Z Cashing, LLC. (KRIK, JUSTIN) Modified on 2/11/2022 (S., Antoinette). (Entered: 02/10/2022) |
| 02/12/2022 | | 47 | Motion to Sell Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). (SCHOLL, DAVID) (Entered: 02/12/2022) |
| 02/13/2022 | | 48 | Notice of (related document(s): 47 Motion to Sell ) *Motion for Permission to Sell Real Estate* Filed by Gabriel Bravo. Hearing scheduled 3/8/2022 at 11:30 AM at Courtroom #2. (SCHOLL, DAVID) (Entered: 02/13/2022) |
| 02/15/2022 | | 49 | Order: It is hereby ORDERED that pending further order of this court, the automatic stay is EXTENDED with respect to all creditors who were served with the Motion or Notice of the Motion and shall remain in effect until March 8, 2022, unless modified by the court and a further hearing is scheduled for 3/8/2022 at 11:30 AM at Courtroom #2. re:6 (S., Antoinette) (Entered: 02/16/2022) |

| | | | |
|---|---|---|---|
| 02/15/2022 | | 50 | Evidentiary Hearing held and hrg Continued on 6 Motion to Extend Automatic Stay Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel).. Hearing scheduled 3/8/2022 at 11:30 AM at Courtroom #2. (simultaneous briefs to be filed by 3/1/22 5 p.m.) (G., Eileen) (Entered: 02/16/2022) |
| 02/15/2022 | | 51 | Evidentiary Hearing Held on 18 Objection to Claim Number 1 by Claimant EZ Cashing, LLC. Filed by Gabriel Bravo. filed by Debtor Gabriel Bravo (related document(s),18). Held Under Advisement; simultaneous briefs to be filed by 3/18/22 5:00 p.m. (G., Eileen) (Entered: 02/16/2022) |
| 02/18/2022 | | 52 | BNC Certificate of Mailing − PDF Document. (related document(s) (Related Doc # 49)). No. of Notices: 1. Notice Date 02/18/2022. (Admin.) (Entered: 02/19/2022) |
| 03/01/2022 | | 53 | Brief *in Support of Motion to Extend Automatic Stay* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)6). (SCHOLL, DAVID) (Entered: 03/01/2022) |
| 03/02/2022 | | 54 | Response to Motion to Sell filed by Debtor Gabriel Bravo Filed by CITY OF PHILADELPHIA (related document(s)47). (Attachments: # 1 Certificate of Service) (THURMOND, PAMELA) (Entered: 03/02/2022) |
| 03/04/2022 | | 55 | Motion to Compel *Responses to Discovery to E−Z Cashing, LLC* Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). (Attachments: # 1 Exhibit Discovery) (SCHOLL, DAVID) (Entered: 03/04/2022) |
| 03/04/2022 | | 56 | Notice of (related document(s): 55 Motion to Compel *Responses to Discovery to E−Z Cashing, LLC*) Filed by Gabriel Bravo. Hearing scheduled 3/29/2022 at 10:30 AM at Courtroom #2. (SCHOLL, DAVID) **Modified on 3/7/2022−See corrective entry dated 3/7/2022.** (S., Antoinette). (Entered: 03/04/2022) |
| 03/05/2022 | | 57 | Monthly Operating Report for Filing Period December 2021 − February 2022 *(12/21, 01/22, 02/22)* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo. (SCHOLL, DAVID) (Entered: 03/05/2022) |
| 03/05/2022 | | 58 | Pre−Confirmation Certification of Compliance with Post Petition Obligations in Accordance with 11 U.S.C. Section 1325 (a)(8) and (a)(9) Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)30). (SCHOLL, DAVID) (Entered: 03/05/2022) |
| 03/07/2022 | | | Corrective Entry re: Changed text from telephone hearing to courtroom location #2 per PDF document. (related document(s)56). (S., Antoinette) (Entered: 03/07/2022) |
| 03/08/2022 | | 59 | Hearing Continued on 47 Motion to Sell Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel).. Hearing scheduled 4/5/2022 at 11:00 AM at Courtroom #2. (G., Eileen) (Entered: 03/08/2022) |
| 03/08/2022 | | 60 | Hearing Continued on 6 Motion to Extend Automatic Stay Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). Hearing scheduled 4/5/2022 at 11:00 AM at Courtroom #2. (G., Eileen) (Entered: 03/08/2022) |

| | | | |
|---|---|---|---|
| 03/08/2022 | | 61 | Order: It is hereby ORDERED that pending further order of this court, the automatic stay is EXTENDED with respect to all creditors who were served with the Motion or Notice of the Motion and shall remain in effect until April 5, 2022, unless modified by the court and a further hearing is scheduled for 4/5/2022 at 11:30 AM at Courtroom #2. (related document(s)6). (S., Antoinette) (Entered: 03/08/2022) |
| 03/10/2022 | | 62 | Confirmation Hearing Continued on 15 Confirmation Hearing scheduled 4/7/2022 at 09:30 AM at Courtroom #2. (S., Antoinette) (Entered: 03/10/2022) |
| 03/10/2022 | | 63 | BNC Certificate of Mailing − PDF Document. (related document(s) (Related Doc # 61)). No. of Notices: 0. Notice Date 03/10/2022. (Admin.) (Entered: 03/11/2022) |
| 03/18/2022 | | 64 | Brief *of Debtor Addressing His Objections to the Proof of Claim of E−Z Cashing, LLC* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo. (SCHOLL, DAVID) (Entered: 03/18/2022) |
| 03/18/2022 | | 65 | Brief *in Opposition to Debtor's Objections* Filed by JUSTIN L. KRIK on behalf of E−Z Cashing, LLC (related document(s) 51 ). (KRIK, JUSTIN) (Entered: 03/18/2022) |
| 03/22/2022 | | 66 | Second Amended Chapter 13 Plan Filed by Gabriel Bravo (related document(s)30). (SCHOLL, DAVID) (Entered: 03/22/2022) |
| 03/23/2022 | | 67 | Certificate of Service *of Motion to compel Discovery from E−Z Cashing, LLC* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)55). (SCHOLL, DAVID) (Entered: 03/23/2022) |
| 03/23/2022 | | 68 | Certificate of No Response to *Debtor's Motion Compel Discovery from E−Z Cashing, LLC* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)55). (SCHOLL, DAVID) (Entered: 03/23/2022) |
| 03/24/2022 | | 69 | Response to Motion to Compel filed by Debtor Gabriel Bravo Filed by E−Z Cashing, LLC (related document(s)55). (Attachments: # 1 Exhibit Discovery Responses) (KRIK, JUSTIN) (Entered: 03/24/2022) |
| 03/29/2022 | | 70 | Hearing Continued on 55 Motion to Compel *Responses to Discovery to E−Z Cashing, LLC* Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). . Hearing scheduled 4/7/2022 at 11:00 AM at Courtroom #1. (G., Eileen) (Entered: 03/29/2022) |
| 03/30/2022 | | 71 | Objection to Confirmation of Plan Filed by PAMELA ELCHERT THURMOND on behalf of CITY OF PHILADELPHIA (related document(s)66). (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Certificate of Service) (THURMOND, PAMELA) (Entered: 03/30/2022) |
| 04/04/2022 | | 72 | **INCORRECT ENTRY**Response to Response filed by Creditor E−Z Cashing, LLC *Withdrawn* Filed by E−Z Cashing, LLC (related document(s)11). (KRIK, JUSTIN) **Modified on 4/5/2022−This entry has been re docketed using the correct event code.** (S., Antoinette). (Entered: 04/04/2022) |
| 04/04/2022 | | 73 | **CORRECT ENTRY**Praecipe to Withdraw E−Z Cashing, LLC's Response to Debtor's Motion for Continuance of the Stay beyond thirty (30) day period Filed by JUSTIN L. KRIK on behalf of E−Z Cashing, |

| | | | |
|---|---|---|---|
| | | | LLC (related document(s)11). (S., Antoinette) (Entered: 04/05/2022) |
| 04/05/2022 | | 74 | Hearing Continued on 47 Motion to Sell Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). Bravo. Hearing scheduled 6/2/2022 at 11:00 AM at Courtroom #2. (G., Eileen) (Entered: 04/05/2022) |
| 04/05/2022 | | 75 | Hearing Held on 6 Motion to Extend Automatic Stay Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). (related document(s),6). ORDER to be entered (G., Eileen) (Entered: 04/05/2022) |
| 04/05/2022 | | 76 | Order: It is hereby ORDERED that the Motion is GRANTED. It is hereby ORDERED that the automatic stay in this case is extended beyond thirty (30) days after the duration of this case as to ALL creditors of the Debtor unless relief from same is granted. (Related Doc # 6 (S., Antoinette) (Entered: 04/05/2022) |
| 04/07/2022 | | 77 | Order: It is Ordered, Adjudged and Decreed that the Motion to Compel the First Set of Requests for Discovery is DENIED WITHOUT PREJUDICE. (Related Doc # 55, 69) (S., Antoinette) (Entered: 04/07/2022) |
| 04/07/2022 | | 78 | Confirmation Hearing Continued on 15 Confirmation Hearing scheduled 6/2/2022 at 09:30 AM at Courtroom #2. (S., Antoinette) (Entered: 04/07/2022) |
| 04/07/2022 | | 79 | Hearing Held on 55 Motion to Compel Responses to Discovery to E−Z Cashing, LLC Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). Motion denied. Order to be entered. (S., Antoinette) (Entered: 04/07/2022) |
| 04/07/2022 | | 80 | BNC Certificate of Mailing − PDF Document. (related document(s) (Related Doc # 76)). No. of Notices: 1. Notice Date 04/07/2022. (Admin.) (Entered: 04/08/2022) |
| 04/09/2022 | | 81 | BNC Certificate of Mailing − PDF Document. (related document(s) (Related Doc # 77)). No. of Notices: 1. Notice Date 04/09/2022. (Admin.) (Entered: 04/10/2022) |
| 06/02/2022 | | 82 | Confirmation Hearing Continued on 15 Confirmation Hearing scheduled 7/14/2022 at 09:30 AM at Courtroom #2. (S., Antoinette) (Entered: 06/02/2022) |
| 06/02/2022 | | 83 | Hearing Continued on 47 Motion to Sell Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). Hearing scheduled 6/30/2022 at 11:00 AM at Courtroom #2. (S., Antoinette) (Entered: 06/02/2022) |
| 06/29/2022 | | 84 | **INCORRECT**Amended Document *SCHEDULE A/B: PROPERTY* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)76). (SCHOLL, DAVID) Modified on 6/30/2022 (J., Randi). (Entered: 06/29/2022) |
| 06/29/2022 | | 85 | **CORRECT** Schedule A/B , Schedule C Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo . (J., Randi) (Entered: 06/30/2022) |
| 06/30/2022 | | 86 | Hearing Held on 47 Motion to Sell Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). filed by Debtor Gabriel Bravo (related document(s),47). Motion to sell withdrawn. (D., Tasha) (Entered: |

| | | | |
|---|---|---|---|
| | | | 06/30/2022) |
| 07/14/2022 | | 87 | Confirmation Hearing scheduled 8/18/2022 at 11:00 AM at Courtroom #2. (D., Tasha) (Entered: 07/14/2022) |
| 07/20/2022 | | 88 | Second Motion to Sell Property Under Section 363(b), Rule 3004 Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). (SCHOLL, DAVID) (Entered: 07/20/2022) |
| 07/20/2022 | | 89 | Notice of (related document(s): 88 Second Motion to Sell Property Under Section 363(b), Rule 3004 ) Filed by Gabriel Bravo. Hearing scheduled 8/18/2022 at 11:00 AM at Courtroom #2. (SCHOLL, DAVID) **Modified on 7/21/2022−See corrective entry dated 7/21/2022.** (S., Antoinette). (Entered: 07/20/2022) |
| 07/21/2022 | | | Corrective Entry re: Changed location per PDF document. (related document(s)89). (S., Antoinette) (Entered: 07/21/2022) |
| 08/18/2022 | | 90 | Confirmation Hearing scheduled 9/15/2022 at 11:00 AM at Courtroom #2. (D., Tasha) (Entered: 08/18/2022) |
| 08/18/2022 | | 91 | Hearing Continued on 88 Second Motion to Sell Property Under Section 363(b), Rule 3004 Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). filed by Debtor Gabriel Bravo. Hearing scheduled 9/15/2022 at 11:00 AM at Courtroom #2. (D., Tasha) (Entered: 08/18/2022) |
| 09/15/2022 | | 92 | Confirmation Hearing scheduled 9/29/2022 at 11:00 AM at Courtroom #2. (D., Tasha) (Entered: 09/15/2022) |
| 09/15/2022 | | 93 | Hearing Continued on 88 Second Motion to Sell Property Under Section 363(b), Rule 3004 Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). filed by Debtor Gabriel Bravo. Hearing scheduled 9/29/2022 at 11:00 AM at Courtroom #2. (D., Tasha) (Entered: 09/15/2022) |
| 09/28/2022 | | 94 | Exhibit *Agreement of Sale of 1122 South 9th St., Philaelphia, PA. 18147* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)88). (SCHOLL, DAVID) (Entered: 09/28/2022) |
| 09/29/2022 | | 95 | Confirmation Hearing Continued on 15 Confirmation Hearing scheduled 10/6/2022 at 11:00 AM at Courtroom #2. (S., Antoinette) (Entered: 09/29/2022) |
| 09/29/2022 | | 96 | Hearing Continued on 88 Second Motion to Sell Property Under Section 363(b), Rule 3004 Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). Hearing scheduled 10/6/2022 at 11:00 AM at Courtroom #2. (S., Antoinette) (Entered: 09/29/2022) |
| 10/05/2022 | | 97 | Application for Compensation for DAVID A. SCHOLL, Debtor's Attorney, Period: 10/6/2021 to 10/5/2022, Fee: $20,000, Expenses: $. Filed by DAVID A. SCHOLL Represented by Self(Counsel). (SCHOLL, DAVID) (Entered: 10/05/2022) |
| 10/05/2022 | | 98 | Notice of (related document(s): 97 Application for Compensation for DAVID A. SCHOLL, Debtor's Attorney, Period: 10/6/2021 to 10/5/2022, Fee: $20,000, Expenses: $.) Filed by Gabriel Bravo. (SCHOLL, DAVID) (Entered: 10/05/2022) |

| | | | |
|---|---|---|---|
| 10/05/2022 | | 99 | Proposed Order Re: *Order to Sell Real Estate and to Distribute Proceeds* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)88). (SCHOLL, DAVID) (Entered: 10/05/2022) |
| 10/06/2022 | | 100 | Praecipe to Withdraw *Objection to Sale Motion* Filed by PAMELA ELCHERT THURMOND on behalf of CITY OF PHILADELPHIA (related document(s)54). (THURMOND, PAMELA) (Entered: 10/06/2022) |
| 10/06/2022 | | 101 | Confirmation Hearing Continued on 15 Confirmation Hearing scheduled 11/17/2022 at 09:30 AM at Courtroom #2. (S., Antoinette) (Entered: 10/06/2022) |
| 10/06/2022 | | 102 | Hearing Held on 88 Second Motion to Sell Property Under Section 363(b), Rule 3004 Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel). (related document(s),88). Settled. Order to be submitted. (S., Antoinette) (Entered: 10/06/2022) |
| 10/13/2022 | | 103 | Proposed Consent Order RE: *Second Motion to Sell Real Estate and to Distribute Proceeds* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)88). (SCHOLL, DAVID) (Entered: 10/13/2022) |
| 10/17/2022 | | 104 | Order entered granting Second Motion to sell real estate and to distribute proceeds. (Related Doc 88) (S., Antoinette) (Entered: 10/17/2022) |
| 10/18/2022 | | 105 | Third Amended Chapter 13 Plan Filed by Gabriel Bravo (related document(s)66). (SCHOLL, DAVID) (Entered: 10/18/2022) |
| 10/18/2022 | | 106 | Order: It is hereby ORDERED and DETERMINED that the Claim Objection is OVERRULED. (related document(s)18). (S., Antoinette) (Entered: 10/19/2022) |
| 10/19/2022 | | 107 | BNC Certificate of Mailing − PDF Document. (related document(s) (Related Doc # 104)). No. of Notices: 1. Notice Date 10/19/2022. (Admin.) (Entered: 10/20/2022) |
| 10/20/2022 | | 108 | Objection to Confirmation of Plan Filed by PAMELA ELCHERT THURMOND on behalf of CITY OF PHILADELPHIA (related document(s)105). (Attachments: # 1 Certificate of Service) (THURMOND, PAMELA) (Entered: 10/20/2022) |
| 10/21/2022 | | 109 | BNC Certificate of Mailing − PDF Document. (related document(s) (Related Doc # 106)). No. of Notices: 0. Notice Date 10/21/2022. (Admin.) (Entered: 10/22/2022) |
| 10/30/2022 | | 110 | Certificate of No Response to *Application of Debtor's Counsel for Compensation* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)97). (SCHOLL, DAVID) (Entered: 10/30/2022) |
| 10/30/2022 | | 111 | Motion to Reconsider (related documents Order (Generic)) *Order of October 18, 2022* Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel) (related document(s)106). (SCHOLL, DAVID) (Entered: 10/30/2022) |
| 10/30/2022 | | 112 | Notice of (related document(s): 111 Motion to Reconsider (related documents Order (Generic)) *Order of October 18, 2022*) Filed by Gabriel Bravo. Hearing scheduled 11/22/2022 at 10:30 AM at Courtroom #2. |

| | | | |
|---|---|---|---|
| | | | (SCHOLL, DAVID) **Modified on 10/31/2022−See corrective entry dated 10/31/2022.** (S., Antoinette). (Entered: 10/30/2022) |
| 10/31/2022 | | | Corrective Entry re: Corrected hearing location from telephonic to courtroom #2 per PDF document. (related document(s)112). (S., Antoinette) (Entered: 10/31/2022) |
| 11/09/2022 | | 113 | Monthly Operating Report for Filing Period March 2022 − November 2022 Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo. (SCHOLL, DAVID) (Entered: 11/09/2022) |
| 11/15/2022 | | 114 | Response to Motion to Reconsider filed by Debtor Gabriel Bravo Filed by E−Z Cashing, LLC (related document(s)111). (Attachments: # 1 Proposed Order # 2 Service List) (KRIK, JUSTIN) (Entered: 11/15/2022) |
| 11/17/2022 | | 115 | Confirmation Hearing Continued on 15 Confirmation Hearing scheduled 12/8/2022 at 11:00 AM at Courtroom #2. (S., Antoinette) (Entered: 11/17/2022) |
| 11/22/2022 | | 116 | Hearing Held on 111 Motion to Reconsider (related documents Order (Generic) *Order of October 18, 2022* Filed by Gabriel Bravo Represented by DAVID A. SCHOLL (Counsel) (related document(s)106). (related document(s),111). ORDER to be submitted (G., Eileen) (Entered: 11/22/2022) |
| 11/22/2022 | | 117 | Proposed Order Re: *Motion for Reconsideration* Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)111). (SCHOLL, DAVID) (Entered: 11/22/2022) |
| 11/22/2022 | | 118 | Order: It is hereby ORDERED as follows the Motion is GRANTED as to the $500 payment made by the Debtor to E. Z. Cashing, LLC in November 2021. The Debtor shall be given credit for that payment at settlement. For the reasons stated on the record at that hearing, in all other respects, the Motion is DENIED. (Related Doc # 111) (S., Antoinette) (Entered: 11/22/2022) |
| 11/24/2022 | | 119 | BNC Certificate of Mailing − PDF Document. (related document(s) (Related Doc # 118)). No. of Notices: 1. Notice Date 11/24/2022. (Admin.) (Entered: 11/25/2022) |
| 12/04/2022 | | 120 | Notice of Appeal to District Court. . Fee Amount $298.00 Filed by Gabriel Bravo (related document(s)118, 106). Appellant Designation due by 12/19/2022. Transmission of record on appeal to District Court Due Date:01/3/2023. (SCHOLL, DAVID) (Entered: 12/04/2022) |
| 12/04/2022 | | | Receipt of Notice of Appeal( 21−12926−mdc) [appeal,ntcapl] ( 298.00) Filing Fee. Receipt number A24560942. Fee Amount $ 298.00. (re: Doc# 120) (U.S. Treasury) (Entered: 12/04/2022) |
| 12/05/2022 | | 121 | Court's Certificate of Mailing of Notice of Appeal. Number of Notices: 7. Sent to: Judge Magdeline D. Coleman (via Courtroom Deputy). David A. Scholl, Esquire, Kenneth E. West, Esquire/Trustee, Justin L. Krik, Esquire, U.S. District Court, U.S. Trustee−mailed electronically. Gabriel Bravo, Debtor−mailed through the BNC. (related document(s)120). (S., Antoinette) (Entered: 12/05/2022) |
| 12/05/2022 | | 122 | Electronic Transmission to District Court re: Notice of Appeal. (related document(s)120). (S., Antoinette) (Entered: 12/05/2022) |

| | | | |
|---|---|---|---|
| 12/05/2022 | | <u>123</u> | Notice of Docketing Record on Appeal to District Court. Civil Action Case Number: 22−4820, assigned to Judge John M. Younge. (related document(s)<u>120</u>). (S., Antoinette) (Entered: 12/05/2022) |
| 12/07/2022 | | <u>124</u> | BNC Certificate of Mailing − PDF Document. (related document(s) (Related Doc # <u>121</u>)). No. of Notices: 1. Notice Date 12/07/2022. (Admin.) (Entered: 12/08/2022) |
| 12/08/2022 | | 125 | Confirmation Hearing Continued on <u>15</u> Confirmation Hearing scheduled 12/22/2022 at 11:00 AM at Courtroom #2. (S., Antoinette) (Entered: 12/08/2022) |
| 12/13/2022 | | <u>126</u> | Status Report Re: <u>104</u> Order entered granting Second Motion to sell real estate and to distribute proceeds. (Related Doc <u>88</u>) (S., Antoinette) Filed by DAVID A. SCHOLL on behalf of Gabriel Bravo (related document(s)<u>104</u>). (SCHOLL, DAVID) (Entered: 12/13/2022) |
| 12/15/2022 | | <u>127</u> | Appellant Designation of Contents For Inclusion in Record On Appeal Filed by Gabriel Bravo. Appellee designation due by 12/29/2022. Transmission of Designation Due by 01/17/2023. (SCHOLL, DAVID) (Entered: 12/15/2022) |
| 12/15/2022 | | <u>128</u> | Appellant Designation of Contents For Inclusion in Record On Appeal *Designation of Issues* Filed by Gabriel Bravo. Appellee designation due by 12/29/2022. Transmission of Designation Due by 01/17/2023. (SCHOLL, DAVID) (Entered: 12/15/2022) |
| 12/22/2022 | | 129 | 13 Confirmation Hearing Continued <u>15</u> . Confirmation Hearing scheduled 1/26/2023 at 11:00 AM at Courtroom #2. (W., Christine) (Entered: 12/22/2022) |
| 12/23/2022 | | <u>130</u> | Objection to Confirmation of Plan Filed by KENNETH E. WEST (related document(s)<u>105</u>). (Attachments: # <u>1</u> Proposed Order)(WEST, KENNETH) (Entered: 12/23/2022) |
| 12/23/2022 | | <u>131</u> | Certificate of Service Filed by KENNETH E. WEST on behalf of KENNETH E. WEST (related document(s)<u>130</u>). (WEST, KENNETH) (Entered: 12/23/2022) |
| 12/28/2022 | | <u>132</u> | Motion to Dismiss Case. There has been unreasonable delay by debtor(s) that is prejudicial to creditors pursuant to 11 U.S.C. Section 1307(c)(1). Filed by KENNETH E. WEST Represented by KENNETH E. WEST (Counsel). (Attachments: # <u>1</u> Proposed Order # <u>2</u> Service List) (WEST, KENNETH) (Entered: 12/28/2022) |
| 12/28/2022 | | <u>133</u> | Notice of (related document(s): <u>132</u> Motion to Dismiss Case. There has been unreasonable delay by debtor(s) that is prejudicial to creditors pursuant to 11 U.S.C. Section 1307(c)(1). ) Filed by KENNETH E. WEST. Hearing scheduled 1/26/2023 at 11:00 AM at Courtroom #2. (WEST, KENNETH) (Entered: 12/28/2022) |
| 12/30/2022 | | <u>134</u> | Order Re: As set forth in the Reconsideration Order, because Claimant acknowledged that a Post−Judgment Payment the Debtor made in the amount of $500.00 in November 2021 was not credited, the Debtor shall be given credit for that payment. (related document(s)<u>118</u>, <u>111</u>). (W., Christine) (Entered: 12/30/2022) |
| 01/01/2023 | | <u>135</u> | |

| | | | |
|---|---|---|---|
| | | | BNC Certificate of Mailing − PDF Document. (related document(s) (Related Doc # 134)). No. of Notices: 1. Notice Date 01/01/2023. (Admin.) (Entered: 01/02/2023) |
| 01/03/2023 | | 136 | Electronic Transmission to District Court re: Notice of Appeal & Designated Items. (related documents 120 Notice of Appeal). (S., Antoinette) (Entered: 01/03/2023) |
| 01/03/2023 | | 137 | Transcript regarding hearing held on 2/15/2022 (related document(s)18, 6). Transcribed by Acorn Transcripts, LLC. 228 total pages including Certification of Transcriber. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office]. Notice of Intent to Request Redaction Deadline Due By 1/10/2023. Redaction Request Due By 1/24/2023. Redacted Transcript Submission Due By 2/3/2023. Transcript access will be restricted through 4/3/2023. (B., John) (Entered: 01/03/2023) |
| 01/03/2023 | | 138 | Transcript regarding hearing held on 11/22/2022 (related document(s)111). Transcribed by Acorn Transcripts, LLC. 20 total pages including Certification of Transcriber. The transcript may be viewed at the Bankruptcy Court Clerk's Office. [For information about how to contact the transcriber, call the Clerk's Office] (related document(s)111). Notice of Intent to Request Redaction Deadline Due By 1/10/2023. Redaction Request Due By 1/24/2023. Redacted Transcript Submission Due By 2/3/2023. Transcript access will be restricted through 4/3/2023. (B., John) (Entered: 01/03/2023) |
| 01/03/2023 | | 139 | District Court acknowledgement of receiving electronic transmission re: designated items. (related document(s)128, 120, 127). (S., Antoinette) (Entered: 01/03/2023) |

1  UNITED STATES BANKRUPTCY COURT

2  EASTERN DISTRICT OF PENNSYLVANIA

3

4  -------------------------------
                              §
5  IN RE: GABRIEL BRAVO,         §
                              §    CASE NO. 21-12926-MDC
6              Debtor.    §    PHILADELPHIA, PA
   -------------------------------

7

8                      MOTION HEARINGS

9

10                    United States Bankruptcy Court

11                    900 Market Street, Suite 400

12                    Philadelphia, PA  19107

13

                      Tuesday, February 15, 2022
14
                      1:11 P.M.
15

16

17

18  B E F O R E:

19  HON. MAGDELINE D. COLEMAN

20  U.S. BANKRUPTCY JUDGE

21

22

23

24      Proceedings recorded by electronic sound recording;
            transcript produced by transcription service.
25

1                    A P P E A R A N C E S:

2

3   FOR DEBTOR:                    DAVID SCHOLL, ESQ.
                                   AUTHERINE SMITH, ESQ.
4                                  512 Hoffman Street
                                   Philadelphia, PA  19148
5                                  (601)550-1765

6

    FOR CREDITOR EZ CASHING LLC:   JUSTIN L. KRIK, ESQ.
7                                  KRIK LAW
                                   P.O. Box 788
8                                  Williamstown, NJ  08094
                                   (267)831-3180

9

10  FOR U.S. TRUSTEE:              KENNETH E. WEST, EST.
                                   CHAPTER 13 TRUSTEE
11                                 200 Chestnut Street, Ste 502
                                   U.S. Customs House
12                                 Philadelphia, PA  19106

13

14  TRANSCRIPTION SERVICE:         ACORN TRANSCRIPTS, LLC
                                   3572 Acorn Street
15                                 North Port, FL  34286
                                   info@acornfla.com
16                                 www.acornfla.com
                                   1-800-750-5747

17

18

19

20

21

22

23

24

25

Case 21-20263-ddc-0062018-BH Filed 01/06/23 In Re: Gabriel Bravo Filed 01/04/23 Page 82 of 205 Desc Main
Document    Page 3 of 228

3

1

2                        C A L E N D A R

3

A)    HEARING RE: Motion to Extend Automatic Stay Filed by

4        Gabriel Bravo Represented by David A. Scholl

5

6

B)    HEARING RE: Objection to Claim #1 by Claimant EZ

7        Cashing, LLC.  Filed by Gabriel Bravo

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22   Transcribed by:  Acorn Transcripts, LLC

23

24

25

1                        I N D E X

2                                              PAGE

3    HEARING RE: Motion to Extend Automatic Stay . . . . . . 9

4
     OPENING STATEMENT:
5
       On Behalf of the Debtor    . . . . . . . . . . . . . 9
6      On Behalf of the Creditor  . . . . . . . . . . . . 18

7
     WITNESSES FOR DEBTOR:
8
     Gabriel Bravo          Direct   Cross   Redirect   Recross
9
       (By Mr. Scholl)       29                --
10     (By Mr. Krik)                  32                      --

11
                                                       PAGE
12   CLOSING ARGUMENT:
       On behalf of the Debtor    . . . . . . . . . . . .  80
13     On behalf of the Creditor  . . . . . . . . . . . .  86

14
     COURT DECISION – Stay continued until 3/8/22 . . . . . 113
15

16   HEARING RE: Objection to Claim #1 . . . . . . . . . . .113

17
     Joel Weiser            Direct   Cross   Redirect   Recross
18
       (By Mr. Scholl)                134                      155
19     (By Mr. Krik)          145                --

20   Gabriel Bravo

21     (By Mr. Scholl)        159                203
       (By Mr. Krik)                  192                      --
22
                                                       PAGE
23   CLOSING ARGUMENT:

24     On Behalf of the Debtor    . . . . . . . . . . . . 208
       Oh Behalf of the Creditor  . . . . . . . . . . . . 213
25

1

2                          E X H I B I T S

3   FOR CREDITOR:                                                   PAGE:

4   C-8                    Motion to Reassess Damages            206

5   C-9                    Response to Objection                 206

6   C-10                   State Court order 6/2/21              206

7   C-26                   Proof of Claim Filed                  207

8   C-27                   Receipt for Reassessed Payment        207
                           $500

9

10  FOR DEBTOR:            DESCRIPTION

11  D-1       Receipts for payments to EZ Cashing
    D-2       2017-12-06
12  D-3       $720 January 2018 mtg, 11/1/17
    D-4       $720, 2/2018
13  D-5       ?
    D-6       Ltr & Receipt for $1,000 money order
14  D-7       Ltr w/two money orders = $1,288
    D-8       ?
15  D-9       $1,000 and $288 = $1,288
    D-10      $1,000 and $288 = $1,288
16  D-11      $1,000 and $288 = $1,288
    D-12      $1,000 and $288 = $1,288
17  D-13      $1,000 and $288 = $1,288 (April, 2019)
    D-14      $1,000 and $288 = $1,288 (June)
18  D-15              ?
    D-16      $1,000 and $288 = $1,288 (August)
19  D-17      $1,000 and $288 = $1,288 (September)
    D-18      $1,000 and $288 = $1,288 (October 17, 2019)
20  D-19      $1,000 and $288 = $1,288 (November)
    D-20      $1,000 and $288 = $1,288
21  D-21      $1,000 and $288 = $1,288 (January 2020)
    D-22      $1,000 and $288 = $1,288 (February 23, 2020)
22  D-23      (Duplicate of D-22?)
    D-24      ?
23  D-25      $1,000 and $40 = $1,040  (May)
    D-26      $1,000 and $40 = $1,040  (July)
24  D-27      $1,000 and $288 = $1,288
                                                                PAGE:
25  D1 through D-27. . . . . . . . . . . . . . . . . . . . . .  205

 1      PHILADELPHIA, PA; TUESDAY, FEBRUARY 15, 2022; 1:11 P.M.

 2          (Call to Court)

 3              THE COURT:  All right.  This is the matter of

 4    Gabriel Bravo, and we have two matters pending today.  One

 5    is a motion to extend the automatic stay, and the second is

 6    objection to Claim Number 1.

 7              And who do we have appearing today on behalf of

 8    the debtor?

 9              MR. SCHOLL:  David Scholl.  Beside me is Mr.

10    Bravo, who is the actual debtor.

11              THE COURT:  Mr. Scholl and Mr. Bravo.

12              MR. SCHOLL:  Yeah.  Your Honor, we'd hoped to get

13    him in from his home but --

14              THE COURT:  Well, Mr. Scholl, that was fine and

15    we've had witnesses appear at counsel's office, or wherever

16    counsel is (indiscernible).

17              MR. SCHOLL:  Yeah.  Well, they didn't have a

18    computer, and it turned out we could have maybe done it on a

19    phone but we felt uncertain enough about it that we figured

20    we have him come in here.

21              THE COURT:  Hold on.  Hold on one second.

22          (Pause)

23              MR. SCHOLL:  Am I --

24              THE COURT:  Counsel, I've just opened --

25              MR. SCHOLL:  I just know this --

1          THE COURT:  -- I just (indiscernible).

2          MR. SCHOLL:  -- one thing I'm going to have is a

3    little bit of trouble because if I put my glasses on, since

4    I have a mask on, they fog up.  And then I can't -- then I

5    can't read.  So I've got to put the thing on --

6          THE COURT:  Well, is there any way you can --

7    well, Mr. Bravo is right next to you.

8          MR. SCHOLL:  Yes.

9          THE COURT:  He can't be in another room.  Okay.

10          MR. SCHOLL:  I'm just going to put them on and

11    take them off from time to time.

12          THE COURT:  Okay.  So the debtor, debtor's

13    counsel.  Oh, come on.  Okay.  Hold on, counsel.

14      (Pause)

15          THE COURT:  I'll mute.  I apologize for this.

16    Again, I apologize because PGW has been working on my street

17    for a month and a half and they have managed to destroy my

18    water heater, leave me without heat for two days, and now --

19    now just hit my car.  So I'm not batting too well, so I

20    apologize if I say hold on a minute, to kind of agree with

21    that.

22          All right.  So we have Mr. Scholl, debtor's

23    counsel.  We have Mr. Bravo, the debtor.  Who else do we

24    have on here?

25          MR. KRIK:  Good afternoon, Your Honor.  Justin

1   Krik on behalf of EZ Cashing, LLC., and my client's

2   representative, Joel Weiser.

3           THE COURT:  Anybody else?  Yes, David.

4   (Indiscernible.)

5           MR. SCHOLL:  Well, Autherine Smith is up there on

6   the right.

7           THE COURT:  Oh, she's co-counsel for the debtor?

8           MR. SCHOLL:  Co-counsel.  I don't expect her to

9   participate but --

10          THE COURT:  Right.  We have to have everybody who

11  is on.  Co-counsel.

12          Anybody else, other than my staff?

13      (No audible response)

14          THE COURT:  Okay.  All right, counsel.  There's

15  two matters, both of which are the debtor's motion, which is

16  to extend the automatic stay and to -- objection to Claim

17  Number 1.

18          Have the parties discussed any stipulated facts

19  that would be stipulated to, or are we going to just have a

20  -- whether they're stipulated facts and whether the parties

21  want to make a combined record on both matters?

22          MR. SCHOLL:  I don't think the combined record

23  does much good because the matters are quite different.  As

24  far as stipulations, we've reached out for a couple, but

25  none have been agreed to.

1              THE COURT:  Okay.  So you believe that we should

2    -- how did -- have you discussed how the parties want to

3    proceed?  Do you want to proceed on the motion to extend?

4              I would hear the evidence from the debtor, the

5    objection from EZ Cash, and then once that's done we'd move

6    into the claim objection?  You believe none of the matters

7    are -- none of the evidence from the first is related to the

8    second?

9              MR. SCHOLL:  I don't think so.  I think they're --

10             THE COURT:  Mr. Krik, do you agree?

11             MR. KRIK:  I would agree that if any, it would be

12   very minimal, but they are two separate issues.

13             THE COURT:  Okay.  So they don't overlap.  Okay.

14   So the parties haven't done any stipulated facts in

15   connection with either matter.

16             MR. SCHOLL:  That's true.  Yeah.

17             MR. KRIK:  No, Your Honor.

18   HEARING RE MOTION TO EXTEND AUTOMATIC STAY:

19             THE COURT:  Okay.  So then let's proceed with the

20   motion to extend the automatic stay.  Would the parties want

21   to start with opening statements, or are we just going to

22   jump right into it?

23             OPENING STATEMENT ON BEHALF OF THE DEBTOR

24             MR. SCHOLL:  Well, yeah, I can give a small

25   opening statement.

1        The issue, we believe -- actually, it's kind of

2   ironic because the sheriff sale was scheduled -- had it been

3   four days later, we wouldn't have had to file this motion

4   because it turned out the last case was dismissed on

5   November the 5th, 2020, and a sheriff sale was scheduled on

6   November the 2nd, 2021.

7        So we had to file it.  Mr. Bravo had filed one

8   prior case prior to this one.  He filed a bankruptcy in

9   2017.  He was -- before the one that's at issue anyway.

10  This is his third filing now.

11       The 2017 case was filed by James Moran, and it was

12  not successful.  Let's just say that.

13       We filed a case in 2018, it was pending for quite

14  a while, for over two years, and the plan that we had -- the

15  last plan is the third amended plan, which is attached as an

16  exhibit.  And what we were trying to do was pay off Mr.

17  Weiser, or EZ Cash instead.  We're mostly trying to get a

18  loan and made some applications for a loan.

19       But we could not come up with a loan, and now we

20  got hit with a pandemic.  Mr. Bravo got behind on his plan

21  payments, and we didn't oppose dismissal, and it was

22  dismissed on November -- as I mentioned, on November the

23  5th.

24       THE COURT:  Of 2020?

25       MR. SCHOLL:  Of 2020.

In Re: Gabriel Bravo

1              THE COURT:  Of '20.

2              MR. SCHOLL:  2020, because we refiled again in

3    2021.  November the 2nd, 2021.  And I called up Mr. Bravo

4    and I found out, to my surprise and joy, that he not only

5    had a buyer --

6              THE COURT:  So wait.  Mr. Scholl, hold on.

7              So the debtor had a case in 2017 that -- and that

8    was dismissed when?

9              MR. SCHOLL:  Well, that was dismissed before the

10   2018 case.  It was dismissed in September -- I don't

11   remember the exact date.  I'm going to say September 7th.

12             THE COURT:  Of 2018?

13             MR. SCHOLL:  2018.  And then we filed a 2018 case

14   the next day, because --

15             THE COURT:  So 9/2018, the debtor files a case --

16             MR. SCHOLL:  Yeah.  We had --

17             THE COURT:  -- is pending to --

18             MR. SCHOLL:  -- because Mr. Moran had to go in and

19   get that case dismissed or we couldn't have filed a new

20   case.

21             THE COURT:  All right.  So then he files in 2018.

22             MR. SCHOLL:  We filed -- I filed.  Moran

23   (indiscernible).

24             THE COURT:  And then that gets dismissed in

25   November of 2020.  Correct?

 1            MR. SCHOLL:  Right.  Pending for two years.

 2            THE COURT:  Okay.  Okay.  And then the debtor

 3   files another case, November of '21.

 4            MR. SCHOLL:  Right.  November the 2nd.

 5            THE COURT:  Okay.

 6            MR. SCHOLL:  Actually, it was filed October 28th

 7   that the sheriff's sale was November 2nd.

 8            THE COURT:  Okay.  So --

 9            MR. SCHOLL:  So we had to file it before --

10            THE COURT:  Okay.

11            MR. SCHOLL:  -- before the year ran out.  We were

12   very close to that, but we had to file it.

13            And we believe it's significantly changed

14   circumstances, because as I'm saying, most of my surprise --

15   because this party had never made any kind of overtures

16   before.  The party that -- you may remember.  It's a unique

17   situation where Mr. Bravo operates a restaurant that is at

18   -- in two properties.  One is 1122 South 9th Street and the

19   other is 1124.

20            Now, he doesn't own 1124.  I don't know if he ever

21   owned it, but the owner was a party that turned out was now

22   interested in buying 1122.  So --

23            THE COURT:  But he operates -- wait a minute.  He

24   operates out of 1122 and 1124?

25            MR. SCHOLL:  Yes.  Both locations.  Half the

 1  restaurant is in one location, half is in the other.

 2          THE COURT:  So is there -- what's in between 1120

 3  -- are they not next door?

 4          MR. SCHOLL:  Well, there's nothing in between.

 5  The two are -- if there ever was something in between, it's

 6  been knocked out.  And it appears -- I've been in the

 7  restaurant.  It appears to be one building, but it actually,

 8  as it turns out, is two properties.

 9          THE COURT:  Okay.  Okay.

10          MR. SCHOLL:  Which is bigger, I don't know.  The

11  kitchen is one part and then -- I don't know.  The only

12  thing we know is that this -- the person that presently owns

13  it bought the other half for, I think about 200,000.

14          THE COURT:  What other half?  I'm - I'm confused.

15  What portion does the debtor own?

16          MR. SCHOLL:  He owned 1122.

17          THE COURT:  Okay.

18          MR. SCHOLL:  Let's say it's half.

19          THE COURT:  And then 1120 --

20          MR. SCHOLL:  It may not be exactly half, but it's

21  pretty evident --

22          THE COURT:  1124 is owned by somebody else?

23          MR. SCHOLL:  Yes, it is.

24          THE COURT:  And the person who owns 1124 now wants

25  to buy 1122?

1          MR. SCHOLL:  Yes.

2          THE COURT:  Okay.  Okay.

3          MR. SCHOLL:  Because I don't know how many other

4   people would want to buy half of a restaurant, but it turns

5   out -- you know, I can only speculate why they're doing it,

6   but they want very much to get both halves and then charge

7   him rent for both halves.  You know.

8          THE COURT:  Okay.

9          MR. SCHOLL:  I can (indiscernible).  But it would

10  be -- it's for quite a bit.  It's for 200,000, and we

11  weren't getting any offers anywhere close to that in 2020,

12  and so this was -- this was, I won't say a windfall, but it

13  was a fortunate development for everybody, because what it

14  means is Mr. Weiser is now going to get paid in full. And he

15  was very anxious to get paid in full and get paid out, and

16  Mr. Bravo is going to have some money left over, because Mr.

17  Weiser's debt -- of course, we're going to have another

18  hearing about how much that is, but we know it's not more

19  than a little -- let's say it's not more than 145,000.

20         THE COURT:  Okay.

21         MR. SCHOLL:  And he has an offer for 200.  You may

22  say, are there any other liens against the property?  I

23  think there is a city lien for about 3,000, but they haven't

24  filed any claim for it in this case.  The only claim they

25  filed was a small secured claim for water in his residence.

1    They may not even file that claim.  We did think it was a

2    bogus claim, because it did not involve --

3            THE COURT:  Well --

4            MR. SCHOLL:  -- the restaurant.

5            THE COURT:  -- well, there is a -- was there a bar

6    date?

7            MR. SCHOLL:  There is a bar date for governmental

8    claims.  We haven't reached it yet.

9            THE COURT:  Oh, okay.

10            MR. SCHOLL:  It's April of -- it's six months from

11    when we filed.  We filed on October 28th.  So we'll come up,

12    I think it's April 26th.

13            THE COURT:  Okay.

14            MR. SCHOLL:  Or thereabouts.  But they did file a

15    claim.  The city has a claim filed, and you would think if

16    they're going to file a claim they would have included it in

17    anything else, and the claim they filed is only for very

18    small water claim for water used at his residence, which is

19    not either of these properties.  It's down the street at

20    1168.  So they may not assert a claim, but from looking at

21    their past claim, I have ascertained there is a possibility

22    of a claim of $30,000.

23            The buyers --

24            THE COURT:  Uh-huh.

25            MR. SCHOLL:  -- wants to do a title search, which

In Re: Gabriel Bravo

1   is understandable, and then we'll know for sure whether

2   there's anything else.  I don't think there is, or much.

3   They were willing to -- they haven't -- he was not willing

4   to do a title search until we signed the agreement.  The

5   agreement was only signed a couple days ago, and when it was

6   signed, we then filed a motion to approve the sale, and it

7   was --

8          THE COURT:  I saw those.

9          MR. SCHOLL:  -- actually filed after we submitted

10  the exhibits.  So I don't have the executed copy, but it is

11  attached to the motion to sell, and it's been signed by Mr.

12  Bravo and his wife, and also somebody signed it for the

13  buyer.  I don't know who it is.  Can't read it.  There's

14  some names scribbled on there.  I assume it's --

15         THE COURT:  And when is the hearing date --

16         MR. SCHOLL:  -- (indiscernible).

17         THE COURT:  -- on that?

18         MR. SCHOLL:  March 8th.

19         THE COURT:  Okay.

20         MR. SCHOLL:  So that's pretty much the situation.

21  We believe that it's a substantially changed circumstance,

22  so that's why we believe that we're entitled to extend the

23  stay.  And even if it isn't, even if it isn't, we don't

24  think that the stay would be completely obliterated.  There

25  is no motion for relief from all the sections of the status

In Re: Gabriel Bravo                                                17

1   stay pending.  Sometimes people file those things, but there

2   is none.

3            You know, we think we'll have the sale done before

4   then.  I mean, it's due in the -- the settlement is supposed

5   to take place by April 11th, so done pretty quick.

6            THE COURT:  And the debtor has a proposed plan on

7   file?

8            MR. SCHOLL:  Yes, he's filed a plan and an amended

9   plan.  The trustee insisted on a few, I would say technical

10  changes.  He wanted to make sure the priority claim --

11  there's a very small state priority claim, was paid first,

12  irrespective of whether it was a lien.  I don't think it is

13  a lien because it's just a priority claim.  And, you know,

14  we were willing to provide it.  It's less than $1,000 so --

15  and as a matter of fact, it's for taxes that Mr. Bravo says

16  he paid.  It's for last year's income tax.

17           So you know, that's the only thing that's -- that

18  we changed in the plan, and the amended plan still provides,

19  as the earlier plan did, for a sale for 200,000, and no

20  reason to think it won't take place.

21           THE COURT:  Okay.  Anything else?

22           MR. SCHOLL: (Indiscernible) for Mr. Bravo, but I

23  don't think you'd get much -- Mr. Bravo --

24           THE COURT:  Well, no.  We just -- this is just

25  opening statements.  You believe that there has --

```
 1            MR. SCHOLL:  Yeah.  Okay.

 2            THE COURT:  -- been a substantial --

 3            MR. SCHOLL:  I wouldn't say much else, so you know

 4    what I mean?

 5            THE COURT:  Right.  So --

 6            MR. SCHOLL: (Indiscernible) is pretty good and we

 7    struggled to try to get things out in a good clear fashion,

 8    but I can call Mr. Bravo.

 9            THE COURT:  Well, no, he gets to have his -- you

10    want to do your opening, counsel, or you want to do it when

11    you put in your opposition.  I kind of let everybody do it

12    at once.  What are you doing -- why do you believe that the

13    stay should not be extended?

14             OPENING STATEMENT ON BEHALF OF CREDITOR

15            MR. KRIK:  Thank you, Your Honor.

16            So on behalf of EZ Cashing, we objected to this

17    extension of stay on various grounds, and you received a

18    little bit of the background from Mr. Scholl.  But from the

19    perspective of the creditor, we have been -- Mr. Bravo has

20    effectively thwarted multiple efforts of execution over the

21    last three years, and successfully postponed several -- a

22    couple of sheriff sales on the eve thereof.  And we believe

23    that a lot of these --

24            THE CLERK:  Counsel.

25            MR. SCHOLL:  What?  We lost the judge?
```

1           THE CLERK:  She'll be right back.  Probably a PGW

2   situation.  Sorry.

3           THE COURT:  Sorry.  They're ringing my doorbell.

4   Maybe they're going to come tell me that they did hit my car

5   because initially they said they didn't.  I'm like, yeah, my

6   car just decided to -- alarm to go off my sensor cracked

7   just out of the blue because you didn't hit it, but

8   whatever.  I'm sorry.  I apologize.

9           MR. KRIK: (Indiscernible.).

10          THE COURT:  Counsel, I understand, and I have been

11  telling counsel who are working from home with children, I

12  now know the issues.  I have my 12-year-old grandson who I'm

13  -- my husband and I are now raising, and I now have the

14  pleasure of having the ordeals of a parent of a young child.

15  So in addition to PGW, please give me a break for that

16  because he tends to yell and ask for things, even though I'm

17  in trial.  So I apologize.

18          All right, counsel.  You believe that from the

19  creditor's, EZ Cash position, that the stay should not be

20  extended because the debtor has thwarted collection efforts

21  over three years, for --

22          MR. KRIK:  Three years.

23          THE COURT:  -- for (indiscernible).

24          MR. KRIK:  Yes.  Multiple years over multiple

25  bankruptcies, usually on the eve of execution efforts.  And

1  we believe that that's been in bad faith, that there's been

2  -- since the beginning of those case, no real substantial

3  change in the debtor's financial condition or personal

4  affairs.  I will admit that finally receiving what we

5  believe -- what has been purported to be an executed

6  agreement of sale may have relevance in some cases, but we

7  don't necessarily believe that the agreement of sale either

8  has a lot of credibility, we don't have -- you know, we will

9  check on and ask certain questions regarding that agreement,

10  but this potential agreement and purchase from a buyer has

11  -- from the neighbor as the buyer, has been touted for many,

12  many, many months, and not come to fruition.

13          And so it appeared to be, and we still believe a

14  little bit of empty talk that is just used to continue to

15  postpone what we believe to be, you know, the rightful

16  execution efforts of the defendant.

17          We have asked on several occasions and not

18  received, including in the prior bankruptcy, proof of

19  insurance for the property.  I don't believe we've received

20  that and --

21          MR. SCHOLL:  We filed a record, Mr. Krik, and --

22          MR. KRIK:  I'm sorry.

23          MR. SCHOLL:  -- we did send it to you also by --

24          THE COURT:  Hold on Mr. -- Mr. Scholl.  Mr.

25  Scholl, let me give you my instructions.

In Re: Gabriel Bravo

1    My instructions are when you speak when it's your

2    turn, you state your name for the record, and you do not

3    interrupt or speak over one another, and if you do, my ESR

4    will mute you.  The only person who gets to talk over,

5    interrupt, is me, and I do it often so I apologize.

6        All right.  With that said, Mr. Scholl, you will

7    get your opportunity to respond to his allegation.

8        Okay.  Go ahead.

9        MR. KRIK:  Thank you, Your Honor.

10        And so with that, we also believe that there is

11   really no evidence of the valuation supporting what the

12   property is going to sell for, other than the allegation of

13   a potential buyer who, as I understand it at this moment --

14   and nor is the buyer nor the agent for the seller on this

15   call to answer questions regarding this agreement of sale.

16        So for those reasons, we don't believe that the

17   debtor is acting in good faith enough to allow the motion to

18   extend to carry, and I will indicate that in the -- for the

19   Court's awareness, we did have a sheriff sale, or do have a

20   sheriff sale that is in -- on hold, so to speak, scheduled

21   for March 1st, depending on whether relief is granted or

22   not.  The next available sheriff's sale, just hypothetically

23   based upon the purported settlement date in this contract,

24   is April 11th, the settlement date.

25        The next purported sheriff's sale would be June

1    7th, and so in the alternative, we would ask that if the

2    motion to extend stay is granted, in order to allow the

3    debtor to sell real estate, which again we oppose, that the

4    Court enter an order allowing the debtor to proceed to

5    schedule and carry out the sheriff's sale of June 7th if the

6    property has not sold.  Again, that is an alternative,

7    however, we still oppose any motion to extend the stay and

8    do believe that it applies to our efforts to proceed in

9    state court with execution if it is not extended.

10            THE COURT:  Okay.

11            MR. KRIK:  I'm sorry.  I will finish by saying --

12            THE COURT:  That's -- I'm sorry, counsel.  I was

13   actually just looking at 362(c).  Debtor is proceeding on

14   the 362(c)(3), correct?

15            MR. KRIK:  Yes.

16            THE COURT:  If a single or joint case was an

17   individual, and it was pending within the preceding one year

18   was dismissed, the stay under Subsection A shall terminate

19   with respect to the debtor on the 30th day after the filing

20   if the -- on a motion of a party in interest for

21   continuation of the stay.

22            And then it says, which is all -- but for my

23   purposes, for purposes of Subchapter B, a case is

24   presumptively filed not in good faith, but such presumption

25   may be rebutted by clear and convincing evidence to the

```
 1  contrary as to all creditors if more than one case
 2  proceeding or previous case was dismissed, and this isn't --
 3  or there has not been a substantial -- if more than one
 4  previous case was filed in which the debtor was dismissed
 5  after the debtor failed to file an amended petition, provide
 6  adequate protection, or perform the terms of a plan
 7  confirmed, none of which apply, or there has not been a
 8  substantial change in the financial or personal affairs of
 9  the debtor since dismissal of the next most previous case
10  under Chapter 7, 11, or 13, or any other reason to conclude
11  that the later case, the present case, will be concluded --
12  and this is a Chapter 13 -- with a confirmed plan that the
13  later case will be concluded if a case on the Chapter 13 or
14  confirmed plan that will be fully performed, and as to any
15  creditor that commits an action under Subsection D as of the
16  date of the dismissal was pending has been resolved by
17  terminating (indiscernible).
18           So I just want to be clear that everybody is clear
19  under what section we're proceeding under, which is
20  362(c)(3).
21           MR. KRIK:  Yes, Your Honor.
22           THE COURT:  And that the test that I have to look
23  at, it's presumptively found not in good faith as to all
24  creditors unless something happens, correct?
25           MR. KRIK:  Yes, Your Honor.
```

1          MR. SCHOLL:  That's how it reads.  Yes.

2          THE COURT:  And we all believe it's Number

3  (3)(c)(i)(3)?

4          MR. KRIK:  Yes, Your Honor.

5          THE COURT:  Okay.  I just want to make sure I'm on

6  the same page.  So it's 362(c)(3) --

7          MR. KRIK:  (3), little (i).

8          THE COURT:  -- little (i), big (3).

9          MR. KRIK:  Big (3).

10          THE COURT:  Okay.

11          MR. KRIK:  Yes, Your Honor.  Yep.

12          THE COURT:  So that I have to find that there has

13  not been a substantial change in the financial or personal

14  affairs of the debtor since the dismissal of the case, and

15  the last most recent case, which would have been 20 -- the

16  2020 case?

17          MR. SCHOLL:  2020 is right, Your Honor.

18          THE COURT:  Okay.  And -- or -- so the

19  (indiscernible) or any other reason, but the later case will

20  be concluded with a confirm.

21          Okay.  In the last case -- so not two.  So there

22  was no pending relief matter in the -- that had been

23  resolved in the '20 case, right, counsel?  So we're not

24  looking at little -- we're only looking at little (i), not

25  two little (i).  Right?

```
 1              MR. SCHOLL:  I'm really not seeing the two little
 2  (i)s.  That's under which?
 3              THE COURT:  (C), not (C)(i), but (C) two (i)s,
 4  because it's (c), (c)(3)(C)(i), big C, the little (i)(3).
 5  And not 362 --
 6              MR. SCHOLL:  Oh, I see.
 7              THE COURT:  -- (c)(3)(C)(ii).  We're not under
 8  that one, right?
 9              MR. KRIK:  Your Honor, we did have --
10              MR. SCHOLL:  (Indiscernible) but I don't have that
11  in my --
12              MR. KRIK:  -- we did have -- we did have
13  (indiscernible).
14              MR. SCHOLL:  Okay.  I don't know if this is --
15              MR. KRIK:  Correct.  Correct, Your Honor.
16              MR. SCHOLL:  -- I don't (indiscernible) but I
17  don't have that designated (indiscernible).
18              MR. KRIK:  Correct, Your Honor.  EZ Cashing
19  proceeded in its execution after the dismissal of the prior
20  case.
21              THE COURT:  Okay.  All right.  And in the prior
22  case, was there a pending motion for relief --
23              MR. SCHOLL:  No.
24              THE COURT:  -- that had been resolved?
25              MR. KRIK:  There was not.  There were other
```

1  pending motions --

2          THE COURT:  Okay.

3          MR. KRIK:  -- that were withdrawn.

4          THE COURT:  Okay.  So I don't have to worry about

5  that.  That's what I wanted to make sure, because I know --

6  I thought there was a relief from stay motion I thought I

7  had addressed.  I addressed something in this matter.  I

8  don't recall.

9          MR. SCHOLL:  You did, Your Honor.  It was a -- it

10 was an objection of claim.  We had a -- actually had an in-

11 court hearing on it.

12         MR. KRIK:  But actually, I believe that was

13 withdrawn by the debtor so --

14         THE COURT:  Okay.  I knew I had something on it,

15 and I wasn't sure if it was a relief motion.

16         MR. SCHOLL:  Withdrawn.  We did try to settle it,

17 I might add, but we --

18         THE COURT:  All right.  But I didn't -- I did not

19 have a hearing on a motion for relief.  All right.  All

20 right.  We're all on the same page.

21         All right, Mr. Scholl, you can commence by calling

22 your first witness.

23         MR. SCHOLL:  Okay.  Although, I would just say

24 about the insurance, which I know I interrupted --

25         THE COURT:  Okay.

 1              MR. SCHOLL:  Number one, the (indiscernible)

 2   insists that we provide that insurance, and it is attached

 3   to the first initial operating report, the proof of the

 4   insurance, and we specifically sent a copy to Mr. Krik

 5   before the last hearing, when it was scheduled, I think in

 6   December.  We sent him a copy of the insurance.  So there

 7   shouldn't be any issue about insurance.  But, okay --

 8              THE COURT:  It's filed records, you believe, on

 9   the file of the record?

10              MR. SCHOLL:  Yeah.  It's filed of record in the

11   -- what you have to do in a business case, you have to first

12   of all file a --

13              THE COURT:  The operating reports.  Uh-huh.

14              MR. SCHOLL:  Yeah.  Just a certification of

15   business debt.  It asks for a number of documents, and one

16   of the documents it asks for is proof of insurance --

17              THE COURT:  Okay.

18              MR. SCHOLL:  -- and it is attached.  So --

19              THE COURT:  Okay.  So if that's an issue, Mr.

20   Scholl, you guys can ask me, you know -- present it however

21   you feel appropriate.

22              Okay.  Call your first witness, please.

23              MR. SCHOLL:  All right.  Gabriel Bravo, who is --

24   Mr. Bravo, I think you have to swear him in, so --

25              THE COURT:  Yes, we will.  Just hold on.

```
 1              John?

 2                   WITNESS, GABRIEL BRAVO, Sworn

 3  (Oath administered)

 4          THE WITNESS:  Yes.

 5          MR. SCHOLL:  Speak up.

 6          THE WITNESS:  Yes.

 7          MR. SCHOLL:  All right.  Mr. Bravo are you --

 8          THE CLERK:  Could you please state --

 9          THE COURT:  No, no, no.

10          THE CLERK:  I'm sorry.  Could you please --

11          THE COURT:  Go ahead.  Please state --

12          MR. SCHOLL:  Are you the debtor?

13          THE COURT:  No, no.  We're not swearing him in,

14  yet.  Wait, Mr. Scholl.

15          MR. SCHOLL:  Oh, okay.  I thought we were done.

16  I'm sorry.  Go ahead.

17          THE COURT:  No.  Go ahead.

18          THE CLERK:  Just a couple formalities.  Mr. Bravo,

19  could you please state and spell your name for the record?

20          THE WITNESS:  Gabriel Bravo.

21          THE CLERK:  And could you please state your

22  address for the record?

23          THE WITNESS:  1168 South 9th Street.  That's my

24  residence.

25          THE CLERK:  And that's Philadelphia?
```

```
 1              THE WITNESS:  Yes, Philadelphia, PA, 19147.

 2              THE CLERK:  Thank you.

 3              THE COURT:  All right.  Now you may proceed Mr.

 4   Scholl.

 5              MR. SCHOLL:  All right.

 6                        DIRECT EXAMINATION

 7   BY MR. SCHOLL:

 8   Q    Mr. Bravo, are you the debtor?

 9   A    Yes, I am.

10   Q    Did you ever file a case before this case?

11   A    Yes, I did.

12   Q    How many cases did you file?

13   A    I believe this is the third one.

14   Q    All right.  Now this one -- I'm going to just talk

15   about the second one.  Was your second case dismissed within

16   a year from when we filed this case?  In other words, was it

17   dismissed in fact in November the 5th, 2020, as the docket

18   seems to indicate?  The prior case, when was it dismissed?

19   A    I believe in November, wasn't it?

20   Q    Of 2020?

21   A    Yeah.

22   Q    All right.  We had the sheriff sale within one year of

23   that; is that right?

24   A    Yeah.

25   Q    Okay.  Now, in the prior case, why was that dismissed?
```

```
 1   A    Because I was back in payments.

 2   Q    Right.  Why were you back in the payments?

 3   A    Because of the pandemic.

 4   Q    Okay.  And did you ever make a -- during that case, did

 5   you ever present the scenario of a sale to pay off the debt

 6   owed to EZ Cashing?

 7   A    No.

 8   Q    All right.  And in this case, you have made such a

 9   plan; is that right?

10   A    Yeah.

11   Q    And why?  What happened in the meantime?

12   A    Well, I would like to sell it to pay Mr. Weiser.

13   Q    Well, how did it come about that now you have a buyer

14   and you didn't have a buyer before?

15   A    Well --

16   Q    Did this buyer ever make an offer to you before?

17   A    No.

18   Q    Okay.  And how long ago did he make the offer for the

19   first time?

20   A    About two months ago.

21   Q    All right.  But you didn't finalize it now until just

22   this week; is that right?

23   A    Yeah.

24   Q    Okay.  How much is he offering to pay?

25   A    200,000.
```

1   Q    And how much are the lien -- is the lien of Mr. -- of

2   EX Cashing, let's just say?  Do you know how much they're

3   claiming they're due?

4   A    Well, they're claiming that -- around 140.

5   Q    Right.  Do you think that that's on the high side or

6   the low side?

7   A    The high, I would say.

8   Q    All right.  Is there any other liens that you know of

9   that are going to have to be satisfied?

10  A    No, I don't know.

11  Q    Well, do you think there are any?

12  A    Probably.

13  Q    Well, all right.  You don't know of any, though.

14  A    No.

15  Q    All right.  Do you think that the 200,000 proceeds are

16  going to be sufficient to pay off Mr. Weiser's -- or EZ

17  Cashing's debt?

18  A    Yes.

19  Q    All right.  And let me just ask, has EZ Cashing filed a

20  separate motion for relief from the automatic stay against

21  you?

22  A    I think so.  Yes, sir.

23  Q    Well, I don't think so.

24       THE COURT:  Mr. Scholl, you cannot testify.

25       MR. SCHOLL:  No.

```
 1              THE COURT:  Sorry.  I'm sorry.
 2   BY MR. SCHOLL:
 3   Q    Is there any sale on the -- a motion for relief on the
 4   docket that you know of?
 5   A    I don't know.
 6   Q    All right.
 7              MR. SCHOLL:  He's not sure.  Okay.
 8              THE COURT:  That's what I'm putting.  Not sure.
 9              MR. SCHOLL:  All right.  I think that's all, Your
10   Honor.
11              THE COURT:  All right.
12              Any cross-examination, counsel, Mr. -- counsel for
13   EZ Cash?
14              MR. KRIK:  Yes.  Yes, Your Honor.  Thank you.
15              THE COURT:  Mr. Krik.  Uh-huh.
16              MR. KRIK:  Yes, Your Honor.
17                        CROSS-EXAMINATION
18   BY MR. KRIK:
19   Q    Mr. Bravo, you filed a bankruptcy -- the previous
20   bankruptcy in 2018; is that correct?
21   A    Yeah.
22   Q    Okay.  And in that bankruptcy, you filed a statement of
23   schedules.  Your personal property, your real estate.  Do
24   you recall filling documents like that out with your
25   counsel?  Sir, do you recall filling out documents with your
```

In Re: Gabriel Bravo
33

1  counsel for bankruptcy cases where you state the value of

2  your real estate or personal property?

3  A    I'm (indiscernible) about that.  That --

4  Q    I can't tell if you're looking at me or looking at

5  something, Mr. --

6            THE COURT:  No, you can't ask Mr. Scholl for help.

7  You only -- do you remember going and having --

8            MR. SCHOLL:  I can't help.

9            THE COURT:  He said he doesn't know.

10           MR. KRIK:  Okay.

11           THE COURT:  You don't recall?  Mr. Bravo, you --

12           MR. KRIK:  Thank you.

13           THE COURT:  -- don't recall?  Okay.  Go ahead.

14           MR. KRIK:  I'd like to -- I'd like to introduce a

15  document, but my screen share is not allowed.

16           THE COURT:  No, we're doing it.  Did you send it

17  to my ESR, my courtroom deputy?  Or if you do, you just tell

18  him what you want and we -- that's why we have control.

19           MR. KRIK:  Oh, sure.  Sure.  Well, I am looking

20  for what has been labeled as C-13.  It was one of the

21  docketed items in the prior bankruptcy and its docket --

22           THE COURT:  Well, did you provide it -- no,

23  counsel.  Did you provide that in advance as required?

24           MR. KRIK:  Yeah, my pre-trial statement lists it,

25  and it indicates the docket number for any docketed entries.

```
 1              THE COURT:  Yes, but you're supposed to give us a
 2   copy.  My guy is not going to go looking for that.
 3              MR. SCHOLL:  He's supposed to -- you're right,
 4   Your Honor.   He's supposed to actually list it, which he
 5   didn't.
 6              THE COURT:  He said he did.
 7              MR. KRIK:  This is listed in my --
 8              THE COURT: (Indiscernible.)
 9              MR. SCHOLL:  He listed it, but he didn't produce a
10   copy of it.
11              THE COURT:   Well, okay.  Well --
12              MR. KRIK:  It said for trial purposes, for economy
13   purposes, not to send everybody copies of it, to just list
14   the docket number and the entry.
15              THE COURT:  Where does it say that at?
16              MR. SCHOLL:  It doesn't work that way.  I objected
17   to --
18              THE COURT:  Wait a minute, I -- whoa, Mr. Scholl,
19   whoa, whoa, whoa, whoa.  This is my order.  What did my
20   order tell you to do?
21              MR. KRIK:  I am opening up your order right now,
22   Your Honor.
23              THE COURT:  What did my order say?  I don't
24   recall.  I wrote that order like two years ago, or how many
25   years we've been in this pandemic.  Two years now.
```

1          MR. KRIK:  Yeah.  It says -- in the footnote it

2    says if an exhibit is on the docket, counsel may reference

3    the applicable CMECF docket number rather than serving the

4    exhibit itself on opposing counsel.  However, an exhibit

5    used in connection with the testimony of a witness must be

6    supplied to the witness.

7          So I have, you know, I have all of them parsed out

8    so that they can just be introduced individually.

9          THE COURT:  Yeah, but do you -- did you give them

10   to the --

11         MR. SCHOLL:  (Indiscernible.)

12         THE COURT:  Well, what that means is, you don't

13   have to, but you've got to provide them.  How are you going

14   to -- never mind.  I guess that I'm going to have to clarify

15   what I mean by that.  If you plan to introduce them, they

16   should be readily available, but since it seems to be a

17   little unclear, we'll pull that up.

18         John, can you pull up that docket entry?  What

19   case number are we in?

20         MR. KRIK:  Yes.  That is in Case Number 1815931.

21   I'm sorry, and that's --

22         MR. SCHOLL:  Again, I don't like to make technical

23   comments, but Mr. Weiser -- or Mr. Krik unfortunately filed

24   his entire report under that number instead of this number

25   or this case.  And the docket says it's been an erroneous

In Re: Gabriel Bravo

1  filing, so in theory, you don't have statements just filed.

2          But they may have corrected it, but they don't

3  usually do that to us.  They make us file it right with the

4  right number.

5          THE COURT:  Who filed it under the wrong -- wait a

6  minute.  So who filed it under the wrong docket entry?

7          MR. KRIK:  Your Honor, I'm not sure what Mr.

8  Scholl is saying.  My pretrial statement is filed in this --

9          MR. SCHOLL:  Mr. Krik --

10          MR. KRIK:  -- in this matter.

11          THE COURT:  All right.  So wait.  Wait.

12          MR. SCHOLL:  -- filed his pretrial statement under

13  the prior bankruptcy case instead of this one.  That isn't

14  correct.

15          THE COURT:  All right.  Hold on.  We can answer

16  that very easily.

17          John, can you look at this case and tell me is

18  there anything --

19          MR. KRIK:  Document --

20          THE COURT:  -- filed?

21          MR. KRIK:  -- Document 46.

22          THE COURT:  Docket entry 46 in the present case.

23          MR. KRIK:  Correct.

24          THE COURT:  All right.  Let's see.

25          THE CLERK:  Oh, Judge, I did notice the entry has

                      In Re: Gabriel Bravo                        37

 1  some kind of editing on our end.

 2            THE COURT:  Uh-huh.

 3            THE CLERK:  Is it possible the heading had the

 4  wrong case number?  Is that what happened, Mr. Krik?

 5            MR. SCHOLL:  Yeah.

 6            THE COURT:  Well, open the documents.

 7            MR. KRIK:  Oh, oh, I -- I'm looking at it right

 8  now.  The caption may have been taken from the prior case.

 9  I apologize.  It was filed in this matter.  The caption I'm

10  looking at --

11            THE COURT:  But it references the wrong case.

12            MR. KRIK:  -- it now.  But the -- the caption was

13  the -- I must have taken it from a different form.  It was

14  filed in this case and applicable to --

15            THE COURT:  So the caption is wrong, but it was

16  filed in this case.  You hear that, Mr. Scholl?

17            MR. SCHOLL:  That is correct.

18            THE COURT:  I'll look --

19            MR. SCHOLL:  Although, we're always required to

20  correct a caption and refile, so I doubt whether that's

21  acceptable to just say, well, we filed it in the wrong case,

22  but anybody can see it's the right -- it's meant to be this

23  number.  But it's not the number on the document.

24            THE COURT:  Okay.  So what do you want me to do

25  about that?

1         MR. SCHOLL:  Not allow him to continue to question

2   about this document, especially since again, he didn't

3   attach it as one of the exhibits.  He -- it's not one of his

4   exhibits.  He has a whole bunch of exhibits identified, but

5   he hasn't attached that as one of the exhibits.

6         THE COURT:  Mr. Krik --

7         MR. KRIK:  Yes, Your Honor.

8         THE COURT:  -- your response?

9         MR. KRIK:  Thank you.  I'd like to respond.  The

10  pretrial statement, having been docketed in this matter,

11  albeit a scrivener error in the docket caption, based upon

12  the fact that we have multiple prior bankruptcies with this

13  debtor, still effectuates substance over form and we are

14  here today with the appropriate document filed on this

15  docket.

16        As for the actual exhibits, any exhibit that is

17  not referenced with an ECF number has been attached to the

18  pretrial statement.  The pretrial statement otherwise lists

19  each document, their corresponding case and ECF number, and

20  where they are on the docket based upon my understanding of

21  the footnote and the -- of the order.

22        We believe that we should be entitled to introduce

23  documents that the debtor himself filed in different

24  bankruptcy cases, or were already of record and were either

25  filed by the debtor or filed in response to debtor's

1  pleadings in prior bankruptcies, to which Mr. Scholl and his

2  client have had more than enough opportunity to not only

3  know about, but have litigated those.

4          THE COURT:  Well, counsel, let me ask you.  When

5  you identified the docket entries, did you say what they

6  were?

7          MR. KRIK:  Yes.

8          THE COURT:  Okay.  All right.

9          MR. KRIK:  My pretrial statement gives the name of

10  the document, it's place on the docket, as well as the case

11  it was(indiscernible).

12          THE COURT:  John, can you pull up the pretrial

13  statement that was filed by EZ Cash?

14          THE CLERK:  Yes.  So, Judge, so I have it open.

15          So, Mr. Krik, all the items on here that -- are

16  they attached in here, or do I need to toggle back to the

17  other case?

18          THE COURT:  You're going to have to toggle.  I'm

19  going to have to clean that up to make it clear that if

20  they're going to -- if they're going to cross-examine the

21  debtor or any party, that they need to attach a copy,

22  because we're going to have the same problem we're having

23  here, which is you're going to be going in all these

24  different cases trying to look for stuff, and that was the

25  whole point was to try to -- if you were -- I'm trying to

1  make this the same as if it was in court.  And if we were in

2  court, you would hand up a copy.  We wouldn't tell people,

3  go look it up.

4        So I have to tighten up that footnote so people

5  understand that just because we're on Zoom doesn't mean that

6  this should be done in any way other than if we were in open

7  court.

8        So right now, against that ambiguity, he thought

9  he didn't have to attach it, but that's not what the Court

10  intended, but I'll go back and look at that language.

11        All right.  Pull up the pretrial statement from --

12  okay.  The remote witness, email list.  Okay.  What have we

13  got after that, John?  Go down some.

14        Okay.  Documents.  All filings concluding but not

15  limited to debtor's Chapter 13, C-1, their petition, proof

16  of claim.  Okay.  And so look at the top where he has the

17  wrong -- let me see.  Case number at the top we said.  It's

18  18.

19        All right.  Based on that, I'm going to allow the

20  pretrial statement as a scrivener's error.  It was filed in

21  the correct case.  There was no issue.  And then he says in

22  Paragraph 2, the pleadings in Gabriel 21-12926.  So if

23  that's what he's talking -- because that's all that was

24  identified, you know, was the matter of the 21-12926, and

25  those were the ones.

1          So you want to go to docket entry what?

2          MR. KRIK:  I'm sorry, Your Honor.  If you scroll

3     down, there are also references to the dockets of the prior

4     bankruptcy.

5          THE COURT:  Where?

6          MR. KRIK:  And adversary complaint.

7          THE COURT:  Right, but we're talking about that.

8     That's not where we are right now.  We're talking about --

9          MR. KRIK:  Well, I was looking for Item C-12,

10    which is in that case that is being referenced.

11         THE COURT:  Oh, in 18.  Okay.  All right.  Look

12    for C-12 in Case Number 18-15931.

13         (Pause)

14         THE COURT:  What docket entry again, counsel, was

15    that?

16         MR. KRIK:  This is correct.  This is the Docket

17    Entry Number 1, Mr. Bravo's petition in bankruptcy.

18         THE COURT:  Okay.  What do you want to ask him

19    about it?

20         MR. KRIK:  Well, I -- to the court clerk, I

21    apologized once.  I'm actually looking for Docket -- his --

22    I'm sorry.  That is the Docket 13 -- Docket 9.  I'm sorry.

23    Docket 9, his schedules.  That's what we're looking for.

24         THE COURT:  Counsel, that's why we ask people to

25    give it to us because we're going to do exactly what we're

 1  doing here.  So hold on --

 2          MR. KRIK:  And this is -- this is --

 3          THE COURT:  Counsel, hold on one second.

 4          MR. SCHOLL:  Well, it says it's Docket Number 12

 5  on this thing, so I don't think even 9 is correct.

 6          MR. KRIK:  I'm sorry.  It is -- it is -- no, it is

 7  Docket Number 9.  It's listed as Exhibit C-13 on my pretrial

 8  list.

 9          THE COURT:  Sorry, counsel.  I did not hear that.

10  I was distracted a bit.  So we want C-13?

11          MR. KRIK:  Correct.

12          THE COURT:  All right.  Which is not Number 9.

13  Number 13.  Okay.  All right.  Okay.

14          MR. KRIK:  Thank you.

15          THE COURT:  All right.

16          MR. KRIK:  May I proceed?

17          THE COURT:  Yes.

18          MR. KRIK:  Okay.

19  BY MR. KRIK:

20  Q    Mr. Bravo, do you recognize the document that's been

21  presented as -- to you as the schedules filed by you in your

22  prior bankruptcy?

23          THE COURT:  John, do we need to go up and down,

24  because it's more than one?  Just keep going.  Does he

25  recognize this -- keep going, because he's saying, do you

 1 | recognize these documents.  Just keep going down.

 2 |         MR. SCHOLL:  Supposed to be looking, Mr. Bravo.

 3 | Does this look familiar to you?

 4 |         THE COURT:  Mr. Scholl, you can't (indiscernible)

 5 | Mr. Scholl.

 6 |         MR. SCHOLL:  Well, I'm just trying to help.  I'm

 7 | trying to help everybody.

 8 |         THE COURT:  No, no.  Mr. Krik is doing his -- he's

 9 | good on his own.

10 |         MR. SCHOLL:  I just wanted (indiscernible) this

11 | thing going by a mile a minute.  I can't even --

12 |         THE COURT:  Well, does he --

13 |         MR. SCHOLL:  -- (indiscernible).

14 |         THE COURT:  Well, if he was sitting in court, he

15 | would get a chance to look at them.  We can go back one page

16 | at a time, because that's what -- you know, again, I'm

17 | trying to have this --

18 |         MR. SCHOLL: (Indiscernible.)  Well, I object,

19 | because I don't see any relevance to this, but can we get it

20 | directed what it is you're trying to show about these

21 | conditions, or schedules, that you think is relevant --

22 |         THE COURT:  Indiscernible.)

23 |         MR. SCHOLL:  -- to our motion?

24 |         THE COURT:  All right.  So, Mr. Krik, what

25 | specific schedule would you like him to look at?

1          MR. KRIK:  Sure.  I'd like to look at Part 1 of

2   Schedule A, and if I may, I'm looking at the prior

3   bankruptcy because there's a presumption of bad faith, and

4   we have discrepancies in the data that is in two different

5   schedules filed in both bankruptcies, and we would like to

6   address where these changes to the debtor's status came

7   from.  So I think --

8          THE COURT:  Well --

9          MR. SCHOLL:  Objection.  There is no discrepancy.

10         THE COURT:  Okay.  Well, let him make his case

11  about -- he can ask him what he said.

12         MR. SCHOLL:  All right.  So if there is --

13         THE COURT:  Mr. Scholl, it's his question.  Let

14  him ask him.  It says what it says.

15         MR. SCHOLL:  Okay.

16         THE COURT:  I don't know what that has to do with

17  anything, but go ahead.  Ask him.

18  BY MR. KRIK:

19  Q    Mr. Scholl -- I'm sorry.  Mr. Bravo, do you recognize

20  Schedule A that has been presented to you as filed by you in

21  your prior bankruptcy?

22         MR. SCHOLL:  Well --

23         THE COURT:  Was your answer yes, or no?  Go up

24  some more, John.

25         THE WITNESS:  Well, my English a little bit poor,

 1  so --

 2              MR. KRIK:  I'm sorry.  Your --

 3              THE COURT:  Do you recognize that, Mr. Bravo?  The

 4  first thing it has on here is 1168 South 9th Street.  Do you

 5  recognize --

 6              THE WITNESS:  That is my residence.

 7              THE COURT:  Okay.  You recognize that.

 8              THE WITNESS:  That is my residence.

 9              THE COURT:  Okay.  Go down, John.  Do you

10  recognize this document?

11              MR. KRIK:  Okay.  If we can -- if we can look at -

12     - well --

13              THE COURT:  Okay.

14              MR. KRIK:  I'm not sure if he admitted to

15  recognizing it or not yet, Your Honor.

16              THE COURT:  Do you recognize that or not?

17              THE WITNESS:  Well, 1122 is where I had the

18  business there.

19              THE COURT:  No, no, no, no, no.  The piece of --

20  that's why we need to have the paper.  Mr. Scholl, do you

21  have those printed out?

22              MR. SCHOLL:  Somewhere I do, but I don't have it

23  printed out right now, today.  I'm sorry.

24              THE COURT:  Oh, all right.  All right.  Okay.  All

25  right.

1    So, Mr. Bravo, do you recognize this piece of

2    paper.  Not what's on it, but do you recognize filling this

3    out with your lawyer and filing it in your 2018 case?

4         THE WITNESS:  Well, I don't remember.

5         THE COURT:  If you -- Okay.  You don't remember.

6    Okay.  That's his answer, counsel.  He don't remember.  Go

7    ahead.

8         MR. KRIK:  Okay.

9    BY MR. KRIK:

10   Q    Mr. Bravo, do you remember at any point, value -- in

11   the 2018 case, valuing your property at $100,000?  The

12   property at 1122 South 9th Street.

13   A    I don't remember.

14   Q    Can you -- can you clarify whether the document in

15   front of you states $100,000 for the value of this property?

16   A    Well, there it said 100,000, but I don't remember.

17   That's -- was a while ago.

18   Q    Okay.  So it's safe to say that it -- at the time you

19   filled out these schedules, you believed the property was

20   worth $100,000?

21   A    Well, probably, but I'm not sure.

22   Q    Okay.  If we could scroll down to Part 4, Section 19?

23   And at this time, in this document, did you indicate that

24   the value of -- that your value in the restaurant business

25   amounted to $500?

1   A     Probably the refrigerators only.

2   Q     I'm sorry, can you repeat that?

3   A     Probably the refrigerators only.

4   Q     (Indiscernible)?

5         MR. SCHOLL:  Actually, I can't see any value.  On

6   my copy, I can't see any value.  I can see 19 and I see the

7   name filled in, and then it says percentage of ownership.

8   That I can read, but I cannot read anything else on that

9   line.

10        THE COURT:  Well, it says he -- he valued his

11  interest in that entity at 50 percent, and he believed the

12  entity -- that value in the entity Fiesta Tropical Acapulco

13  was $500.

14        MR. SCHOLL:  Okay.  I can't see that, but I'll

15  take your word for it, that's what it says.

16        THE COURT:  That's what it says on the screen.  I

17  don't know -- that's what it says.

18        MR. KRIK:  All right.  If we could go to Part 5,

19  Number 40?

20  BY MR. KRIK:

21  Q     And I believe the testimony, Mr. Bravo, was that that

22  amount was based on refrigerators?

23        THE COURT:  Well, he just --

24        MR. SCHOLL:  No, he didn't say that.

25        THE COURT:  Okay.

1          MR. KRIK:  Okay.

2          THE COURT:  All right.  Refrigerators, range,

3  exhaust, deep fryer.

4  BY MR. KRIK:

5  Q    Mr. Bravo, can you tell me who owns the items listed

6  there, the refrigerator, range, exhaust hood, and other

7  equipment?

8  A    Myself.

9  Q    That is not owned by the company?

10 A    No.

11 Q    Okay.  All right.

12         MR. SCHOLL:  It actually says it's owned by him

13 and his wife, but you know --

14         MR. KRIK:  Your Honor, Mr. Bravo --

15         THE COURT:  Mr. Scholl --

16         MR. KRIK:  -- counsel keeps --

17         THE COURT:  -- Mr. Scholl, please let him testify.

18 Okay?

19         MR. SCHOLL:  Well, first of all, we can't see it.

20 We cannot see it.  The --

21         THE COURT:  I don't know why because it's up on

22 the -- I have no idea why you can't see it.

23         MR. KRIK:  That could be a resolution issue.

24         MR. SCHOLL:  All the -- I'll tell you why we can't

25 see it, Your Honor, because the righthand column of that

1  document is covered by the pictures of the people who are on

2  the screen.

3         THE COURT:  Well, then you need -- then you need

4  to adjust it so that you can see it.  It's not -- you need

5  -- it's just -- it's a matter of how you're looking at it.

6         Go to your view, change your view, and then once

7  you change your view -- because whether he gave us this or

8  not, had he given to us, I still would bring it up.  So --

9         MS. SMITH:  Well, Your Honor.  I'm sorry.  My

10  technology skills are not at the highest point, and I don't

11  --

12         THE COURT:  Well, welcome to the club.  Only

13  because somebody showed it to me.  I didn't know it either,

14  so --

15         MS. SMITH:  So, but what I can see, I can't -- I

16  don't want to move the pictures, but if it's moved to the

17  lefthand side --

18         THE COURT:  Right.

19         MS. SMITH:  -- that information becomes available.

20  (Indiscernible.).

21         THE COURT:  All right.  So what we'll do, Mr.

22  Scholl, if you can't see it, I'll have my ESR kind of slide

23  the bar so you can.  Okay?

24         MR. SCHOLL:  All right.

25         THE COURT:  All right.  So you see it now, where

1    it says 15,000?

2            MR. SCHOLL:  Yes.  Well, it doesn't have the

3    whole figure on it, but yeah, it looks like 15,000.

4            THE COURT:  Right.  It has refrigerators, range,

5    and exhaust hood, deep fryer, grill, two freezers.  Right.

6    You can just drag the picture around with your mouse if you

7    move it around.  You should be able to -- I'm not good at it

8    either because trust me, somebody had to show me how to do

9    it.

10            John, can you make it a little smaller so they can

11    see it?  See if -- I make it -- well, I can't do anything.

12    It's just on my screen.  I have my view on side-by-side

13    speaker.  If you put it on standard, Mr. Scholl, you're

14    going to get the people's pictures.  So go on the view and

15    put side-by-side speaker as your option.  It should be --

16    hit view --

17            MS. SMITH:  Your Honor, I'm sorry, but I can't get

18    the (indiscernible) data and Mr. Bravo --

19            MR. SCHOLL:  I'll let you do it because I don't

20    know what she's talking about.

21            THE COURT:  Okay.  There we go.  You see view --

22    you see view, Ms. Smith --

23            MS. SMITH:  Yes.

24            THE COURT:  -- at the top in your phone?  And hit

25    it from -- to side by -- hit it view to --

 1              MS. SMITH:  That at the top, Your Honor?  At the

 2   bottom?

 3              THE COURT:  Yes.  At the top.  On mine, it's at

 4   the top.

 5              THE CLERK:  Mine is the top.  Probably at the top.

 6              THE COURT:  All the way at the top.  My view is on

 7   speaker view, but you can (indiscernible).

 8              MS. SMITH:  Okay.  I hit view, and then what else?

 9              THE COURT:  Go to -- John, what was the next one

10   you hit?  I hit speaker, and then -- now mine -- mine is

11   changing.

12              MS. SMITH:  All right.  All right.

13              THE COURT:  Yeah.  Gallery will give us everybody.

14   Does that get us where we need to go, John, if she's on

15   gallery?

16              THE CLERK:  I would just suggest pick anything

17   that wasn't what you already had it on.

18              THE COURT:  All right.  Let's see.  Well, if I'm

19   on --

20              MS. SMITH:  It's on gallery already.  It's already

21   on gallery.

22              THE CLERK:  Well, then go to the other one.

23              THE COURT:  Go to the other one.  Go to speaker.

24              THE CLERK:  Let me know when you're there.

25              THE COURT:  Okay.

 1              MS. SMITH:  I'm there.

 2              THE COURT:  All right.  Now, bring up the exhibit,

 3    John.  And then when they bring it up -- okay.

 4              THE CLERK:  Can you see the full left, and right?

 5              MS. SMITH:  Yeah.  What happens is their speaker

 6    on the side is -- is blocking it.  Where they say --

 7              THE CLERK:  Yeah.

 8              THE COURT: -- their view with speaker, they have --

 9              THE CLERK:  Mr. Scholl, can you see it now,

10    everything from left to right?

11              THE COURT:  Probably not because now mine's

12    screwed up.  View option.  View --

13              MS. SMITH:  Yeah, I'm sorry.  I'm not going to be

14    able to manipulate this from here.

15              THE COURT:  Okay.  View option should be side-by-

16    side mode.  You see where you have that at, Ms. Smith, where

17    it says view, speaker view, right?  And then --

18              MS. SMITH:  Yes.

19              THE COURT: -- John -- all right.  Now, John, go

20    to -- put the exhibit up, and then you see at the top where

21    it says you are viewing exhibit co-host screen?  You see

22    view options?  What are you seeing now?

23              MS. SMITH:  I'm seeing speaker, gallery, exit full

24    screen.

25              THE COURT:  Okay.  John, you have it up, right?

In Re: Gabriel Bravo                                            53

```
 1              THE CLERK:  Try exit full screen.  See what
 2   happens.
 3              MS. SMITH:  All right.
 4              THE CLERK:  Got nothing to lose now.
 5              THE COURT:  Okay.  What do you got now?
 6              MS. SMITH:  I have the document, and we can see
 7   $15,000 now.
 8              THE COURT:  Okay.  Just leave it there.  Don't
 9   change anything.  Okay.  Thank you, Ms. Smith.
10              MS. SMITH:  You're welcome.
11              THE COURT:  All right.  So you see that, Mr.
12   Bravo?
13              THE WITNESS:  Yeah.
14              THE COURT:  Okay.  And he asked you, did you own
15   that, and you said yes, correct?
16              THE WITNESS:  Yes.
17              THE COURT:  All right.  Go ahead, counsel.
18              MR. KRIK:  Thank you.  Thank you.
19   BY MR. KRIK:
20   Q    And I would like to now look at Part 8, which is Page
21   -- well, it should be Page 9.
22        And, Mr. Bravo, if you could clarify for me that you
23   indicated here your total personal property as of the last
24   bankruptcy was $23,300; is that correct?
25   A    If this -- I don't understand please.
```

1          THE COURT:  Okay.  He's asking you does that

2   document say that your personal property was $23,300.

3          THE WITNESS:  That's what's inside the restaurant

4   or --

5          THE COURT:  No, I don't know.  It just says

6   personal property.  That's what it says there.

7          THE WITNESS:  Oh, you mean like cars and things

8   like that, right?

9          THE COURT:  I have no clue.  He's just asking you

10  if this is what it said.

11         THE WITNESS:  Yeah, probably.  Yeah.

12         THE COURT:  Okay.

13         MR. KRIK:  Okay.  Thank you.  Thank you.

14         I'd like to -- that is all for this exhibit.

15         THE COURT:  Okay.

16         MR. KRIK:  I would like to pull up what is listed

17  as C-4, and that is in the current bankruptcy Docket Number

18  12, the debtor's schedules in this case.

19      (Pause)

20         MR. KRIK:  Thank you.  And if we could go to Part

21  1.2?  Thank you.

22  BY MR. KRIK:

23  Q    Mr. Bravo, do you recognize this document?

24         MR. SCHOLL:  Sorry.

25  BY MR. KRIK:

1  Q    Mr. Bravo, do you recognize this document that is on

2  the screen?

3  A    Well, I have more -- more than one.

4  Q    Okay.  Do you see a document that states the property

5  address in question, and at the top it says this case

6  number, 21-12926?

7  A    I don't see that number.

8  Q    It is being highlighted by the Court.

9  A    Yeah.

10  Q    Do you see that number now?

11  A    No.

12        THE COURT:  You can't see that at all?  Mr.

13  Scholl, can you see that exhibit?

14        MR. SCHOLL:  I can see it, but the same problem.

15  We have -- we have all the pictures over on the side so I

16  can't see what's over on the right side.

17        THE COURT:  Well, okay.  So, Mr. Scholl, right

18  next to you, where that paper is, where the people are on

19  the side, there's a bar that runs up and down.  Take that

20  bar, it has a little -- and drag it to the right and it

21  should give you more space -- move the pictures over and

22  give you more space.  Can you see what I'm talking about,

23  Ms. Smith, where the pictures are and where the documents

24  are there's a line that runs down that it lets you adjust

25  the pictures on the screen?  Kind of like, move them over.

In Re: Gabriel Bravo

56

 1   Move them to your right and that will give you more of the

 2   documents and --

 3           MS. SMITH:  Well, I've lost the document

 4   completely now.  I'm sorry.

 5           THE COURT:  That's okay.  All right.  Okay.  What

 6   -- I'm sorry, guys.  Double click to enter full-screen mode.

 7           All right.  John, where we at?  All right.  Okay.

 8           MS. SMITH:  Now -- yes, Your Honor, we can see it

 9   now.

10           THE COURT:  Can you see -- can you see everything

11   now?  You see the highlighted 21-1294 --

12           MS. SMITH:  Yes.

13           THE COURT:  Okay.  Don't touch anything again, Mr.

14   Scholl.  Just leave it like that.  We should be good.

15           MR. SCHOLL:  I wouldn't dream of doing that.

16   Yeah.

17           THE COURT:  All right.  Thank you again.

18           All right.  So you see that number, Mr. Bravo?

19           THE WITNESS:  Yeah.

20   BY MR. KRIK:

21   Q    Mr. Bravo, are these -- is this your schedule filed in

22   this matter?

23   A    Well, I don't remember.

24   Q    Do you recall when you filed this bankruptcy, providing

25   a value for the property at 1122 South 9th Street?

1   A     Say that again, please?

2   Q     I'll rephrase it.  Did you tell your attorney that the

3   value of 1122 South 9th Street was $200,000 in this

4   bankruptcy case?

5   A     I don't remember.  I don't remember.

6   Q     Can you tell us if the document in front of you

7   refreshes your recollection?

8   A     I don't remember.

9   Q     Can we take a look at the -- can you review the page

10  where it says current value of the entire property?  Do you

11  see that?

12  A     At the bottom?

13  Q     It's being circled by the Court's -- highlighted by the

14  Court.

15  A     No.  Oh, where it said 200,000?

16  Q     Correct.  Is that the number that you put in the

17  bankruptcy?

18  A     Of the last case.

19  Q     This is the current case.

20  A     Oh, this is -- case.  Yeah, this case.

21        MR. KRIK:  Thank you, Mr. Scholl.  I'll redirect

22  him if necessary.

23  BY MR. KRIK:

24  Q     So can you tell me how you had a value of $100,000 in

25  the prior case and $200,000 in this case, both -- how did

1   you come up with those amounts?

2       Mr. Bravo, how did you come up with the value of the

3   property in both cases?

4   A    I don't remember.  It was a while ago.

5   Q    Do you remember how you came up with the value of the

6   property in this case?

7   A    No, I don't.  I don't remember.

8   Q    Did you talk to any real estate agents?

9   A    I don't remember.  It was a while ago.

10  Q    November of 2021, do you remember speaking to any real

11  estate agents?

12  A    November of '20 -- yeah.  Somebody came to the

13  restaurant and they offered me to buy the 1122.  They

14  offered me 200,000.

15  Q    Okay.  So the value of the property you -- that you

16  believe is based on an offer to purchase?  The -- someone

17  offered you this amount, so you believe it's worth this

18  amount?

19  A    Well, they offer me that.

20  Q    Okay.  Did you ever have an appraisal done of the

21  property?

22  A    No.

23  Q    Did you ever obtain or get an opinion, a separate

24  opinion from a real estate agent?

25  A    No.

1   Q    Okay.  And you don't recall how you came up with the

2   $100,000 value in your prior bankruptcy?

3   A    No, I don't remember.

4   Q    Okay.  If we can please go to Part 5 in this matter?

5        MR. SCHOLL:  Are we in the present bankruptcy now?

6        MR. KRIK:  Present bankruptcy, this case.  Yes.

7        MR. SCHOLL:  Okay.

8        MR. KRIK:  I'm sorry.  Let's go one more -- Part

9   4.19.  4.19.  I skipped one.  Thank you.

10  BY MR. KRIK:

11  Q    Mr. Bravo, in this case, you indicated that your value

12  in the restaurant business was now $25,000.  Can you explain

13  where you came up with that value?

14  A    Yeah, the whole -- the whole because the prices went

15  up.  Grills, deep fryers, refrigerators.

16  Q    Well, you indicated that you owned those, not the

17  corporation, correct?

18  A    The equipment, yeah.

19  Q    So how is the stock in the company -- went from $500 to

20  $25,000 in the two bankruptcies?  The prior bankruptcy

21  schedule showed $500 value for your stock in the company.

22  Can you explain how it's now $25,000?

23  A    I don't remember anything about the prior case.

24  Q    Can you tell me how you came up with or determined the

25  value of your company, Fiesta Acapulco Restaurant?

1   A     At the present?  Right now?

2   Q     Yes, how did you come up with a value for the company?

3   A     Because the equipment and everything.

4   Q     Okay.  So the equipment that the company does not own

5   is what you decided to use for the value of the company?

6   A     I think, yeah.

7   Q     Okay.  Does the company actually own any assets?

8   A     What that mean, anything?

9   Q     Does the company actually own any property other than

10  real estate?  Well, it doesn't own the real estate.

11  A     Oh, no.

12  Q     No.  Okay.

13  A     No.

14  Q     So this valuation of $25,000 is not supported by any

15  evidence by -- that you have with you?

16  A     What do you mean (indiscernible) 1:08:50?

17  Q     So it's -- you do not have any -- you cannot explain to

18  the Court at this point how you came up with a $25,000 value

19  of your company; is that correct?

20  A     Well, I told you the equipment and what I have inside

21  there, I believe it cost about that, that amount.

22  Q     Okay.  And just one more time, I just -- is there any

23  explanation for the difference in your prior bankruptcy to

24  the current bankruptcy?

25  A     I don't remember the prior bankruptcy.

1  Q    Okay.  And if we could just go to P-8, Number 59,

2  please?

3          THE COURT:  Part 8, Number 59?

4          MR. KRIK:  Yes, I'm sorry.  Part 8.  Yes.

5  Perfect.  Thank you.

6  BY MR. KRIK:

7  Q    Mr. Bravo, on this schedule, you listed your total

8  financial assets of $27,000.  We took a look at your prior

9  bankruptcy where our total financial assets were 1,500.  Can

10  you just explain to the Court the reasoning for this

11  increase in your financial assets?

12  A    (Indiscernible.)  Well, this was while ago.  I don't

13  remember.

14  Q    Okay.  This was filed in 2000 -- November of '21,

15  correct?

16  A    This one is the -- is that the recent (indiscernible)9?

17          MR. SCHOLL: (Indiscernible) witness.  This seems

18  to be your present bankruptcy schedules.

19  BY MR. KRIK:

20  Q    So, okay, I'll end that line of questioning with the

21  answers that you're not -- that you are not familiar with

22  why there's a discrepancy of that amount.  Is that

23  acceptable, that you're unsure of the reason there's a --

24  the difference between the two schedules?

25      Mr. Bravo, would you agree that there is a difference

1    between the -- your filings in the 2018 bankruptcy and the

2    filings in the 2021 bankruptcy?

3    A    Well, from the first bankruptcy, I don't remember.

4    Q    Okay.  But from the documents you've seen, you agree

5    that there is a difference in your amount claimed for the

6    value of the property, correct?

7         THE COURT:  Which property, counsel?

8    BY MR. KRIK:

9    Q    For the value of 1122 South 9th, you would agree that

10   you changed values from 100 to 200,000; is that correct?

11   A    That's what the offer I have for somebody who was

12   interested to buy the property.  He offered me 200,000.

13        THE COURT:  Mr. Bravo, what he's asking you is, in

14   2018 you said it was worth 100, and the document today says

15   it's worth 200.  Is that what you wrote on both the -- on

16   the documents?  Right?

17        THE WITNESS:  Well, now it's what I have a offer.

18        THE COURT:  I know that, but that's not the point.

19   The question is, it says 100 in the 2018 and it says 200 in

20   this one.  That correct?

21        THE WITNESS:  I think so.  Probably.

22        THE COURT:  Okay.

23   BY MR. KRIK:

24   Q    Thank you.  And you would agree that there is a

25   difference between the valuation of the company that you

1   gave in the past of 500, and that you've currently given of

2   $25,000; is that correct?

3   A    Well, I don't remember prior the -- from the prior

4   case.  I don't remember.

5   Q    Understood.  Were the documents that you've seen that

6   you were shown, do you have any reason to believe that they

7   are not true and accurate?

8   A    Again, I don't remember the prior case.

9   Q    Okay.

10          MR. KRIK:  I am finished with this exhibit and I

11   would pull up, in this matter, C-2, which is Docket Number

12   6.  It's debtor's motion to extend the stay.

13          MR. SCHOLL:  That actually shouldn't be an

14   exhibit.  That's one of the pleadings in the case.

15          MR. KRIK:  Well, all right.  I can -- you do not

16   need to pull that exhibit up.

17   BY MR. KRIK:

18   Q    I have a question for you, Mr. Bravo, regarding these

19   -- proposed sale.  Can you tell me the name of the

20   individual who approached you with an offer to purchase?

21   A    I believe his name is Zhao.

22   Q    Can you spell that?

23   A    I don't know.  I believe it's Z-H -- I don't remember.

24   It's a Chinese guy.  A Chinese name.

25   Q    Does the name Jack Zhao sound familiar to you?

1    A    Yeah.

2    Q    And is Mr. Zhao your real estate agent?

3    A    No.

4    Q    Okay.  Does he represent the buyer?

5    A    Yeah, I think so.  Yeah.

6    Q    And do you know -- you provided the Court with an

7    agreement of sale, correct?

8    A    Yeah.

9    Q    And did you receive a deposit from the potential buyer?

10   A    Not yet.

11   Q    Did you receive any financial documentation showing the

12   buyer's ability to purchase this?

13   A    The agreement.

14   Q    Understood.  Did you ask the buyer for any information

15   regarding the -- his financials that would make him worthy

16   of purchasing the property?  Did you ask for any financials

17   from the buyer?

18   A    Well, together with the agreement, there was no papers.

19   Q    Did you provide those papers to the Court or opposing

20   counsel?

21   A    I don't remember.

22   Q    And the agreement of sale that you presented was dated

23   November 1st of 2021; is that correct?

24   A    I think so.

25   Q    And do you -- does it --

In Re: Gabriel Bravo

```
 1              MR. SCHOLL:  Which one are you talking about?  The

 2    one that's attached to the motion to sell is dated much

 3    later because it was just signed.  Have you seen the motion

 4    to sell?  It was all filed (indiscernible).

 5              MR. KRIK:  The agreement is dated November 1st

 6    from the motion to sell.  If you could -- I guess if --

 7              MR. SCHOLL:  No, it wasn't -- it wasn't -- that

 8    was a --

 9              MR. KRIK:  Understood.  If we can pull up --

10              MR. SCHOLL:  -- preliminary document.

11              MR. KRIK:  -- Document 47?

12              MR. SCHOLL:  That's the same property, but that

13    was the preliminary agreement of sale sent.

14              MR. KRIK:  Object.

15              MR. SCHOLL:  It neglect -- it misidentifies --

16              MR. KRIK:  Your Honor, you're muted.  Your Honor,

17    you're muted.

18              MR. SCHOLL:  It misidentifies the seller.

19              THE COURT:  All right.  Let's stop right there.

20              Mr. Krik, what agreement of sale are you referring

21    to?

22              MR. KRIK:  I would like to go to Document 47 on

23    this docket, this current docket.

24              THE COURT:  Okay.

25              MR. SCHOLL:  Wait, current docket, Number 47.
```

1   Okay.

2           MR. KRIK:  And the exhibit attached to the end.

3           MS. SMITH:  We haven't got this, Your Honor.

4           THE COURT:  Here it comes.  Hold on.  This is

5   agreement of sale between -- can you make it bigger, John?

6   Okay.  GE2 Realtor is the broker company, licensed as Jack

7   Zhao, and the agreement is between --

8           MR. SCHOLL:  Oh, there it is.

9           THE COURT:  -- buyer is GEP Capital or it's

10  assignee.  Keep going.  And the email, it got this guy's

11  email.  Keep going down, and there's initials on this page,

12  buyer's initials, seller's initial.  Keep going down, John.

13  Oh, but they're dated November 1st.  Dated -- the agreement

14  was dated November 1st.  When was it signed?  Keep going.

15          MR. SCHOLL:  I think it was signed February 9th

16  and February 11th.

17          THE COURT:  So what was the question -- keep

18  going, all the way down.  I see signature dates on this too?

19  Yeah.  Okay.  So it's dated November 1st.  So that was your

20  question, is that that --

21          MR. SCHOLL:  Correct.

22          THE COURT:  -- agreement is dated November 1st.

23          Okay.  It's dated November 1st.

24          MR. KRIK:  Thank you.

25          THE COURT:  That what it says on there --

```
 1              MR. KRIK:  Yes.

 2              THE COURT:  -- Mr. Bravo?

 3              MR. KRIK:  That would be Page 4 of this document,

 4   4 of 11.

 5              MS. SMITH:  Isn't it on the first (indiscernible).

 6              MS. SMITH:  We don't have this.

 7              MR. SCHOLL:  Your Honor, is it dated from?

 8              MS. SMITH:  February 11th, 2022.

 9              THE COURT:  Oh, whoa, whoa, whoa, whoa.  Whoa,

10   whoa, whoa, whoa, whoa.

11              MS. SMITH:  Sorry, Your Honor.

12              THE COURT:  All right.  The very date on the top

13   of this page says by this agreement --

14              MR. KRIK:  Yep.

15              THE COURT:  -- dated November 1st.  Keep going up.

16   Going up, John.

17              MR. KRIK:  Got you.

18              THE COURT:  Okay.

19              MR. KRIK:  Thank you.

20              THE COURT:  This agreement is dated -- it might be

21   dated November 1st, but that might not have been when they

22   agreed.  Okay.  So it was dated November 1st.  What's your

23   question, Mr. Krik?

24              MR. KRIK:  Thank you.  Thank you, Your Honor.  I'm

25   just trying to make sure we're looking at the right document
```

1    and so forth.

2    BY MR. KRIK:

3    Q    Paragraph 2-1 indicates a deposit that you have

4    indicated, Mr. Bravo, that you have not received the deposit

5    yet; is that correct?

6    A    I haven't received.

7    Q    Okay.

8             THE COURT:  Well, let's see.  It says initial

9    deposit within 5 days of execution date.

10            MR. KRIK:  I recognize that, Your Honor, that that

11   --

12            THE COURT:  Good.

13            MR. KRIK:  -- if the execution date was on the

14   11th, that we are still within a 5-day period.

15            THE COURT:  Okay.

16   BY MR. KRIK:

17   Q    If you go down to item -- Section 3 of this, Mr. Bravo,

18   do you see that the settlement date is set for April 11th?

19   A    I think so, sir, right there.

20   Q    Okay.  Thank you.  And can you go to Page 7?

21            THE COURT:  Are we looking for a paragraph or

22   something --

23            MR. KRIK:  Paragraph 7.  Paragraph --

24            THE COURT:  -- counsel?

25            MR. KRIK:  -- Paragraph 7.  Paragraph 7.

```
 1              MR. SCHOLL:  Well we're at Paragraph 12.

 2              THE COURT:  Well, he said 7.  Go to whatever

 3    paragraph he says.

 4              MR. KRIK:  Paragraph 7.  Thank you.

 5              THE COURT:   Paragraph 7.

 6    BY MR. KRIK:

 7    Q    Mr. Bravo, did you talk to the buyer, potential buyer,

 8    at all regarding this transaction?

 9    A    I spoke to Jack.

10    Q    Okay.  Did Jack advise you of the -- are you aware of

11    the financing contingency that the buyer is seeking?

12    A    What do you mean, financing contingency?

13    Q    Are you aware that the buyer is looking for a mortgage?

14    A    I think it say on the agreement, no?

15    Q    And are you aware that there is no date set in Section

16    7B for the buyer to provide evidence of his financing?

17              MR. SCHOLL:  Well, first of all, we have Paragraph

18    4 right there.

19              MR. KRIK:  Objection.  Objection.

20              MR. SCHOLL: (Indiscernible.)

21              THE COURT:  Whoa, whoa, whoa --

22              MR. KRIK:  I can't --

23              THE COURT:  -- whoa, whoa.  Mr. Scholl, you can

24    ask --

25              MR. SCHOLL:  Well, he's asking something about --
```

 1              THE COURT:  -- (indiscernible).

 2              MR. SCHOLL:  -- a different paragraph.  How can he

 3      answer to that?

 4              THE COURT:  Mr. Scholl, he can ask him about 7,

 5      and when it's your turn for redirect you can ask him about

 6      4.  He can ask whatever he wants about 7, but you can ask

 7      about 4.  Okay.

 8              MR. KRIK:  Your Honor, I'm moving through the

 9      document.

10      BY MR. KRIK:

11      Q    Paragraph 7B does not have a date for the financing

12      commitment date; is that correct, Mr. Bravo?

13      A    Was supposed to be dated closing by -- I mean, April

14      11, so --

15      Q    Okay.  But you would agree that no date or deadline has

16      been put on the potential buyer at this time?

17      A    Well, April 11th.

18      Q    So just the closing date; is that correct?

19      A    As far as the --

20      Q    Just the settlement --

21      A    -- agreement date.

22      Q    All right.  But we can agree that there's no

23      information filled in in Paragraph 7B?

24              MR. SCHOLL:  It's pretty hard to remember.  I

25      don't remember being shown Paragraph 4.

  1           THE COURT:  Okay.  What -- what is your objection,

  2  Mr. Scholl?

  3           MR. SCHOLL:  It's the wrong paragraph.

  4           MR. KRIK:  I think he's having confusion with what

  5  he sees on the screen.  He says Paragraph 4 is --

  6           THE COURT:  Is 7 --

  7           MR. KRIK:  -- on the screen.

  8           THE COURT:  Financing is 7, Line 78, he's saying

  9  elected was financing.

 10           John, highlight that please, if you can.  And that

 11  7, financing contingency, check elected, and then that --

 12  and he's saying there's no date in the financing commitment

 13  date; that that's blank.  It's blank, right?  Okay.  Mr.

 14  Bravo, is that blank?  That -- it says financing commitment

 15  date, the third yellow highlight.

 16           THE WITNESS:  Yeah, I think so, Your Honor.

 17           THE COURT:  Okay.

 18           MR. KRIK:  Thank you.

 19           THE COURT:  There's no date in there, right?

 20      (No audible response)

 21           THE COURT:  Okay.

 22  BY MR. KRIK:

 23  Q    Mr. Bravo, did you have any real estate professional

 24  review this agreement of sale with you?

 25  A    Just Jack.

1  Q    So you had the buyer's agent explain the document to

2  you?

3  A    Mr. Jack.

4  Q    All right.  And Mr. Jack is the buyer.  Do you know if

5  Mr. Jack is part of GE Capital?

6  A    No, I don't know.

7  Q    Are you aware of whether or not Mr. Jack Zhao is part

8  of GE 21 Realty?

9  A    I don't know.

10  Q    Okay.  But it's safe to say that you did not have --

11  you don't have an agent who reviewed this before you signed

12  it?

13  A    Not on my side.

14  Q    Okay.  Thank you.  If we could --

15        MR. KRIK:  I don't have any more questions on this

16  -- on this agreement.

17        MR. SCHOLL:  We have no recross.  Redirect, Your

18  Honor.

19        THE COURT:  Oh, wait a minute.  Are you done, Mr.

20  Krik?

21        MR. KRIK:  I didn't rest yet.  I'm just taking a

22  look at my notes.

23        THE COURT:  Right.  He's not done yet, Mr. Scholl.

24        MR. SCHOLL:  Okay.  Well, since he stopped

25  speaking, I assumed he was done.  I'm sorry.

In Re: Gabriel Bravo

73

1          MR. KRIK:  Yep.

2   BY MR. KRIK:

3   Q    And, Mr. Bravo, I know we touched on this earlier.  Do

4   you happen to know off the top of your head who maintains

5   your property insurance, what company?

6   A    The company, I don't remember right now, but I -- but I

7   bought it through research agency.

8   Q    What agency?  I'm sorry.

9   A    Their research.

10  Q    A research agency?

11  A    That researches the name of the company.  I mean the --

12  Q    The broker?

13  A    Yeah.

14  Q    Okay.  And do you know how much you pay annually for

15  that insurance?

16  A    Oh, I pay a (indiscernible).  I pay like $300 a month.

17  Q    And do you know whether or not EZ Cashing is listed on

18  your insurance as an additional insurer?

19  A    I don't remember, but I think it is under insurance.

20  Q    Would you have any objection confirming that after this

21  matter?

22  A    I can get you the receipt from the insurance.  That's

23  no problem.

24  Q    Thank you.  Thank you.

25          MR. KRIK:  Your Honor, I have -- I'd like to call

```
 1   up what is listed as C-22, and that's Docket Number 27 in

 2   the adversary matter.

 3            THE COURT:  Docket what?

 4            MR. KRIK:  Docket Number 27, Item C-22.

 5            THE COURT:  Hold on, counsel.  This has nothing to

 6   do with you.  I dropped my mouse so I have to get it.  Hold

 7   on.  (Indiscernible) I don't want to knock anybody off.

 8            MR. SCHOLL:  I have no idea what he's talking

 9   about.

10            THE COURT:  All right.

11            MR. SCHOLL:  He's asking me a question.  I can't

12   answer it.  I don't see any C --

13            THE COURT:  Well --

14            MR. SCHOLL:  -- the only C-22 I see is the order

15   granting motion to take judicial notice on 10/10/19.  Is

16   that what you're referring to?

17            MR. KRIK:  Yes.

18            MR. SCHOLL:  Okay.  Are you asking Mr. Bravo about

19   that?

20            MR. KRIK:  Mr. Scholl, I will ask Mr. Bravo

21   questions during my examinations.

22            THE COURT:  Well, okay.  His question is --

23            MR. SCHOLL:  Go ahead.

24            THE COURT:  -- if you intend to ask Mr. Bravo

25   about this order.  Are you going to --
```

```
 1              MR. KRIK:  I intend to ask Mr. --

 2              THE COURT:  -- (indiscernible)?

 3              MR. KRIK:  -- Bravo if he recalls the entry of

 4   this order.  Yes.

 5              THE COURT:  Okay.

 6              MR. KRIK:  May I proceed?

 7              THE COURT:  Sure.  You can ask him.

 8              MR. KRIK:  Understood.

 9   BY MR. KRIK:

10   Q    Mr. Bravo, do you recognize the court order that's been

11   presented in front of you?

12   A    That's for the recent --

13   Q    That this is from the prior matter.

14   A    (Indiscernible.)

15              MR. SCHOLL:  That's 2019.

16              THE WITNESS:  I don't remember.

17   BY MR. KRIK:

18   Q    Okay.  Do you recall -- can you -- does this order

19   indicate that the value of the property as dictated by the

20   City of Philadelphia, was found to be 166,800 in 2019?

21   A    I don't remember.  This was a while ago.

22   Q    Do you know what the City of Philadelphia currently

23   values your property at?

24   A    No.  No, I don't know.

25   Q    If I could pull up C-24?
```

1           MR. SCHOLL:  C-24, I don't think is --

2           MR. KRIK:  That is attached to the pretrial

3    statement.

4           MR. SCHOLL:  -- an admissible document unless it's

5    certified.

6           I think, as I recall, it's some kind of a --

7           MR. KRIK:  Objection.  I'm not sure if there's an

8    objection here, Your Honor, or if (indiscernible).

9           THE COURT:  All right.  Hold on.  What is C-24?

10          MR. KRIK:  C-24, Your Honor, is the City of

11   Philadelphia Office of Property Assessment public records

12   from February 10th of this year.  It is --

13          THE COURT:  Is it on the docket, or is it a

14   document you want to introduce?

15          MR. KRIK:  It is a document I'd like to introduce

16   that is attached separately to my pretrial statement.

17          THE COURT:  All right.  And, Mr. Scholl is

18   objecting to that on the basis that it's not a certified

19   copy.  Is that your objection, Mr. Scholl?

20          MR. SCHOLL:  Yes, and it's based on three rules of

21   the rules of evidence.

22          THE COURT:  What's your objection?

23          MR. SCHOLL:  Well, there's three rules of the

24   rules of evidence and they say that any public records have

25   to be certified, and these are not certified as far as I can

 1  tell.  Those rules are Rule 201, 803, and 902.

 2          THE COURT:  201, 803, and what else?

 3          MR. SCHOLL:  902.

 4          THE COURT:  902.  Counsel, he's objecting on the

 5  basis they're not certified.

 6          MR. KRIK:  Understood, Your Honor.  Your Honor,

 7  this -- these are being introduced in respect to -- and with

 8  respect to the fact that the Court had taken judicial notice

 9  of the same document.

10          THE COURT:  Well, that -- that was the other city

11  document.  That's not this one.

12          MR. KRIK:  Understood.  Understood.

13          THE COURT:  You can't -- you can't -- no.  What I

14  did in another case doesn't mean anything.  Are you telling

15  me -- so let's attack?  He said he's objecting on the Rule

16  201, Rules of Evidence 201 rule, judicial notice.  I can

17  take it of my own stuff.  Okay.  And then 803 -- it's 803.

18  Exceptions to the hear -- absence -- public records.

19          MR. SCHOLL:  Right.  Yeah, it's 8.  Subsection 8.

20          THE COURT:  Okay.

21          MR. SCHOLL:  But it says it has to be certified.

22          THE COURT:  Okay.  Okay.

23          MR. KRIK:  I would only say that, Your Honor, we

24  stipulated to it in the -- you know, this -- without

25  (indiscernible) --

1          THE COURT: (Indiscernible.)

2          MR. KRIK:  -- in the past.

3          THE COURT:  But you didn't stipulate to it today.

4  I can't --

5          MR. KRIK:  I understand.  I understand, Your

6  Honor.

7          THE COURT:  So (indiscernible).

8          Counsel, you have to tell me how this satisfies

9  some kind of hearsay exception and if it doesn't, I'm going

10 to have to sustain his objection.

11         MR. KRIK:  Your Honor, again, we are simply making

12 the case that Your Honor take judicial notice of the public

13 record in --

14         THE COURT:  Counsel.

15         MR. KRIK:  And that -- I understand.  If Your

16 Honor rules to sustain the objection, then --

17         THE COURT:  Well, counsel, you have to give me --

18 you're asking me to take judicial notice of the public

19 record, and in order for me to do that, the rules require

20 that you give me something.  You give me a certified copy --

21 you do something.  I can take judicial notice of my own

22 records, but I sure as heck can't take judicial notice of

23 the city's records without you giving me something.  How do

24 I know?  So unless you give me an exception, I can't -- I

25 have to sustain the objection.  And you're telling me that

 1  you want me to take judicial notice, but are you telling me

 2  you've met the requirements for me to take judicial notice?

 3          MR. KRIK:  No, Your Honor.  I will withdraw that

 4  line of questioning.

 5          THE COURT:  Okay.  Let's go.

 6          MR. KRIK:  Okay.

 7          THE COURT:  All right.  Next?

 8          MR. KRIK:  Your Honor, I rest on that matter.

 9          THE COURT:  All right.  Mr. Scholl, any cross-

10  examine?

11          MR. SCHOLL:  Well, I guess it would be redirect.

12  No, I'm not going to ask Mr. Bravo --

13          THE COURT:  I mean redirect.  I'm sorry.  Not

14  cross-examine.  You're right.  You're right.

15          MR. SCHOLL:  Okay.

16          THE COURT:  Any redirect of this witness?

17          MR. SCHOLL:  No redirect.

18          THE COURT:  All right.  So, all right.  Mr.

19  Scholl, you have any other witnesses you wish to call in

20  support of your motion to impose the automatic stay?

21          MR. SCHOLL:  No.

22          THE COURT:  Okay.  Mr. Krik, do you want to submit

23  any evidence in -- well, what's your response?  Do you want

24  to present any evidence?  What -- where are we with respect

25  to your opposition to this motion?

1          MR. KRIK:  No, Your Honor, just we rest on the

2   direct -- cross-examination of Mr. Bravo.  We have no

3   further witnesses for this matter.

4          THE COURT:  Okay.  All right.  So we're done.  So

5   the evidentiary record is closed with respect to the motion

6   for -- to impose the stay.  Is that where we are?

7          MR. SCHOLL:  Yes.

8          MR. KRIK:  Yes, Your Honor.

9          THE COURT:  All right.  Any closing arguments?

10          MR. SCHOLL:  Yes, I would make brief argument.

11          THE COURT:  Okay, Mr. Scholl.

12           CLOSING ARGUMENT ON BEHALF OF THE DEBTOR

13          MR. SCHOLL:  We -- I'm going to concede this;

14   there has been changes since 2019.  In 2019, we were

15   attempting to argue that the secured claim was -- should be

16   -- is at least in part disallowed, because we didn't think

17   that that half of the restaurant, standing alone, was worth

18   as much as Mr. -- EZ Cashing's claim.  But we now have a

19   buyer who's offered 200,000 for exactly the same property,

20   so we're in a different situation.

21          Now we know we have somebody that is going to pay

22   200,000 for it, so we had to list it at 200,000, and I think

23   we're going to be able to go through with the sale, and Mr.

24   -- EZ Cashing will be paid in full.  It seems to me they're

25   in a pretty good position.

```
 1              Secondly, of course, they really don't have --
 2    even if they succeed in this motion, they don't have relief
 3    from the stay.  I would (indiscernible) that because there's
 4    no motion for relief from the stay, so this would only
 5    relate to the stay as it applies to the debtor.  It would
 6    not apply to the property of the estate and all the other
 7    sections of the 62A.
 8              And I -- you know, we did (indiscernible) --
 9              THE COURT:  So your belief -- that you believe
10    that the stay that terminates on the 362(c) -- (c)(3)(C) two
11    -- two (ii)(3), 1, 2, 3, only applies to the debtor and not
12    to property of the estate.  And that's --
13              MR. SCHOLL:  Indiscernible.)
14              THE COURT:  -- the decision that was made by Judge
15    Fox quite some time ago.  I don't remember the name of the
16    case, but that was the sort of --
17              MR. SCHOLL:  Clifton Williams (ph).  Since it was
18    my case, I'm very familiar with it.  It was -- that's 346
19    Bankruptcy Reporter 361, and we made sure to provide it to
20    Mr. Krik so he would understand -- because it is -- to me
21    it's an abstruse issue.  You know, it's hard to figure what
22    -- you know, what's really at issue here.  But I think it's
23    very clear that what Judge Fox is saying --
24              THE COURT:  Uh-huh.
25              MR. SCHOLL:  -- and I know Your Honor has never
```

1  ruled on it, apparently, but I know we had a discussion

2  about it in a case where I was representing the moving

3  party.  And I believe that Your Honor was inclined to follow

4  Judge Fox.  And if you did follow Judge Fox, you'd have to

5  file a motion for relief.

6         And furthermore, if he gets relief, there would be

7  a 14-day stay, you know.  The sale is -- the sale hearing is

8  before -- you know, before that time was run out.  The sale

9  hearing is on the 8th of March, and if the Court approves

10 that sale, I don't know what Mr. -- what EZ Cashing would

11 have to complain about, because they're going to get paid in

12 full.

13        THE COURT:  Well, let me ask you this, Mr. Scholl.

14 Assuming -- and I've always had this question.  If the stay

15 that terminates is only as to the debtor -- I'm not even

16 quite sure why we have these hearings, but I've never had to

17 rule on it.

18        So your position is that even if I don't impose

19 the stay, the stay is only as to action against the debtor

20 and not property of the estate, and so that it doesn't

21 matter whether I impose it or not.  If I don't, it just

22 means that somebody could sue the debtor personally.  I

23 don't know what they'd sue him for because there's -- oh, I

24 guess for -- well, just to 13.  So that would be a little

25 bit different because even post-petition wages and things

1  are part of the debtor's estate for bankruptcy purposes.

2  Might be a little different in a 7.

3          So your position is, it doesn't matter whether I

4  grant this or not, they still -- it's still -- the stay

5  would still protect the property at issue.  But you still,

6  in the first instance, believe that the stay should be

7  imposed because there has been a change in the debtor's

8  financial circumstances, namely he believes that the

9  property is worth 200 and he has a potential buyer.

10          MR. SCHOLL:  Yes.

11          THE COURT:  And you believe the test is a -- it

12  says C, for purposes of Subparagraph B, which is to extend

13  the stay, you have to show that it's filing was in good

14  faith as to the creditors to be stayed, which is in this

15  case EZ Cash, and that that has been a substantial change in

16  the financial or personal affairs of the debtor since the

17  dismissal of the last case.

18          MR. SCHOLL:  Yes.

19          THE COURT:  And why do you think this case was

20  filed in good faith?

21          MR. SCHOLL:  Well, we found out that we had a

22  buyer, which I didn't -- if I didn't know this party, which

23  is the owner of the other half of the restaurant, was

24  interested in buying it at anywhere close to 200,000, I

25  would have talked to him.  But I don't think this

1  materialized until the last month or two.  And it has -- it

2  has a great deal to do, I think, with the fact that that

3  area is developing.

4          THE COURT:  Well, every area in Philadelphia is --

5          MR. SCHOLL:  Yeah, well, that --

6          THE COURT:  -- the prices are (indiscernible).

7          MR. SCHOLL:  -- that area is -- that's right near

8  the -- they're supposed to be building a condominium right

9  at 9th and Washington, which is less than a block from Mr.

10 Bravo's --

11         THE COURT:  Well, I don't know if I can take

12 judicial notice, but of course, you know, I'm not blind and

13 I do read the papers, but that doesn't mean that -- I mean,

14 I know what I've read, but I mean, I can't say -- I mean, is

15 that common knowledge if it's in the newspaper and it's

16 before city applications for -- I don't know.  It is what it

17 is, but I can -- but I do know, just in general, that real

18 estate prices are outrageous right now.  I guess that's

19 because of low interest rates.  I don't know.

20         But you believe that you can sell it now for

21 200,000 because there's a change.  Namely, you have somebody

22 willing to pay that.  You believe, willing to pay that.

23         MR. SCHOLL:  Yeah.  And to me, that makes a great

24 deal of difference.  You know, I mean I -- when it was only

25 a half of a restaurant, I didn't know how we were ever going

1    to sell it, but when the other half owner -- apparently --

2    and why would he do that?  I guess he feels that it's a good

3    investment.

4             THE COURT:  Well --

5             MR. SCHOLL:  He'd rather have the two halves and --

6             THE COURT:  We can't speculate why he wants to buy

7    it.  You're saying he maybe (indiscernible).

8             MR. SCHOLL:  Well, but the point of fact is, he

9    does, and he didn't exist.  Certainly not in 2020.

10            THE COURT:  Okay.

11            MR. SCHOLL:  Well --

12            THE COURT:  So you believe that there is a good

13   faith and that the debtor believes he can sell it and pay

14   off EZ Cash and that there's a change in financial

15   circumstances because there's now a buyer when there wasn't

16   one before.  That --

17            MR. SCHOLL:  Right.

18            THE COURT:  -- sort of what I'm hearing?  Okay.

19            MR. SCHOLL:  And let me just say this.  We took a

20   little time, because Mr. Bravo wanted to look and see

21   whether he could get somebody who might offer more.

22            THE COURT:  Okay.

23            MR. SCHOLL:  But --

24            THE COURT:  Well, I -- Mr. Scholl, I mean, that's

25   not in the record.  That's really your testimony from --

1          MR. SCHOLL:  Oh, that's fine.  It was a little bit

2   of a delay here.  He wanted to make sure that somebody else

3   wasn't going to offer more, but yet --

4          THE COURT:  I can't really consider that because

5   nobody asked him that and that's not -- that's just your --

6   I mean, that evidence isn't in the record, but it is what it

7   is.

8          MR. SCHOLL:  Right.

9          THE COURT:  Anything else, Mr. Scholl, that you

10  believe why I should (indiscernible)?

11         MR. SCHOLL:  No, not -- not really.  I think it's

12  fortuitous that this offer was made and it's going to pay

13  off Mr. -- EZ Cashing and it's great.

14         THE COURT:  All right.  Mr. Krik, tell me why you

15  think I shouldn't grant this motion.

16         CLOSING ARGUMENT ON BEHALF OF THE CREDITOR

17         MR. KRIK:  Thank you.  Your Honor, we don't

18  believe that there has been clear and convincing evidence to

19  rebut the presumption of bad faith, given that by -- you

20  know, by all the account of all the documentary evidence

21  here, the bankruptcy was filed with an increased valuation

22  on the prospect of an agreement of sale that only amounted

23  two and a half months later, just in time for this hearing

24  to take place.

25         But we also have heard from the debtor that he's

 1  not entirely familiar with the terms of the agreement of

 2  sale, or why certain milestone dates that would hold a buyer

 3  to the terms of the agreement, such as financing contingency

 4  commitment dates and so forth, why they're blank.  The

 5  debtor did not take efforts to employ a real estate agent or

 6  a professional in this field to review this contract and to

 7  determine whether or not certain aspects should have been

 8  considered or filled in, whether or not financing

 9  contingencies were the best possible thing for this.

10          There is -- it's acknowledged on the document that

11  there's a, you know, a similarity between the buyer's agent

12  and the buyer entity, but again, we know that that agent is

13  not acting in the best interest of the debtor, so --

14          THE COURT:  Well, how do you know that?

15          MR. KRIK:  I'm sorry?

16          THE COURT:  Well, I mean, what are you telling me?

17  What is that -- what does it say that the agent for the

18  buyer -- what about it?

19          MR. KRIK:  I was just pointing out that the

20  document indicates the name of a buyer entity and the name

21  of the agent's agency that are substantially similar.  At

22  the motion to sale hearing, I will assume that I'll be able

23  to cross-examine the agent or the potential buyer who may

24  testify.

25          But again, the point being is that there has been

In Re: Gabriel Bravo                                             88

1   a significant amount of change in the values and the amounts

2   of assets that the debtor claims to have had, with little to

3   no explanation as to where these amounts came from and how

4   they changed so drastically, which would call into question

5   whether or not prior bankruptcies were either filed in good

6   faith or not.  All of a sudden, the debtor has filed in this

7   case -- has substantially more assets, has substantially

8   more value in his company, and has increased the value of

9   the property based solely on an allegation or an offer, I

10  should say, a written offer provided, but no separate

11  independent appraisal that the estate -- that even the

12  bankruptcy estate, if the property were to be allowed to

13  sell, that the estate could rely upon on a valuation to know

14  that the debtor is getting the highest and best value.  So

15  this is just --

16          THE COURT:  Well, if somebody makes an offer,

17  isn't the offer typically what the market would bear?  I

18  mean, wouldn't that get tested out at the sale agreement?  I

19  mean, your position is, it's only worth 100, right?

20          MR. KRIK:  Well --

21          THE COURT:  -- because you said it was worth 100.

22  You believe it's worth more than 200?

23          MR. KRIK:  We do not believe it's worth more than

24  200, but we're saying -- we're saying --

25          THE COURT:  Well if somebody want to pay it, you

1  going to object if somebody want to give them 200?

2         MR. KRIK:  If the sale would go through, that

3  would be pleasing to the creditor, but we are not -- we are

4  not confident that this agreement of sale is valid enough to

5  go through.  There's not enough information that the debtor

6  knew or knows about the agreement prior to entering it, and

7  there are certain things within the agreement, including not

8  holding the potential purchaser to a commitment date that

9  would allow us to understand.  No buyer financials were

10  obtained from a buyer as is customary when an offer to

11  purchase is submitted.  And again, the debtor is accepting

12  an agreement based on -- without independent evaluation as

13  to either the benefits or the way the contract would benefit

14  the creditor or the estate, or its valuation.  And then --

15         THE COURT:  You don't think that would be

16  addressed at a motion to approve the sale?

17         MR. KRIK:  Your Honor, it may, but again, we're

18  finding it very convenient that this executed agreement came

19  three days before this hearing.  Clearly, it was not

20  contemplated when the motion to extend stay was opposed,

21  because the debtor filed its bankruptcy, listed the value at

22  200 solely on the prospect of receiving this.  It had not

23  received this offer until recently.  So --

24         THE COURT:  Okay.

25         MR. KRIK:  -- you know, we just don't believe that

1  the debtor has done enough to be able to determine in good

2  faith that the agreement is a valid agreement for an amount

3  that is do -- that is acceptable.

4        Furthermore, there is just as much of an

5  opportunity for the property to sell at an open judicial

6  sale that could still yield value to the estate.  And as far

7  as -- it could potentially yield value to the estate, any

8  excess proceeds, if there were any.  So we don't believe in

9  --

10        THE COURT:  And then you would also have sheriff

11  costs and all those other things, right?

12        MR. KRIK:  That's correct.  They would -- yes.

13  Yes.

14        THE COURT:  And there is no guarantee that there

15  would be anybody there to buy it.  I mean, so the potential

16  for anybody else getting any money at a judicial sale, you

17  would agree, is likely, highly likely, because you believe

18  it's not even worth 200, right?

19        MR. KRIK:  Well, our valuation of it is based upon

20  the city's valuation, which is under 200,000.

21        THE COURT:  And we know -- counsel, and you know

22  as well as I do what the city valuations are.  You want me

23  to take judicial -- you gave me judicial notice of what the

24  city market value is.  I have any evidence that the city's

25  market value is true market value of what a willing buyer

1   and a willing purchaser is willing to pay?  It only tells

2   you what the city is willing to assess it at.  That's all

3   that is, is assessment.  I don't have any evidence -- the

4   fact that they may have agreed that the city assessed

5   something at a given dollar amount doesn't mean that it's

6   the same value for sale purposes.

7          My house -- not my -- I will just say this.  My

8   neighbor's house, for tax purposes, is assessed at some --

9   some number that doesn't even make sense because they paid

10  500 grand for it, and it's assessed at $50,000.  No.  But

11  they also have a tax abatement.  So that's a whole 'nother

12  issue.

13         But what I'm saying is that I get it, but I'm not

14  quite sure that I can rely much other than that's assessment

15  for tax purposes.  And you're right, maybe the debtor went

16  out and conveniently got this sale when he said it was worth

17  100 last -- in 2018, which is how many years ago?  Three

18  years ago.

19         MR. SCHOLL:  Three.  Three years ago almost.

20         THE COURT:  So, you know, I don't know what I'm

21  supposed to do with that.  But then again, you know, the

22  debtor has filed how many times?  This is his third

23  bankruptcy?

24         MR. KRIK:  Yes, Your Honor.

25         THE COURT:  And was each one filed on the eve of a

1  foreclosure sale?

2          MR. KRIK:  Yes, Your Honor.

3          THE COURT:  Okay.  And I know one lasted about two

4  years, right?  Or one -- 18 --

5          MR. SCHOLL:  Last one lasted almost -- yeah, it

6  was from September of 2000 --

7          THE COURT:  Any payments made to your client due

8  in that time, Mr. Krik?

9          MR. KRIK:  We have payments and we have -- that is

10 the subject of the objection to claim hearing, but you know,

11 not -- we don't believe adequate payments that were --

12         THE COURT:  But there were payments, right?  There

13 were some.  It wasn't like no payments at all.

14         MR. KRIK:  Correct.  There had not been in some

15 time.

16         THE COURT:  Right, but there have been payments.

17 This isn't like the debtor -- I mean, like I have debtors

18 that -- well, you weren't on the other case, but it feels

19 like six cases and no payments made at all.  That's a whole

20 different kind of issue for me, because the whole thing

21 about imposing the stay and the benefit, which is another

22 issue that I have never had to address, is what does that

23 termination mean?

24         Is it as to the debtor?  Because if you read it,

25 it says -- I mean, I actually read Judge Fox's case a couple

1  of times because he goes into a very detailed analysis of

2  what it says.

3          It says, "Shall terminate with respect to the

4  debtor on the 30th day."  Doesn't say property of the

5  estate.  It says the debtor.  And if you do a literal -- you

6  took a literal meaning of it, that congress said with

7  respect to the debtor not with respect to property of the

8  estate, he took the position that I have to -- you have to

9  read just what it says.  You can't add anything, you can't

10 add property of the estate, and therefore it only -- that 30

11 day only applies to the debtor and not property of the

12 estate.

13         I've never had to actually opine on that, but the

14 reason it makes sense, if I'm just going to do like, you

15 know, a strict reading of what it says.  So even -- so even

16 if I don't impose it, does that mean you still can't proceed

17 against the property without getting relief from the stay?

18         MR. KRIK:  Well, Your Honor, I think that the

19 reasoning is not as applicable in this case.  The reasoning

20 would be so that the property could be used by the trustee

21 to fund the estate, to do something with it to benefit the

22 estate and realize value from it.

23         THE COURT:  Where does it say that at?

24         MR. KRIK:  I've -- I'm not reading the case.  I

25 don't have that in front of me.  Honest --

```
 1              THE COURT:  (Indiscernible) that's what I'm saying.
 2    Where it says -- it says, "The stay terminates after 30 days
 3    with respect to the debtor after the filing of the later
 4    case."  And then it says, "Somebody can file on the motion
 5    to extend the stay."
 6              So if I'm extending the stay that terminated, did
 7    the stay as to property of the estate terminate?  And if I
 8    do a strict reading of that, it would say with respect to
 9    the debtor.
10              I mean, I don't remember the name of Judge Fox's
11    case, but I think he was the first one in our district to
12    kind of go through a detail, and I don't -- and that's no
13    disrespect to you, Mr. Scholl, because I don't remember.  I
14    know that's the one I read.  I mean, yours could have
15    preceded --
16              MR. SCHOLL:  *Clifton Williams*, Your Honor.
17              THE COURT:  I'm sorry?
18              MR. SCHOLL:  The name of the case is *Clifton
19    Williams*.  And I probably wouldn't have remembered either,
20    except it was my case.
21              THE COURT:  What about -- right.  I think Judge
22    Fox's case might have preceded yours.  I don't remember.
23              MR. SCHOLL:  Oh, no, no, no.  I decided it, Your
24    Honor.  I was the --
25              THE COURT:  You what?  What --
```

 1             MR. SCHOLL:  -- attorney for Mr. Williams against

 2  -- before Judge Fox.

 3             THE COURT:  Oh.

 4             MR. SCHOLL:  And he actually --

 5             THE COURT:  Oh, right.

 6             MR. SCHOLL:  -- actually ruled against me before --

 7             THE COURT:  No, that's why I kept saying Judge Fox

 8  wrote the opinion.  I thought you said you wrote the

 9  opinion.  I apologize.

10             MR. SCHOLL:  Oh, no, no, no, no, no.  I never

11  wrote on that issue.  In fact the -- this law had not been

12  passed before I left the bench.

13             THE COURT:  Right, because this is actually --

14             MR. SCHOLL:  I left the bench in 2000.  This

15  wasn't --

16             THE COURT:  Yes, this was a 2005.  Right.

17             MR. SCHOLL:  -- (indiscernible).

18             THE COURT:  So what's the name of the case from

19  Judge Fox?

20             MR. SCHOLL:  *Clifton Williams*.  I can give you the

21  cite because --

22             THE COURT:  You gave it to me.  I already have it.

23             MR. SCHOLL:  346 -- 346 Bankruptcy Reporter 361.

24  And it's not the only case in the United States.  He does

25  have a --

1    THE COURT:  No, it's not, but you know, it's

2    persuasive in this district, and I think my colleagues have

3    also sort of relied on that rationale as to why it only

4    terminated as to the debtor.  I've never had to opine on it,

5    because I think people pretty much accepted Judge Fox's

6    position.

7        So with that, going back to Mr. Krik, even if I

8    deny his motion to impose the stay as to the debtor, the

9    stay would -- assuming I agreed with Judge Fox, the stay as

10   to the property in question would not be terminated, and

11   that you'd have to file a motion for relief, which I don't

12   know whether that gets you where you want to go, which is --

13       MR. KRIK:  Well, Your Honor, I am reading in that

14   case that it indicates that it applies to all bankruptcy

15   cases, but by continuing to collect property of the -- by

16   continuing to protect property of the estate.  That was the

17   congress allowing the trustee the opportunity to determine

18   whether nonexempt property of the estate could be liquidated

19   for the benefit of creditors.

20       THE COURT:  Well, who -- and so who's -- in this

21   case with respect to -- I don't see a trustee.  I mean, do

22   you believe it's the Chapter 13 trustee who gets to

23   determine whether it should -- this is Chapter 13 case.

24       MR. KRIK:  Yes.  Yes.  Your Honor, I would say

25   that it's the Chapter 13 trustee who has to say this

 1  property has value to the estate that could be liquidated or

 2  equity, non-exempt equity that could be liquidated for the

 3  benefit of creditors.

 4          THE COURT:  Well, is the trustee in here saying --

 5  saying that I -- doing anything?

 6          MR. KRIK:  I didn't --

 7          THE COURT:  Are you basically saying, then, that

 8  it's the trustee -- because it says any party in interest

 9  can ask for it.  Doesn't say the trustee.

10          MR. KRIK:  I agree with that, and so we are

11  objecting that the trustee would not be able to use this for

12  the benefit of creditors.

13          THE COURT:  Why not?

14          MR. KRIK:  We are the -- we are the primary

15  secured creditor listed here that would --

16          THE COURT:  Hello?

17          MR. KRIK:  -- that would benefit from any sale,

18  let alone a judicial sale.  I understand that if -- that

19  there are other creditors to the estate but --

20          THE COURT:  Yep.

21          MR. KRIK:  Yeah.  And if the property is

22  liquidated, it would benefit other creditors.  But what I'm

23  saying here is that the stay would essentially receive the

24  same -- if the stay is the same -- if the stay is not

25  extended and the creditor is not subject to stay, to further

1  stay, that the sale of the judicial --

2         THE COURT:  But, counsel, that -- counsel.

3         MR. KRIK:  Yes.

4         THE COURT:  That stay only terminates if I find it

5  only terminates to the debtor.  Then you still have to come

6  here and get relief from the stay, no matter what the

7  trustee -- and which I find interesting because I've always

8  had that issue with Mr. Trustee.  Why is the debtor always

9  the one filing a motion for sale and not the trustee?

10         I don't know.  I've asked people that.  I think I

11  forgot what the answer was.

12         MR. SCHOLL:  Well, the trustee -- interesting --

13  look, did show an interest in this but -- at the earlier

14  hearings, but she didn't appear.

15         THE COURT:  But that's not the issue.  The issue

16  is, even if I don't impose the stay, the stay -- and I side

17  with Judge Fox, it's not terminated, and I still would have

18  to do a motion for relief --

19         MR. SCHOLL:  Right.

20         THE COURT:  -- is what I'm saying.  So my question

21  is, is counsel -- and that's why I've always asked people,

22  why are we having these hearings, because if it -- the way

23  it's written is as to the debtor, who's going to go sue the

24  debtor, unless the debtor -- well, it could, in a 7, if the

25  debtor, you know, came into some huge amount of post-

1   petition assets where the debtor -- you know, maybe the

2   debtor got a huge windfall, and then you'd want to sue the

3   debtor personally.  But I'm not quite sure how you do that

4   if it's for a prepetition debt.

5          I don't know.  It's a little complicated.  But you

6   would agree, counsel, that if I take the position or I come

7   to the same conclusion that Judge Fox did in this *In Re:*

8   *Williams*, that it only applies to the debtor.  Whether I

9   impose this or not will have no impact on the creditor's

10  ability to foreclose on the property without getting relief

11  from stay.

12         MR. KRIK:  I agree that if you follow Judge Fox's

13  reasoning, that would be the outcome.

14         THE COURT:  Right.  Okay.  All right.  I'm not

15  sure where I am on this because, counsel, I do see, you

16  know, the debtor has filed.  The debtor, you believe it --

17  and as the -- well, let me back off.

18         What evidence do I have as to -- and, counsel, I

19  only can go with the evidence in the record.  I have that

20  the debtor filed.  Do I have any evidence of when the debtor

21  filed regarding the status of the foreclosure sale?

22         MR. SCHOLL:  Oh, I think I state it in the motion.

23  It was --

24         THE COURT:  You guys can say anything you want in

25  the motion.  I go with the evidence that's presented.  You

1  can say the sky is blue in that, and if you come in and you

2  don't give me any evidence, I guess I could take judicial

3  notice that it's often blue.  But if you say something in a

4  motion and you don't put the evidence, I can't do anything

5  with that.  That's just an allegation and that's what I

6  think people sometimes don't understand.  You can say

7  anything you want in a motion.  You still have to give me an

8  evidentiary record in order for me to make that conclusion.

9        And so, Mr. Krik, you're saying that it was done

10  on the eve of foreclosure.  I simply asked that.  But where

11  in the record do I have when these things were filed and

12  where was the status of the foreclosure case?  In the

13  evidentiary record.

14        MR. KRIK:  In the documents -- in the evidence and

15  testimony provided today, I don't believe the question was

16  asked.

17        THE COURT:  Right, counsel, and I wasn't about to

18  ask it.  I tried not to.  I have a tendency, which is how I

19  got myself in trouble in my last hearing, by saying things

20  that I shouldn't say, or make comments I shouldn't, so I

21  don't know when or what the status of the foreclosure was.

22  Or, you know, no questioning Mr. Bravo why he filed.  The

23  only thing I have is why he filed the most recent case and

24  why there was a difference, and that he intended to pay --

25  pay EZ Cash with the sale.

```
 1              And the only testimony I have with respect to the
 2    value is Mr. Bravo's testimony.  And, counsel, nothing from
 3    your client on how much they believe this property is worth?
 4              MR. KRIK:   That's correct.
 5              THE COURT:   Okay.  Okay.  All right.  It's now --
 6    what time is it?  3:00.
 7              THE INTERPRETER:   It's 3:11 p.m.
 8              THE COURT:  Why, thank you.  What do we want to do
 9    about the hearing on the motion to -- because, you know,
10    again, if I agree with Judge Fox, this decision is going to
11    be much ado about nothing because we're going to still have
12    to file a motion for relief.  If I agree with that.
13              And I'll be honest, I tend to think Judge Fox's
14    reasoning was -- makes sense, because it says as to the
15    debtor.  But I haven't had an opportunity to look at more
16    recent cases that may say, well -- because I don't get to
17    look at congressional history unless it's ambiguous.  Or
18    maybe I do, even if it's not ambiguous.  I look at the
19    context of what Congress meant for what they meant as to the
20    debtor.
21              So I'm going to hold off on that, because I want
22    to just do some quick update on the cases.  And counsel,
23    actually, you guys are going to give me some quick update on
24    what the -- on that case, to see whether I should even
25    consider Judge Fox's decision.  Maybe there's something
```

 1   that's after that that says he's totally wrong.  I haven't

 2   researched it.

 3          So do you guys want to -- I mean, you need to give

 4   me some position on that.  Do you believe that that has any

 5   impact whether I -- I mean, there's two issues, whether I

 6   should impose it or not.  And maybe I do, maybe I don't.

 7   But at the end of the day if I don't, what happens?  And

 8   that may have some impact on what I think.  It may not.

 9          So how much time do you need to brief the issue of

10   362(c)(3)(A) in respect to the debtor, because it's clear

11   that if I'm going to impose the -- not impose the stay, then

12   I would say I'm not imposing stay as to what?  As to what it

13   says in the statute, or as to the property, because the

14   relief -- even if I deny it, I've got to make sure the

15   relief that I'm granting is the proper relief.  Okay?

16          So how much time you guys want to brief this?

17          MR. SCHOLL:  Well, two weeks is fine for me.

18          THE COURT:  Mr. Krik, two weeks?

19          MR. KRIK:  Your Honor, that effectively -- that

20   effectively would negate our need to seek relief because we

21   would then be past any potential execution that would be

22   relatively forthcoming, so we would hope to have a decision

23   before that from you, if we believe that we could execute

24   further.

25          So I would hope that that could be shortened to 7

 1  to 10 days.

 2          THE COURT:  Well, counsel, I'm not telling you I'm

 3  going to answer in 7 to 10 days.  I get your issue, but to

 4  be perfectly honest, I have a lot of things under advisement

 5  that I just took under advisement two matters -- I don't

 6  even know how many I took under advisement between yesterday

 7  and today.  Probably more than I want to.  As soon as I got

 8  three off, I got three back on.

 9          MR. KRIK:  But, Your Honor, we are then at your

10  leisure, your schedule as far as the timeline.

11          THE COURT:  All right.  I mean, counsel, I mean,

12  I'm not -- listen, I've had hearings where the issue was

13  pretty clear, and actually I decided within a couple of

14  days.  So I didn't -- they didn't get in line for my under

15  advisement.  I kind of did it very quickly.

16          I can -- so what I can -- yes, Ms. Smith?

17          MS. SMITH:  Respectfully, Your Honor, I think we

18  may have a medical issue and so if we could have a comfort

19  break for five minutes?

20          THE COURT:  Oh, no problem.  All right.  Let's

21  take a break --

22          MR. SCHOLL:  No, I'm okay.  I'm okay.  I can stand

23  it.

24          THE COURT:  No, no, let's take a break because

25  actually I need to go -- where my office is, my feet are

Case 20-13926-dv-04820-KPH Document 03/23 Entered 01/04/23 23:06:12 Desc Main
Document    Page 104 of 228
In Re: Gabriel Bravo

104

1  freezing.  So let's take a break so I can warm my feet up.

2  All right.  Take a quick break.

3          MS. SMITH: (Indiscernible) Your Honor.

4          THE COURT:  Let's do 15 minutes.  Thank you, Ms.

5  Smith.

6          MR. SCHOLL:  Okay.

7          THE COURT:  15 minutes.  Okay.

8          MR. SCHOLL:  Yeah, I do (indiscernible).

9          THE COURT:  15 minutes, guys.  All right.

10      (Recess from 3:155 p.m. to 3:35 p.m.)

11          THE COURT:  That's great, because I was going to

12  start at least make an offer, but maybe your offer

13  suggestion is what I was thinking.  Go ahead.

14          MS. SMITH:  If the debtor would agree, and he has

15  not, if the debtor would agree that the Court could enter an

16  order in the amount of the reassessed judgment, and if Mr.

17  Weiser on behalf of EZ Cash could agree -- they've admitted

18  that they've received some post-petition payments, some

19  post-judgment payments.  If they could agree to an amount,

20  then we would leave the legal question to the judge as to

21  whether that amount should be credited against that

22  judgment.

23          THE COURT:  Okay.  Well, I was actually not even

24  getting to the proof of claim.  I was thinking with respect

25  to the actual motion to impose the stay, whether the parties

Case 2:19-cv-04320-KSH Document 65-1 Filed 01/03/23 Page 6 of 265 Desc Main
Document    Page 105 of 228
In Re: Gabriel Bravo

105

 1  would -- I was inclined to say whether than having to incur

 2  the cost of briefing the issue, which they can if they want,

 3  I would just at this point, impose the stay, and if I impose

 4  the stay, then that would mean that either it is imposed

 5  only as to the debtor, and then the parties could at some

 6  point -- you know, you're looking at April -- March, April

 7  -- 60 days, file a brief on whether they believe the stay

 8  that I imposed was against just the debtor or the property

 9  of the estate and make that sort of the same time with the

10  -- with the sale agreement, because I think I heard counsel

11  for EZ Cash saying, okay, if you're going to impose the

12  stay, put it for some date until after the sale.

13          But again, I don't know whether I would say that's

14  stay that I'm imposing is only as to the debtor, or there is

15  no termination as to the property of the estate.

16          I guess, Mr. Krik, you could, I guess file a

17  motion for relief that I will hear all at the same time.

18  That would -- I mean, it's up to you.  I mean, I could --

19  because if you want to brief, you can brief.  But I would

20  then have the parties avoid the issue of whether you need to

21  brief that issue or not, because I did hear Mr. Krik say,

22  let's extend the stay until the sale -- until sometime after

23  April 11th, at which time the debtor would either sell or

24  not sell.  I mean, I don't know.

25          MR. KRIK:  Your Honor, I --

1           MR. SCHOLL:  Well, there's two dates.  One is the

2    motion of the sale.  That's actually on March the 8th.

3           THE COURT:  I know.

4           MR. SCHOLL:  And then -- then the agreement of

5    sale says the sale has to be before April 11th to be valid.

6           THE COURT:  Right.

7           MR. KRIK:  Your Honor --

8           THE COURT:  Yes?

9           MR. KRIK:  -- if I may?  There may be some room to

10   work if Your Honor is inclined to hear it, but it would have

11   to be between debtor and creditor.  There may be some room

12   to discuss whether or not, not opposing the motion to sell

13   and not opposing the extension of the stay in exchange for

14   some relief -- relief for the creditor to resume efforts

15   against the property if and when the April sale -- if it

16   does not close by that date.

17           We might be able to stipulate that we would not

18   oppose going forth and giving them the opportunity to the

19   April 11th, if we were entitled to relief to proceed to plan

20   for and move forward with execution but for the actual

21   auction until such time as after April 11th if the sale does

22   not go through.  So that might be something we could

23   stipulate to.  I would still have to discuss that.

24           THE COURT:  Well, then why didn't you guys talk

25   about this before this hearing?

Case 20-19262-JKS Doc 1337 Filed 01/08/21 Entered 01/08/21 13:06:22 Desc Main
Document    Page 107 of 228
In Re: Gabriel Bravo

107

1      MR. KRIK:  Your Honor, we did not have this

2  agreement --

3          THE COURT: (Indiscernible.)

4          MR. KRIK:  -- until (indiscernible).

5          MR. SCHOLL:  Well, the other -- the other issue,

6  we really thought that we could agree to some facts that

7  would have made that hearing much shorter.  And the fact --

8  it is an important fact, Your Honor, and it was sort of

9  brought out a little bit in this hearing.  Mr. Bravo kept up

10  payments, and they weren't small payments.  They were much

11  more than your regular payment --

12          MR. KRIK:  Your Honor, this is going into the

13  proof of claim.

14          THE COURT:  All right.  Okay.  But that's the next

15  issue.  The issue right now --

16          MR. KRIK:  That is not at issue.

17          THE COURT:  Whoa, whoa.  The issue right now is --

18  I can do one of two things.  I can say, you know what, I'm

19  just going to rule and you guys in the interim can -- I

20  would rule that it applies to the debtor, and whether it can

21  also be extended to property of the estate, you can brief

22  later, or you can also file a motion for relief if you

23  believe it doesn't.  But if you want to file the motion for

24  relief, I mean, you want to do a brief, that's -- you know,

25  that's fine in the interim.

Case 20-01926-JJG-13   Doc 148-3   Filed 01/04/23   Entered 01/04/23 13:06:22   Desc Main
Document     Page 108 of 228
In Re: Gabriel Bravo

108

```
 1              I guess the question becomes is, do I have to

 2   extend the stay now because of the way the rules are

 3   written?  Once I have the hearing, the motion has to be

 4   filed within 30 days.  But I have to have that --

 5              MR. SCHOLL:  Well, it has to have been heard

 6   within 30 days.

 7              THE COURT:  Right.  And if I -- so if I had --

 8              MR. SCHOLL: (Indiscernible.)

 9              THE COURT:  Well, let me -- you know, there's

10   always a sticking point too about not only having to be

11   heard, but can I rule after it's -- you know, when was this

12   bankruptcy filed?

13              MR. SCHOLL:  October the 28th, 2020.

14              THE COURT:  And you filed the motion to extend

15   when?

16              MR. SCHOLL:  2021.  It was filed the next day, the

17   29th.

18              THE COURT:  So it was filed within.  Okay.

19              MR. SCHOLL:  And the hearing was originally

20   scheduled sometime in November.

21              THE COURT:  Right.  My --

22              MR. SCHOLL:  But it's --

23              THE COURT:  -- but my daughter died so I didn't

24   have any hearings.

25              MR. SCHOLL:  Got continued.
```

1          THE COURT:  That was -- the Court was unavailable.

2    So then I did it the next available.

3          But I think that the rules are, it has to be

4    filed, and I think actually issued, but if I extended it

5    because of my circumstances, I can't hold that against

6    anybody.  But the question would be that I would has -- as

7    of have to -- as of today, would have to impose the stay

8    pending a determination.  That's what I -- the way I

9    typically do that, when people file a motion for -- to

10   extend the stay.  If I can't have a hearing before the 30th

11   day, I usually issue an order saying the stay is extended,

12   and then I extend it until the hearing date.

13         Well, obviously I didn't get to do that here

14   because of extenuating circumstances that I can't hold

15   against anybody.  So if I -- so even if I am going to rule

16   on some post-hearing briefs, I have to extend the stay until

17   at least another further hearing or until I get the briefs.

18   I've got to do something.

19         Let's see.  And I want to make sure that I didn't

20   mess up how I've been looking at this, which is I have --

21   you have to file the hearing and I have to extend it past

22   the 30 days.  So it was filed within the time and scheduled

23   within the time.

24         What should have happened, and we didn't, was to

25   extend it until this hearing date, because of the

Case 20-19626-2b-nc-04920-KBH  Filed 01/08/23  Entered 01/04/23 21:16:05 5522 of 265c Main
Document    Page 110 of 228
In Re: Gabriel Bravo

110

```
 1   extenuating circumstances with the Court.  So I can't hold

 2   that against anybody.  And after that (indiscernible)

 3           COURTROOM DEPUTY:  Judge --

 4           THE COURT:  Yes, Eileen, did we extend it?

 5           COURTROOM DEPUTY:  We did.  We (indiscernible).

 6           THE COURT:  Oh, okay.  We extended it until today.

 7           COURTROOM DEPUTY: (Indiscernible.).

 8           MR. SCHOLL:  We did, Your Honor.

 9           COURTROOM DEPUTY:  Docket Number 38, Judge.  We

10   did it --

11           THE COURT:  Oh, I'm sure -- I shouldn't have said

12   that because I knew my --

13           COURTROOM DEPUTY:  Yeah.

14           THE COURT:  -- ever trusty on-the-ball courtroom

15   deputy took care of it.

16           COURTROOM DEPUTY:  Yeah.

17           THE COURT:  Okay.

18           COURTROOM DEPUTY:  Yeah, I kept them -- yeah, it

19   is extended.

20           THE COURT:  Yes, you did, because there were a lot

21   of things we had to reschedule.

22           COURTROOM DEPUTY:  Right.  Exactly, right.  So it

23   was extended until today.

24           THE COURT:  Okay.  Well, thank you, Eileen.

25           COURTROOM DEPUTY:  You're welcome.
```

```
 1          THE COURT:  All right.  So now, counsel, I have to
 2  do something, enter an order today either further extending
 3  it until the briefs are entered, or further extending it
 4  until after April 11th, or sometime thereafter, at which
 5  time I can then decide.  It's whatever you want to do.  You
 6  want the briefs, but it's still going to be until the briefs
 7  are here or until after April 11th.  And then, counsel, in
 8  the interim, if you want to file a motion for relief then be
 9  heard after that, you've kind of got all the bases covered.
10  I can't tell you what to do, but I've got to enter something
11  today.
12          So do you want me to enter and extend until your
13  two weeks brief deadline, or you want me to do after April
14  11th, at which time I would have to have a hearing
15  thereafter to figure out what I want to do?
16          MR. KRIK:  Your Honor, we would be fine with the
17  two weeks at the moment, and we'll discuss with counsel, you
18  know, off the record.
19          THE COURT:  Okay.  So I would extend probably
20  longer than two weeks because I am not going to decide the
21  day I get those briefs.  So briefs would be due -- what's
22  two weeks, Eileen?
23          COURTROOM DEPUTY:  March 1st, Judge.
24          THE COURT:  Oh, March 1st.  All right.  Give me a
25  week to look at it because I don't think this is anything
```

 1  that, you know, I either would say I'm granting it -- and it

 2  won't matter, counsel, because if I grant it, I'm inclined

 3  to find it only as to the debtor and the stay would continue

 4  as to the property.  I'm going to tell you where I am on

 5  that, because that's sort of where I've been.  I haven't

 6  canvased recent cases, but unless something dramatic, I'm

 7  probably still in the Judge Fox camp.

 8          So briefs were due March 1st.  When is the

 9  following Tuesday from that?

10          COURTROOM DEPUTY:  March 8th.

11          MR. SCHOLL:  Which is when the sale motion is

12  scheduled, interestingly enough.

13          THE COURT:  Okay.  Well, then we'll have a hearing

14  on that.  We'll extend it to a further hearing on March 8th.

15          MR. SCHOLL:  Okay.

16          THE COURT:  And counsel, if you believe that you

17  want to hold off on briefing because you got some sort of

18  settlement, just let us know.

19          MR. KRIK:  Thank you.

20          THE COURT:  I mean, I'm not trying to make people

21  spend money.

22          MR. KRIK:  Thank you, Your Honor.

23          THE COURT:  I mean, you can if you want, but I'm

24  trying to not unnecessarily do that, since you probably

25  already have an idea where I'm going with this.  So now,

1  that then takes us -- so Eileen, briefs due March 1st,

2  simultaneous by 5:00.

3            COURTROOM DEPUTY:  Right.

4            THE COURT:  And a further hearing on the motion.

5  So the order will say, you know, the stay is continued until

6  March 8th, 2022.

7            COURTROOM DEPUTY:  All right.

8            THE COURT:  Briefs on site will be due on March

9  1st.  So I'm extending the stay in accordance with the

10  rules.  Okay?  All right.

11                          * * *

12  HEARING re OBJECTION TO CLAIM #1:

13            THE COURT:  Now that takes us to the claim

14  objection.  Ms. Smith, I heard you say that you were

15  offering a proposal, but I don't think anybody talked about

16  it.  So you want to put that up again, and Mr. Krik you

17  respond?  Ms. Smith?

18            MR. KRIK:  And respectfully, I believe that if the

19  offer is the same as was previously discussed, it had been

20  rejected to stipulate to any sort of amounts at this point.

21            THE COURT:  Okay.  So --

22            MS. SMITH:  No (indiscernible) it's different.

23            THE COURT:  Okay.  What (indiscernible).

24            MR. SCHOLL:  Here's the problem.  Mr. Krik won't

25  agree that anything -- that my client gets any credit for

In Re: Gabriel Bravo

1  over $30,000 of payments that he made.

2        MR. KRIK:  That's not correct, Judge.

3        MR. SCHOLL:  And he admits that he made some

4  payments.  He admitted this morning anyway.

5        MR. KRIK:  Respectfully, I'd --

6        THE COURT:  All right.  Whoa.  Whoa.  Whoa.  So --

7        MR. KRIK:  Are we going through with argument?

8        THE COURT:  -- Mr. Krik, with respect to the claim

9  objection --

10        MR. KRIK:  Yes.

11        THE COURT:  -- you believe that the number that

12  your client has asserted includes amounts that were paid

13  during the bankruptcy or since the -- from what time period?

14        MR. KRIK:  Your Honor, I am saying that the proof

15  of claim includes all matters prior to June 21st, 2021, when

16  the state court reassessed damages to that amount, taking

17  into account the debtor's claim of additional payments, the

18  creditor's claim for additional monies owed and so forth.

19  That --

20        THE COURT:  So you're saying that that issue of

21  those payments were squarely before that court, presented to

22  that court, and ruled upon by that court, because that's not

23  what your answer said.  You said --

24        MR. KRIK:  Your Honor --

25        THE COURT:  -- your answer said you assumed it

1   did, and that was why I had that question.

2           MR. KRIK:  No, no, no.  Your Honor, I say that

3   because the judge did not give an opinion.  But the motion

4   filed by my client included evidence of monies owed to it,

5   as well as information regarding any payments it received.

6   The response filed by the debtor included an allegation of

7   additional payments.  And so it's -- that matter was raised

8   by the debtor in the state court action for judge's

9   continuation.

10          THE COURT:  And the court -- and the judge ruled

11  on it.

12          MR. KRIK:  The judge entered an order reassessing

13  damages, and in that order --

14          MR. SCHOLL:  The short answer is no.  Why don't

15  you admit it?  The judge did not address it.

16          THE COURT:  Whoa, whoa, whoa.

17          MR. SCHOLL:  That doesn't make any sense.

18          THE COURT:  Whoa.  Hello.  Hello.  As I told you

19  all, I'm the only one that gets to interrupt around here,

20  and I do it all the time.

21          Well, that's pretty easy for me to figure out

22  because I'm going to look at all the pleadings.

23          MR. KRIK:  Very good, Your Honor.

24          THE COURT:  Because everybody would agree that if

25  the state court has already adjudicated that issue, there is

In Re: Gabriel Bravo                                    116

1   nothing for me to do.

2            If that matter was -- you know, if you said

3   whatever, that that was the number and whatever, I don't

4   know because I don't have that -- those pleadings.

5            So as an initial matter, what I would have -- I

6   wanted from the parties, and believe me, I actually read

7   these things and think about it, was that what exactly is it

8   that the state court decided, and that will be a

9   determination on what is available for this -- if anything,

10   for this Court to decide.  So what I need to know is when

11   there was a hearing on the assessment -- a reassessment of

12   damages.

13            When was that, Mr. Krik?

14            MR. KRIK:  Respectfully, Your Honor, the Court

15   ruled on the papers.

16            THE COURT:  I didn't ask you that.

17            MR. KRIK:  All right.

18            THE COURT:  I asked you when was it filed?  When

19   was it --

20            MR. KRIK:  Oh, oh, I'm sorry.  The reassessment of

21   damages --

22            THE COURT:  No, but I did ask you when it was.

23   When was it filed?

24            MR. KRIK:  The reassessment of damages was filed

25   on February 23rd of 2021.

```
 1              THE COURT:  Okay.  And it said what it said.

 2              MR. KRIK:  That's correct.

 3              THE COURT:  The debtor responded, right?

 4              MR. KRIK:  Correct.

 5              THE COURT:  And the response was filed when?

 6              MR. KRIK:  March 11th, 2021.

 7              THE COURT:  Okay.  And the Court ruled when?

 8              MR. KRIK:  The judge's order in the state court

 9 matter was entered on June 2nd, 2021.

10              THE COURT:  Okay.  And it just said damages are

11 reassessed and it didn't say -- did it break down principle,

12 interest, any of that, or just gave me a number?

13              MR. KRIK:  The --

14              MR. SCHOLL:  No, it didn't, Your Honor.  But here

15 is what it did do.

16              MR. KRIK:  Your Honor --

17              THE COURT:  Mr. Scholl.  Mr. Scholl, you'll get

18 your time.

19              MR. SCHOLL:  But let me explain, Your Honor.  If

20 you do, I think it will shorten this discussion because --

21              MR. KRIK:  I don't.

22              THE COURT:  Mr. -- Mr. Scholl.

23              MR. SCHOLL:  Only you can talk?  I can't talk?

24              THE COURT:  Mr. Scholl --

25              COURTROOM DEPUTY:  Judge Coleman is speaking.
```

 1          THE COURT:  -- Mr. Scholl, I'm not saying you

 2   can't talk.  I'm just saying you'll get a chance.  Let me

 3   hear him, and then I'll hear you.  That's all I'm saying.

 4          MR. SCHOLL:  Right.

 5          THE COURT:  I can't hear both of you at the same

 6   time.  You are free to --

 7          MR. SCHOLL:  All right.  I'll be glad to wait.

 8          THE COURT:  -- disagree.  Just wait.  That's all

 9   I'm saying.  Please wait.

10          All right.  And then what was the breakdown of the

11   new assessed judgment?

12          MR. KRIK:  The judgment ordered just the fixed

13   amount of $136,865.70.

14          THE COURT:  Okay.  Now, Mr. Scholl, what did you

15   believe happened?

16          MR. SCHOLL:  Excuse me?

17          THE COURT:  What do you believe happened?

18          MR. SCHOLL:  Well, let me just say this.  Mr. Krik

19   argued that the amount should be 16,000 more than 136,

20   because he was arguing that the *Stenarto* (ph) didn't apply.

21          THE COURT:  That who?

22          MR. SCHOLL:  That the whole issue that was

23   decided, and the amount that she eventually fixated was

24   exactly the amount that I believed was correct, if you

25   accepted my *Stenarto* argument.

1          THE COURT:  Okay.  So the judge came out --

2          MR. SCHOLL: (Indiscernible.)  But for --

3          THE COURT:  -- so you're not -- wait, Mr. Scholl,

4    hold on.  Let me make sure I understand.

5          The 136,865.70 is the amount that the judge came

6    out if she believes *Stenarto* where the mortgage merged into

7    the judgment and you were not entitled to anything except

8    post-judgment interest.  That what you're saying?

9          MR. SCHOLL:  It's the exact amount, as a matter of

10   fact.  But -- but, although Mr. Krik even argued initially

11   that post-judgment payments ought to be deducted -- in fact,

12   in his brief he argued that there ought to be at least a

13   small deduction, when it came around to figuring out this

14   number that she came up with, the judge didn't change the --

15   that 136 number at all.  It was as if she ruled we hadn't

16   made any payments, even though -- we not -- it wasn't just a

17   few payments.  We made $30,000 in payments.

18         THE COURT:  Okay.  So you're saying the

19   136,865.70, what -- is that the original judgment, or is

20   that judgment plus interest?

21         MR. SCHOLL:  No, no, the original judgment --

22   that's the judgment plus interest.  It's the exact amount of

23   the judgment plus interest, but it doesn't take into account

24   the payments.

25         THE COURT:  Okay.

Case 20-12621-mdc Doc 20-137 Filed 01/08/21 Entered 01/04/23 Page 135 of 265 Desc Main
Document    Page 120 of 228
In Re: Gabriel Bravo

120

1    MR. SCHOLL:  I don't know why the judge didn't

2 include anything about the payments.  If she would have said

3 something, maybe we'd have known what she was thinking, but

4 (indiscernible).

5    THE COURT:  But nobody --

6    MR. SCHOLL:  Even payments that Mr. Krik admitted

7 that they had made in his original brief, he haven't --

8 deducted some -- a small amount, any -- for payments.

9    But the thing is that most of the payments were

10 made during the 19-58 case and -- or '19 -- 2018 case, and

11 there was very large payments made during that case.  Very

12 large.  And according to him, we shouldn't get any credit

13 for it.

14    MR. KRIK:  Objection.

15    THE COURT:  Well, I guess the question becomes,

16 then, you know -- I guess I'll -- I mean, I've got to figure

17 out what the judge did, because all your -- what you're

18 saying to me, Mr. Scholl, is the judge gave them principal

19 and interest and gave -- and didn't say whether there was

20 any credit for the 2018 payments.

21    MR. SCHOLL:  Right.

22    THE COURT:  And I don't know, maybe the judge

23 didn't want to give credit.  Maybe the judge thought there

24 was no -- I don't know.  What am I supposed to do if the

25 judge didn't say anything?  Send you guys back over there

Case 20-19262-RBR Doc 133 Filed 01/08/21 Entered 01/04/23 21:03:22 Desc Main
Document Page 121 of 228
In Re: Gabriel Bravo

121

 1   and have them clarify?

 2           MR. SCHOLL:  Well, I can only tell you what I

 3   figured.

 4           MR. KRIK: (Indiscernible) the time for

 5   reconsideration.

 6           MR. SCHOLL:  I figured we were going to get to the

 7   bankruptcy court, and we'll have to get it worked out there.

 8   Especially since we're going to have a sale, so we have to

 9   have a payoff.  And you know, I --

10           THE COURT:  Well, so -- so your position then is

11   -- let me make sure I'm understanding this.  The debtor had

12   a judgment.  You argued that the only thing they were

13   entitled to was interest and interest based on *Stenarto*,

14   just the interest to whatever.

15           MR. SCHOLL:  Right.

16           THE COURT:  And that number that the judge gave,

17   clearly just reflects the interest and the -- on the

18   judgment.

19           MR. SCHOLL:  That's right.

20           THE COURT:  Okay.  And you don't believe the judge

21   did anything with respect to the payments that were made?

22           MR. SCHOLL:  Exactly.

23           MS. SMITH:  Exactly.

24           THE COURT:  But -- and I don't know that because

25   she didn't write -- it's a she, right?

In Re: Gabriel Bravo

122

1          MR. KRIK:  Yes.

2          MR. SCHOLL:  She.  It's Judge Paula Patrick.

3          THE COURT:  Okay.  So I don't know.  I guess I'll

4    have to figure it out.  Did the judge --

5          MR. KRIK:  Well, Your Honor --

6          THE COURT:  Uh-huh.

7          MR. KRIK:  -- again, the -- I don't know if we're

8    opening arguments here or if we're just discussing it.

9          THE COURT:  This is opening arguments because I'm

10   not -- this is why I'm saying opening, because if I find

11   that the Court -- that the bank -- the state court already

12   adjudicated this, I'm not having the hearing.

13         MR. KRIK:  Yes.  Understood.

14         THE COURT:  There's nothing to have a hearing on,

15   so that is an initial matter I have to decide whether

16   there's -- well, first of all, whether this is *Rooker*

17   *Feldman*, res judicata, or collateral estoppel, or what --

18   all three of them.  I don't know.

19         MR. KRIK:  Yes.

20         THE COURT:  But that's an initial that I have to

21   -- threshold I have to get beyond.

22         MR. KRIK:  Yes.  And, Your Honor, the issues were

23   already decided and Mr. Scholl just indicated that he was

24   waiting -- going to wait to sort it out in the bankruptcy

25   court where the appropriate action would have been to seek

In Re: Gabriel Bravo

123

1   reconsideration or appeal the judge's state court order.

2          The motion filed by -- or the response filed by

3   Mr. Bravo -- Mr. Scholl on behalf of Mr. Bravo, included a

4   new matter that specifically asked the court, the state

5   court to address $31,000 in payments.

6          The court ruled with an order that fixed a number.

7   While it didn't give an opinion, it may have had he appealed

8   that order, or had he filed for reconsideration.  But the

9   issue was raised --

10         THE COURT:  Well, so we don't know what the judge

11  did.

12         MR. KRIK:  Correct.  But the issue was raised --

13         MR. SCHOLL:  I didn't know what she did, but since

14  the number was exactly the amount that he argued -- but I

15  argued it should have been, without being based on *Stenarto*,

16  how could she have possibly been considering the payments?

17  She couldn't have been --

18         THE COURT:  Wait, wait, wait, wait.  All I can

19  tell you this is, you know, I don't know what the judge did

20  with it.  There's no opinion.  Now you guys want me to

21  speculate because --

22         MR. SCHOLL:  Yeah.

23         THE COURT:  -- all I can say is, if I can look at

24  that and say, this is what she came out with -- for me, for

25  collateral estoppel, I don't know, did the judge rule on it

Case 20-19262-nmc-04320-137H Filed 01/08/23 Entered 01/04/23 13:06:39 of 265c Main
Document    Page 124 of 228
In Re: Gabriel Bravo

124

1   or not.

2           MR. KRIK:  The issue was raised, and I think it's

3   imprudent of the debtor's counsel to think that if the issue

4   was raised that it was not considered by a judge.

5           And also, that these -- the relief --

6           THE COURT:  Maybe it -- I don't know what she did

7   or didn't.

8           MR. KRIK:  Maybe not.

9           THE COURT:  I don't know (indiscernible).

10          MR. SCHOLL:  I think in this case, that's

11  obviously what she did.  That's obviously what she did.

12          MR. KRIK:  Your Honor, (indiscernible).

13          MR. SCHOLL: (Indiscernible.)

14          THE COURT: (Indiscernible.)  Hello.  Hello.

15  Hello.  Hello.  Hello.  Let's bring this down.

16          If, you know -- and I see some argument is that if

17  the judgment was X, and the judge says the judgment is X,

18  and I included interest and got to a number, what did she do

19  with the payments?  Did she reject the payments?  Did she

20  say I'm not going to -- what did you argue in yours, Mr.

21  Krik, that it was -- you argued that it was X plus interest

22  plus some additional amounts?

23          MR. KRIK:  Correct.  We argued that there were

24  additional amounts due for certain expenses and insurance

25  and legal fees and so forth.  They were rejected, but also,

In Re: Gabriel Bravo

125

 1  they were rejected without explanation.  The order just

 2  fixes an amount, but the issues were raised.  No appeal, no

 3  reconsideration.  That's a final state court order.

 4          THE COURT:  Mr. Scholl.  I guess it's not

 5  (indiscernible) interpreted --

 6          MR. SCHOLL:  I don't --

 7          THE COURT:  -- I guess it's whatever

 8  (indiscernible) to that.

 9          MR. SCHOLL: (Indiscernible) she was --

10          THE COURT:  I don't know.

11          MR. SCHOLL:  Since it's an exact amount without

12  crediting any payments, it's obvious that she didn't believe

13  that crediting payments was part of her job.

14          THE COURT:  Well, we don't know what --

15          MR. KRIK:  Objection.

16          THE COURT:  -- she believed.  I don't know what

17  she believed.  I don't know what she believed.  I need to

18  see what was before her.

19          MR. SCHOLL:  Okay.

20          THE COURT:  Did she simply reassess and say, this

21  is how much is owed, and plus interest as of this date, and

22  goodbye?  Or did she say, this is what -- I don't know

23  because I need to see what you guys pled.

24          MR. KRIK:  Understood.

25          THE COURT:  I don't know.

 1          MR. KRIK:  And respectfully, Your Honor, with or

 2   without even explanation in her order, again, we believe

 3   it's a final state court order that has to be given full

 4   faith and credit.

 5          THE COURT:  Mr. Scholl?

 6          MR. SCHOLL:  Not if that isn't what she decided.

 7          THE COURT:  Well, I don't know what she decided

 8   and nobody asked her to.  So should I send you guys back

 9   over there and go ask her, because I don't know, and I can't

10   tell.  I need the pleadings.  So I need to --

11          MR. KRIK:  Your Honor, we are prepared to put that

12   on, Your Honor.

13          THE COURT:  Okay.

14          MR. KRIK:  We are prepared to show the pleadings.

15          THE COURT:  Okay.  All right.  So I'm going to get

16   the pleadings.

17          MR. SCHOLL:  Frankly, Your Honor, that will not

18   resolve it, because I can tell you --

19          THE COURT:  Well, it will --

20          MR. SCHOLL:  -- this.  Initially, Mr. Krik himself

21   argued, there should have been credit for certain payments.

22   She didn't even give credit for that.

23          Now what conclusion could you draw from that?  The

24   conclusion I would draw is she wasn't considering the

25   payments at all.

1          MR. KRIK:  And I -- yeah.  Your Honor, I would

2     object to any reading into a judge's decision where Mr.

3     Scholl's relief, if he wished to reconsider that order,

4     would have been within 30 days of the state court order to

5     ask Judge Patrick for reconsideration, or to file an appeal

6     to the superior court of Pennsylvania.  Neither of which was

7     done --

8          THE COURT:  Respectfully, Mr. Krik --

9          MR. SCHOLL:  No, only if that's what she decided.

10          THE COURT:  Whoa.  Whoa.  Whoa, whoa, whoa.  Whoa,

11     whoa, whoa, whoa, whoa, whoa.  Mr. Scholl, let him finish.

12     Ms. Smith, only one of you can talk.

13          MR. SCHOLL:  We let him finish.  He talks three

14     quarters of the time.

15          THE COURT:  But, Mr. Scholl, that's because I

16     asked him a question.  I'm not going to discount anything

17     you have to say.  I'm just trying to figure out, his

18     position is that that was before the court.  Your position

19     is, it was but the court didn't rule on it and it didn't --

20     and it was obvious she didn't rule on it by what she -- what

21     her decision was.

22          And so I have to sort of figure out, well, it was

23     before the court.  Did the court rule on it.  And that's I

24     guess -- I don't -- because I don't know precisely what was

25     before the court because you're telling me that -- basically

1    what I'm hearing that what was before the court was a

2    *Stenarto* issue, whether the mortgage company was entitled to

3    additional fees and costs once a judgment was entered.

4           And what I'm hearing from Mr. Scholl is that the

5    court agreed only with the *Stenarto* argument and issued a

6    judgment that took the judgment that was issued and added

7    interest.  And we don't know what the judge did.  And maybe

8    she rejected the post-petition -- I mean the post-judgment

9    payments, or she didn't, but his argument is, she didn't

10   decide it.  And Mr. Kirk's argument is, yes she did because

11   she didn't reduce the judgment for those 30,000 in payments.

12           MR. KRIK:  Correct.

13           MR. SCHOLL:  That's a correct statement.  Yep.

14           THE COURT:  Okay.  And it was on the papers, no

15   hearing, no arguments, no anything.

16           MR. KRIK:  That's correct.

17           THE COURT:  I don't know.  I don't know what I do

18   with that.  I've been -- you know, typically, when I look at

19   a judgment, I've got it.  The judge says this.  I'm like,

20   they decided it and it's very clear to me that that's what

21   it was.  But then, you know the -- I don't know.

22           Okay.  So I'm -- you guys are going to give me the

23   pleadings and then I'm obviously just going to go through

24   and hear everything, and then I've got to figure out what

25   happens with that judgment.  So that's going to be a

Case 20-01926-abc-040 20-137H Filed 01/03/21 Entered 01/04/03/23 13:06:42 Desc Main
Document     Page 129 of 228
In Re: Gabriel Bravo

129

```
 1   threshold matter for me.

 2           But I guess since we're here, it just makes sense

 3   to do it all.  At the end of the day if I find that I'm

 4   bound by the judgment, I'm bound by the judgment.  If I find

 5   that I am not, I don't have to come back and have another

 6   hearing.  That make sense?

 7           MR. KRIK:  Yes.

 8           MR. SCHOLL:  Yes.

 9           MS. SMITH:  Yes, ma'am.

10           THE COURT:  Okay.  All right, Mr. Scholl, this is

11   your objection.  I think I understand what the issues are.

12   Mr. Scholl, you put your evidence in support of your

13   objection.

14           MR. SCHOLL:  Well, you can say that, Your Honor.

15   I mean, I did put evidence.  I don't know that Mr. Krik

16   would agree or disagree that that statement of the payments

17   is correct.

18           THE COURT:  No, no, no, no.  Let me start with, I

19   need the pleadings from the state court.  That's number one.

20   I need those first, so you can --

21           MR. KRIK:  Your Honor.

22           THE COURT:  Yes?

23           MR. KRIK:  Those are attached -- those are

24   attached as Items C-8, 9, and 10.

25           THE COURT:  Would the parties stipulate that 8, 9,
```

1   and 10 can be admitted into evidence?

2           Mr. Scholl?

3           MR. SCHOLL:  I could --

4           THE COURT: (Indiscernible.)

5           MR. SCHOLL:  I could, but I'm going to attach a

6   condition.

7           THE COURT:  Only --

8           MR. SCHOLL:  That Mr. Krik agreed to the amount

9   that was paid, with no agreement as to whether it ought to

10  be credited or not so that we don't have to go through a

11  long hearing about how many payments Mr. Bravo made.

12          THE COURT:  But -- well, Mr. Scholl, even if you

13  -- I mean, this is your objection to the claim.  You have

14  the -- you have the burden of going forward with evidence

15  sufficient to call it into question, and then the ultimate

16  burden of proof shifts to the claimant.

17          But on a threshold jurisdictional issue, I need to

18  first decide whether I am precluded from even hearing the

19  evidence of payments, because a state court has issued a

20  final judgment that would render my consideration of the

21  payments inappropriate.  So I need that first.

22          Now you can introduce the pleadings.  I'm not

23  sure, but I need those.  So how do you want to get them in

24  to me?

25          MR. SCHOLL:  Well, he's got some of the pleadings

Case 20-19262-acv-04320-H-H-H Filed 01/08/31 Enter 01/04/03/21 13:06:46 of 265c Main
Document    Page 131 of 228
In Re: Gabriel Bravo

131

1  there.  I think they're probably the -- an accurate

2  portrayal of them.

3          THE COURT:  Okay.  So that's what I'm saying --

4          MR. SCHOLL:  There's --

5          THE COURT:  -- so --

6          MR. SCHOLL:  -- I would underscore though; I would

7  underscore that he originally argued that the debtor wasn't

8  (indiscernible).

9          THE COURT:  I get that, Mr. Scholl.  I'm not -- I

10  am not even saying what his arguments are or not.  I just

11  need the pleadings, and my question is, Mr. Krik has

12  attached them as C-8, 9, and 10 in your exhibit list.  Or do

13  I got the wrong numbers?

14          MR. KRIK:  That's correct.

15          MR. SCHOLL:  That may be okay.  Yeah.

16          THE COURT:  Okay.  So those can be admitted as --

17  admitted as the proper filings?

18          MR. KRIK:  No objection from the creditor.

19          THE COURT:  All right.  Mr. Scholl, take a look at

20  8, 9, and 10.  Do you believe they are --

21          MR. SCHOLL:  Well, I'm trying to look -- yeah.

22          THE COURT:  Okay.  Take a look.  You believe that

23  they are the pleadings that were filed in state court?

24          MS. SMITH:  Well, we don't have 8 -- 8 and 9.

25          MR. SCHOLL:  I can't see the whole thing.  It --

```
 1            THE COURT:  You don't have to put them in, because
 2   then the burden --
 3            MR. SCHOLL:  (Indiscernible.)
 4            THE COURT:  Mr. Scholl, you don't have to do that.
 5   You -- then let -- you know what, never mind.  Let -- Mr.
 6   Krik is going to put them in, in a defense.  Okay.  Right,
 7   Mr. Krik?
 8            MR. KRIK:  Yes, Your Honor.
 9            THE COURT:  All right.  So never mind.  Okay.
10   Let's you go ahead and make your case.  Okay?  Mr. Scholl,
11   go ahead.
12            MR. SCHOLL:  You're going to submit his --
13            THE COURT:  He can do it in his case in
14   opposition.  Let's just do your case.  Okay?
15            All right.  So you believe you want to call Mr.
16   Bravo to tell him (indiscernible).
17            MR. SCHOLL:  Oh, Mr. Bravo.  Yeah.
18            THE COURT:  Okay.
19            MR. SCHOLL:  I'd also call Mr. Weiser to ask him
20   whether he got any payments or whether he credited any.
21            THE COURT:  Well, he will -- whoa, whoa, whoa.
22   One at a time.  Who do you want to call first?  Mr. Weiser
23   or Mr. Bravo?
24            MR. SCHOLL:  Yeah, maybe, because that would be
25   shorter.
```

Case 20-cv-04020-137H Document 08/23 Filed 01/04/23 Page 133 of 265 Desc Main
Document    Page 133 of 228
In Re: Gabriel Bravo

133

```
 1              THE COURT:  All right.  Call Mr. Weiser?

 2              MR. SCHOLL:  Yeah.

 3              THE COURT:  Okay.  All right, Mr. Weiser.  You're

 4   calling him as a cross, Mr. Scholl?

 5              MR. SCHOLL:  I call him as of cross.

 6              THE COURT:  All right.  Where is Mr. Weiser.  Is

 7   he still on here?

 8              MR. WEISER:  I'm here.

 9              THE COURT:  Okay.

10              MR. WEISER:  Can you hear me?

11              THE COURT:  Okay.  Yes, I can.  I had gallery

12   view.  Let me go to speaker view.  Okay.  All right.

13              John -- Mr. Krik, he's calling Mr. Weiser as a

14   cross.  Okay?

15              MR. KRIK:  Yes, Your Honor.

16              THE COURT:  Can you swear him in, or however he

17   affirms?  What do you do, Mr. Weiser?  You want to be

18   affirmed or you want to get sworn in?  Which one?

19              MR. WEISER: (Indiscernible.)

20              THE COURT:  Okay.  John.

21              THE CLERK:  I think he cut out.  I didn't hear.

22   You said affirm?

23              MR. WEISER:  Yes.

24              THE COURT:  He said affirm, yes.

25              MR. WEISER:  Yes, affirm.
```

In Re: Gabriel Bravo

134

```
 1              THE CLERK:  I'll just -- same hearing.

 2                   WITNESS, JOEL WEISER, Sworn

 3              THE WITNESS:  Yes.

 4              THE COURT:  Okay.

 5              THE CLERK:  Thank you.  Could you please state and

 6    spell your name for the record?

 7              THE WITNESS:  That's Joel Weiser, J-O-E-L W-E-I-S-

 8    E-R.

 9              THE CLERK:  And if you could just please state

10    your address for the record?

11              THE WITNESS:  110 Avis Avenue, Lakewood, New

12    Jersey, 08701.

13              THE CLERK:  Thank you.

14              THE COURT:  Okay, Mr. Scholl, you may proceed.

15                        CROSS-EXAMINATION

16    BY MR. SCHOLL:

17    Q    Mr. Weiser, are you the principle of EZ Cashing, LLC?

18    A    Yes.

19    Q    Okay.  During the period of time that Mr. Bravo was in

20    bankruptcy, in 2017, which lasted until 2018 -- I'm only

21    talking about what we'll call the first case -- did you get

22    any payments from Mr. Bravo?

23    A    I don't remember specifically any time frames from --

24    from the years past, so I don't recall exactly if I got any

25    payments then.
```

1  Q    Well, suppose your counsel stated in a brief --

2            MR. KRIK:  Objection --

3            MR. SCHOLL:  -- (indiscernible) payments.

4            THE COURT:  Wait a minute.  Wait a minute.  Wait a

5   minute, he's --

6            MR. SCHOLL:  Have any --

7            THE COURT:  Mr. Scholl, he's objecting.

8            On what basis are you objecting?

9            MR. KRIK:  I'm objecting --

10           MR. SCHOLL:  I haven't even got the question out

11  of my mouth.

12           THE COURT:  Well, he's object -- he's objecting --

13           MR. KRIK:  I'm objecting on the grounds of --

14  well, I guess I can't do it on relevance because you want to

15  hear payments have been made, but I'm objecting -- he's

16  calling for speculation as to what counsel did as oppose to

17  himself.

18           THE COURT:  Well, counsel, how is --

19           MR. SCHOLL: (Indiscernible.)

20           THE COURT:  He's asking him a question of

21  something you stated in a document.

22           MR. KRIK:  Well, then I would ask that he present

23  it and -- present the document as opposed to it's -- calling

24  into question what was said in a document.  It speaks for

25  itself.

Case 20-cv-04320-133H  Document 08/43-1  Filed 01/04/23  Page 522 of 265  Desc Main
Document     Page 136 of 228
In Re: Gabriel Bravo

136

 1               MR. SCHOLL:  All right.  Well, the document I'm

 2    talking about is the petition -- motion for -- to reassess

 3    damages.  And what I'm talking about is Paragraph 11.

 4               THE COURT:  Okay.  Motion to reassess -- reassess

 5    damages, which is Exhibit what of the debtor -- of the

 6    Defendant's Exhibit what?

 7               MR. KRIK:  That is -- oh, sorry, the defendant's

 8    exhibit.

 9               THE COURT:  Oh, defendant's movant creditor.

10               MR. SCHOLL:  I haven't --

11               THE COURT:  Exhibit --

12               MR. KRIK:  C-8.

13               THE COURT:  -- Exhibit D -- C-8?

14               MR. KRIK:  C-8.

15               THE COURT:  Pull up -- pull up C-8, John.

16               MR. SCHOLL:  He marked it as C-8.  Yeah.

17               THE COURT:  Yeah.  Okay.  All right.  So we have a

18    Document C-8.  Let's go to the top page.

19               MR. SCHOLL:  Okay.

20               THE COURT:  Okay?

21    By MR. SCHOLL:

22    Q    Now, you admit that in Paragraph 11 --

23               THE COURT:  Hold on.  Not admit.  Let's see.  You

24    see this document, Mr. Weiser?

25               THE WITNESS:  Yes.

In Re: Gabriel Bravo

137

```
 1            MR. SCHOLL:  The document in front of you, first

 2  question.

 3            THE COURT:  Right.  Can you ask him what it is and

 4  has he seen it?

 5  BY MR. SCHOLL:

 6  Q    Do you have C-8 in front of you?

 7            THE COURT:  It's in front of him.

 8            THE WITNESS:  Yeah, I see the one page, a half a

 9  page, you know?

10            THE COURT:  All right.  Go through the rest of the

11  pages now.

12  BY MR. SCHOLL:

13  Q    You did -- I'm going to focus your attention on

14  Paragraph 11 of C-8.

15            THE COURT:  Okay.  What is C-8?  C-8 is what?

16            MR. SCHOLL:  C-8 is the motion to reassess

17  damages.

18            THE COURT:  Okay.

19            MR. SCHOLL:  Okay?  All right.

20            THE COURT:  Okay.

21            MR. SCHOLL:  You --

22            THE COURT:  And you want him to go to paragraph

23  what?

24            MR. SCHOLL:  Paragraph 11.

25            THE COURT:  Okay.
```

1   BY MR. SCHOLL:

2   Q    It states at the top, consent judgment.  That was the

3   original judgment entered in Delaware County.  Am I right?

4   A    That's what it seems, yes.

5   Q    Isn't that the --

6        THE COURT:  Who's talking?  Hello.  Whoever is

7   talking, please -- you're kind of distracting me.  Go ahead.

8   BY MR. SCHOLL:

9   Q    Is that --

10        THE COURT:  All right.

11  Q    Let me rephrase the question, because it may have been

12  confusing.

13       Is not this top line consent judgment, the judgment

14  that was entered by consent between you and Mr. Bravo in the

15  Delaware County Court of Common Pleas?

16  A    That was not me.  I don't think that was me.

17  Q    Well -- so you don't know?  It was your predecessor who

18  was assigned to you.  You're aware of that, right?

19  A    Yes, it was assigned to me.

20  Q    All right.

21       Do you have reason to think that that consent judgment

22  is not in the amount of 105,613.62?

23  A    I don't know.  I don't know what that -- I see what it

24  says here, but I don't -- I don't know what -- if that's the

25  original amount or if that's accurate.

In Re: Gabriel Bravo

139

1  Q    Well, if Mr. Krik stated it, could you not assume that

2  it's probably correct?

3  A    I don't -- I was -- if he stated then, then I would

4  assume he had a reason to state that, but I don't -- I don't

5  know -- fact that that is correct.  I didn't, you know,

6  research that.

7  Q    All right.  Well, you do see on that page it says,

8  subtotal, in which he adds on various things that are listed

9  under the subtotal amount of 136,365.70, and there's a whole

10  bunch of subtotal items, and it comes to 155,915.25; is that

11  right?

12  A    Yes, that's what it says.

13  Q    Then underneath that it says, does it not, less

14  payments received, four payments of 720 each, 2,880?

15  A    I see that.

16  Q    Those -- right.  Is that not agreement that Mr. Bravo

17  is entitled to credit for the payments that he made?

18  A    That -- that's what it seems to say what it is.

19  Q    All right.  Now, but you know also Mr. Bravo claims

20  that he made actually six payments.  You're aware of that,

21  right, because we had a hearing on that.  Do you remember

22  that?

23  A    No, I don't remember that.

24  Q    All right.  Well, I can call Mr. Bravo for that.

25       Now, during the 2018 case, didn't Mr. Bravo make

Case 20-19262-nmc-04330-137H Filed 01/08/21 Entered 01/04/23 23:13:05 52 of 265c Main
Document     Page 140 of 228
In Re: Gabriel Bravo

140

1  payments to you, to EZ Cashing?

2  A    I don't -- I don't recall.  I haven't really reviewed

3  those records from prior to the state -- the state -- the

4  state reassessment of damage case.

5  Q    Nobody's talking about the state reassessment damage

6  case.  All I'm talking about is the payments you received

7  during the 2018 bankruptcy case.  Do you have a record of

8  that?

9  A    I don't recall.  I have not reviewed any records.

10           THE COURT:  Okay.  He said (indiscernible).

11           MR. SCHOLL:  (Indiscernible.)

12           THE COURT:  He said he doesn't recall.

13           MR. SCHOLL:  Because we provided it to you.

14  BY MR. SCHOLL:

15  Q    Did you see all of the copies of the receipts that Mr.

16  Bravo submitted?  Did you see those, or to check them

17  against your records?

18           MR. KRIK:  Objection.  If he wants to present what

19  he's talking about, he --

20           THE COURT:  Well, he can ask him has he seen them.

21           THE WITNESS:  I'm not sure exactly what you're

22  referring to.

23  BY MR. SCHOLL:

24  Q    Are you aware that Mr. Bravo had to produce exhibits

25  prior to this hearing, and that he did produce a large

1   number of exhibits -- or receipts as an exhibit -- as

2   exhibits?  Do you agree with that?

3   A    That -- that he (indiscernible)?  I'm sorry.  What's

4   the question?

5   Q    I'll rephrase it.

6        Did you look at the exhibits that Mr. Bravo submitted

7   before the hearing today?

8   A    I'm not -- I may have seen something briefly, but I'm

9   not 100 percent sure.

10  Q    All right.  Okay.

11       Do you -- how many payments do you think Mr. Bravo paid

12  during the 2018 case?

13  A    I don't -- sitting here, I don't recall.  I don't know.

14  Q    Well, do you not recall that he paid you $1,288 a month

15  for every month?

16  A    I don't remember.

17  Q    But he may have, is that right?

18  A    It's possible.  I do not recall.  I have not seen it.

19  Q    All right.  Did you give Mr. Bravo any credit for any

20  of those payments that you made at any time?

21  A    I -- I believe I have given him -- that credit for

22  payments that received, yes.

23  Q    Where did you give him credit for that?  Can you --

24  well, let me rephrase it.  Can you show us any calculations

25  that indicate where you did give Mr. Bravo credit for any of

 1 | those payments?

 2 | A    I don't recall any calculations now from the years

 3 | past.

 4 | Q    Okay.  So you don't -- you don't know how many payments

 5 | you got.  You don't know if it's one or two or 10, or 20.

 6 | A    I don't recall.  I got -- I've -- you know, I've not --

 7 | I don't remember from past and -- you know, that are before

 8 | the reassessment in the case.

 9 | Q    Well, if Mr. Bravo was able to produce receipts that

10 | show payments, you wouldn't have any way of questioning

11 | that, would you?

12 |          MR. KRIK:  Objection.

13 |          THE WITNESS:  I'm sorry?  What was that question?

14 |          MR. SCHOLL:  You wouldn't have any --

15 |          THE COURT:  Wait a minute.  No, whoa, Mr. Scholl.

16 |          MR. SCHOLL:  -- way of questioning it.

17 |          THE COURT:  Mr. Scholl, there's an objection.

18 |          THE WITNESS: (Indiscernible.).

19 |          THE COURT:  What's the objection, counsel?

20 |          MR. KRIK:  It calls for speculation that these --

21 | that these -- they haven't even been produced or testified

22 | to what these receipts are.  They've only -- he's only been

23 | asked if he's seen photocopies of something.

24 |          THE COURT:  So --

25 |          MR. SCHOLL:  They have been produced.  They are

In Re: Gabriel Bravo

143

 1  (indiscernible).

 2          THE COURT:  All right.  He hasn't -- wait a

 3  minute.  They haven't been -- Mr. -- the question is, if the

 4  debtor is able to produce receipts, would you be able to --

 5  would you have any evidence that would counter those

 6  receipts?

 7          MR. KRIK:  Well, I would object again on the basis

 8  that this is barred by res judicata and collateral estoppel.

 9          THE COURT:  I'm -- Mr. Krik, you will get your --

10  to defend against that.  We're not there yet.  He's arguing

11  that the debtor is entitled -- your defense is res judicata,

12  collateral estoppel, you'll put your defense on.  We are

13  where we are.  That's the way we're going to do this.  All

14  right.

15          So, Mr. Krik, having -- having my understanding of

16  the question, what's your objection?

17          MR. KRIK:  Your Honor, that was -- I would ask

18  that he restate it.  That was my objection, so I'll withdraw

19  and let him proceed.

20          THE COURT:  Okay.

21          MR. SCHOLL:  All right.

22  BY MR. SCHOLL:

23  Q    Just so I understand, are you contending that you did

24  give Mr. Bravo credit at some time and some place for any of

25  the payments during the 2018 case?

```
 1   A    I don't -- I don't recall now getting payments or what

 2   payments were given in a specific time.  I do think that if

 3   I would have gotten payments, I would have credited it, but

 4   I don't recall any, you know, specific payments or specific

 5   instances.

 6   Q    All right.  Well, let me -- let me ask you this.  Did

 7   you send any payments back to Mr. Bravo and say, Mr. Bravo,

 8   I shouldn't accept these payments, I'm going to send them

 9   back to you?

10   A    I don't -- I don't recall if I ever sent back payments.

11   Q    Okay.  All right.  Well, thank you.

12          MR. SCHOLL:  I don't think there's anything

13   further I'll ask of Mr. Weiser, but I do have Mr. Bravo

14   here.

15          THE COURT:  Well, you can ask Mr. Bravo questions,

16   Mr. Krik.  Or do you want to reserve him for your case in

17   opposition?

18          MR. KRIK:  Whether I want to call him now on

19   direct?

20          THE COURT:  Yeah.

21          MR. KRIK:  Sure.  I'll speak with Mr. Weiser on

22   direct.

23          THE COURT:  Okay.  Go ahead.

24                    DIRECT EXAMINATION

25   BY MR. KRIK:
```

1  Q    All right.  Mr. Weiser, you've testified that you are

2  representative of EZ Cashing.  Is that correct?

3  A    Yes.

4  Q    And if I could bring up Document C-8 again?

5       And, Mr. Weiser, do you recognize this document as the

6  motion to reassess damages filed on your behalf in state

7  court?

8  A    Yes.

9  Q    Okay.  And would you agree that this itemization that

10 is listed in Paragraph 11 represents your understanding of

11 the value that you sought reassessment for in -- on -- in

12 February of 2021?

13 A    Yes.

14 Q    And this breakdown includes certain post-judgment

15 charges that you believe you were entitled to?

16 A    Yes.

17 Q    And it also indicates credits given for payments

18 received; is that correct, in the amount of $2,880?

19 A    Yeah, that's what it says.  Yeah.  That's what it

20 indicates.

21 Q    Okay.  So at that time, in February of 2021, your

22 records indicated to provide credits to the judgment only

23 for these amounts; is that correct?

24 A    I think so, yes.

25 Q    Okay.  If we could continue down to -- and let me back

1   up for a second.  You had charged interest at the -- at a

2   fixed daily rate of $19.83; is that correct?

3   A    Yes.

4   Q    And do you know whether or not -- how that amount --

5   I'm sorry, let me rephrase that.

6        Was that amount specified in the consent judgment?

7   A    I'm not 100 percent sure.

8   Q    Okay.  In your filing of this motion to reassess

9   damages, are you aware of how the Court ruled?

10  A    On what?

11  Q    On this motion to reassess.  Do you -- are you familiar

12  with the Court's decision?

13  A    Yes, I've seen it.  Yes.

14  Q    Okay.  I'd like to go to -- are you familiar with the

15  response filed by the debtor?

16          MR. SCHOLL:  Response to what?

17  BY MR. KRIK:

18  Q    Are you familiar with the response to motion to assess

19  damages filed by the debtor?

20  A    I think I've seen that, yes.

21  Q    Okay.

22          MR. KRIK:  If I could call up Exhibit C-9?  And if

23  we could go to Page 1 of that?  Thank you.

24  BY MR. KRIK:

25  Q    All right.  Mr. Weiser, have you had a chance to, at

1   any point, see the document labeled defendant's response to

2   the reassessment of damages?

3   A    I think so, yes.

4   Q    And do you see whether -- that it says it's with new

5   matter?

6   A    Yes, I see that now.

7   Q    Okay.  You were just questioned about your charges and

8   credits given in Paragraph 11.  Have you seen the

9   defendant's response to Paragraph 11?

10  A    Where would that be?

11  Q    It's on the screen for you now.  I'm just wondering if

12  you've read it before, where it (indiscernible)?

13  A    Which paragraph are you referring to?

14  Q    Number 11, if you've seen the defendant's response.

15  A    It starts -- oh, one second.  It starts with the 9th?

16  Q    Correct.

17  A    I don't know if I've -- I may have seen it in the past,

18  but I could look at it now.

19  Q    Do you recognize in that paragraph, can you read the

20  last sentence for the Court?

21  A    It says, "As set forth here and after, the defendants

22  have made numerous payments to plaintiff which are not

23  credited."

24  Q    Okay.

25            MR. KRIK:  And could we go down to the new matter

1  as well?

2          THE WITNESS:  Yeah, I see it.

3          MR. KRIK:  If we can scroll down to the new matter

4  in the exhibit?  All right.  Thank you.

5  BY MR. KRIK:

6  Q    Did you see the new matter that was offered by the

7  defendant in this case?

8  A    Yeah, I see it.

9  Q    Do you recognize the allegation in Paragraph 18?

10  A    Yeah, I see what -- I see what they're writing.  Yeah.

11  Q    So it's your understanding that they had alleged in

12  state court that these payments were made but not credited;

13  is that correct?

14  A    Yes.

15  Q    All right.  Thank you.

16          MR. KRIK:  Can we go to Exhibit C-10, please?

17  Thank you.  The following page.

18          MR. SCHOLL:  Just the order.

19          MR. KRIK:  Thank you.

20  BY MR. KRIK:

21  Q    Mr. Weiser, have you seen a copy of this order dated

22  June 2nd, from the state court?

23  A    Yes.

24  Q    And is it your understanding that this was the order

25  filed with the Court?

1   A    Yes.

2   Q    And is it your understanding that after filing your

3   motion to reassess damages, the judge reassessed damages at

4   $136,865.70?

5   A    Yes.

6   Q    When you did not receive credit for the payments that

7   you made, the additional charges that you made,

8   approximately 19,000 worth, for -- as discussed above for

9   insurance, real estate taxes, and so forth, did you appeal

10  this order?

11         MR. SCHOLL:  Objection.  I don't think it's

12  relevant.

13         THE COURT:  Basis?

14         MR. KRIK:  Hold on.  Go ahead.

15         THE COURT:  Basis?  What is your basis for --

16         MR. SCHOLL:  Oh, it's totally irrelevant.  We're

17  not talking about the charges.  Which charges?  Why would it

18  make any difference what she did on those?

19         THE COURT:  I'm going to allow it for what it's

20  worth.  Go ahead, counsel.

21  BY MR. KRIK:

22  Q    Mr. Weiser, in any of these state court pleadings, did

23  you see any exhibits or -- attached to anything that

24  resembled documentation regarding additional payments due,

25  or credit that should have been credited?

In Re: Gabriel Bravo

 1   A    I don't think so.  I don't remember seeing anything

 2   like that.

 3   Q    Do you know whether or not either yourself -- you have

 4   said no.  Do you know whether or not the defendant had

 5   sought reconsideration of this order in state court?

 6   A    I have -- I have not seen or heard any indication that

 7   they did do that.

 8   Q    Do you know whether or not the defendant filed an

 9   appeal of this order to the state court?

10   A    I have not seen anything to -- you know, that would

11   indicate that.

12   Q    Do you know whether or not the debtor had sought a

13   motion for clarification from Judge Patrick of this order?

14   A    Again, the same thing.  I have not seen anything like

15   that.

16   Q    Okay.

17        MR. KRIK:  I'm now going to introduce what is

18   marked as C-26.

19        MR. SCHOLL:  C-26.  C-26.

20        THE COURT:  What's C-26?

21        MR. KRIK:  Your Honor, that's our proof of claim.

22   Thank you.

23   BY MR. KRIK:

24   Q    Mr. Weiser, in this matter, did you instruct counsel to

25   file a proof of claim on behalf of EZ Cashing LLC?

In Re: Gabriel Bravo

151

```
 1    A    Yes.

 2    Q    Do you recognize this document to be that proof of

 3    claim?

 4    A    Yes.

 5    Q    And in this proof of claim, if we could scroll down,

 6    can you state for me -- or confirm for me that the value of

 7    the proof of claim was filed at 139,800.54?

 8    A    Yes.

 9    Q    And you indicated that the basis for that in Paragraph

10    9 was that -- based on the consent judgment?

11    A    Yes.

12    Q    And if we could go down one more page?  Your -- the

13    calculations attached to your proof of claim begin with the

14    amount of the reassessed damages; is that correct?

15    A    Yes.

16    Q    Is it your understanding and belief that you have a

17    valid claim for the $136,865.70 in principle at the time of

18    the filing of this bankruptcy petition in October?

19          MR. SCHOLL:  Objection.  I don't think he has

20    (indiscernible).

21          THE COURT:  What -- well --

22          MR. SCHOLL:  I don't think it's relevant.

23          THE COURT:  Mr. Krik?

24          MR. KRIK:  Well, Your Honor, I'm asking him to

25    confirm the amount he presented to the Court, which would
```

Case 20-19262-ndc-04320-KRH Document 1408/23 Entered 01/04/23 13:06:27 Desc Main
Document    Page 152 of 228
In Re: Gabriel Bravo

152

 1  have been his opinion, whether it's an accurate opinion or

 2  not.

 3         THE COURT:  Well, not -- it's what he believes is

 4  owed.  It's not his opinion.  That's what he believes is

 5  owed, correct?

 6         MR. KRIK:  Well, I'll rephrase the question.

 7  BY MR. KRIK:

 8  Q    Mr. Weiser, do you believe that the amount claimed for

 9  $136,865.70 was the amount owed as -- in principle as of

10  October 27th, 2021?

11  A    Yes.

12  Q    Do you believe that that is the amount owed because of

13  the July -- June 2nd, 2021, state court order?

14  A    Yes.

15  Q    Okay.  Do you believe that the interest on the -- that

16  is added there was based on the consent judgment?

17  A    I think so, yes.

18  Q    Okay.  And if you could scroll down one more?

19       Did you attach to your proof of claim, a copy of that

20  June 2nd order of the state court?

21  A    Yes, I think so.

22  Q    Thank you.

23         MR. KRIK:  One moment, Your Honor.  All right.  If

24  we can go to C-27?

25  BY MR. KRIK:

In Re: Gabriel Bravo

153

1  Q    Attached to C-27 is a copy of a postal money order.

2  Does that appear familiar to you?

3  A    I'm still -- one second.  I'm -- I'm sorry.  For a

4  moment.

5  Q    It should be on the screen.  You should not -- can you

6  see the document on the screen, or no?

7  A    I can see it but it's a little small because I don't

8  have (indiscernible).  Give me one -- one second.

9  (Indiscernible.)

10  Q    Do you see it?

11  A    I see it.

12  Q    Okay.  Can you tell the Court what this document is?

13  A    That's a money order I got a couple of weeks ago for

14  $500.  It's for EZ Cashing, and it's from Gabriel Bravo.

15  Q    And have you received any other postal money orders

16  from Mr. Bravo since June 20 -- I'm sorry, June 2nd of 2021?

17  A    No.  I don't, no.

18  Q    No, you didn't?  Is that what you're saying, or no, you

19  don't.

20  A    No, I didn't get any besides this one.

21  Q    So this is the --

22        THE COURT:  So this one -- wait a minute.  This

23  one, when did you receive that?

24        THE WITNESS:  I must have gotten it a couple of

25  weeks ago.  Probably in the -- I would think in the

In Re: Gabriel Bravo

1  beginning of January or --

2         THE COURT:  Because it says -- it's dated

3  10/23/2021.

4         THE WITNESS:  Or it might be to the second part of

5  December.

6  BY MR. KRIK:

7  Q    And the memo on it says, November 1st.  But, Mr.

8  Weiser, my question to you is, you received a payment in the

9  amount of $500 recently from Mr. Bravo; is that correct?

10 A    Yes.

11 Q    And you deposited that and credited it towards the

12 judgment; is that correct?

13 A    Yes.

14 Q    And no other payments have been received by you since

15 June 2nd of 2021, correct?

16 A    That is correct.

17 Q    And your testimony to the Court today is that you have

18 not reviewed records prior to the reassessment of damages?

19 A    That is correct.

20 Q    And can you tell us -- can you explain why you did not

21 go beyond or before the reassessment of damages?

22 A    My understanding was that that was litigated and

23 adjudicated in the state court when we were trying to

24 reassess the damages, in order to -- to you know -- to

25 finalize, I guess, before closure, to know what amount we

 1  can -- we can -- we're entitled to in the foreclosure sale.

 2  So we -- it was not in bankruptcy then, so we went to state

 3  court to litigate and adjudicate the final amounts based on

 4  what we believed and based on what the debtor believed, and

 5  this was the ruling just stating what the final amount is.

 6  Q    Thank you.

 7         MR. KRIK:  I have no further questions for the

 8  witness.

 9         THE COURT:  Any recross, Mr. Scholl?

10         MR. SCHOLL:  Yes, Your Honor.

11                      RECROSS EXAMINATION

12  BY MR. SCHOLL:

13  Q    I take it from what you said that you believe Mr. Bravo

14  is entitled to receive credit for this $500 payment.  Is

15  that right?

16  A    It -- the most recent payment they brought up over

17  here, which was (indiscernible)?

18  Q    Yes.

19  A    Yes, he is entitled.

20  Q    All right.  Why would he be entitled to credit for that

21  payment but not for payments made during the 2017 and 2018

22  cases?

23  A    What payments are you referring to?

24  Q    Well, we're going to hear testimony about what they all

25  are, but I would say the 1,288 payments that were made -- at

Case 20-12522-JKS Doc 1637 Filed 01/08/21 Entered 01/04/23 21:13:06 Desc Main
Document   Page 156 of 228
In Re: Gabriel Bravo

156

1  least there's some evidence they were made, for 17 months.

2         MR. KRIK:  Objection.  There's no evidence of that

3  as of yet.

4         THE COURT:  All right.  So, Mr. Scholl, your

5  question is, assuming that he made those payments, would he

6  be entitled to payment -- to credit.  Is that what you're

7  asking him?

8         MR. SCHOLL:  Basically, why would he give him

9  credit for this and not for any of the ones from the earlier

10 cases?

11        THE COURT:  Well, because he said he doesn't know

12 about them.  But the question you're asking is, if they --

13 if there is proof of payments, would he give him credit.

14 That your question?

15        MR. SCHOLL:  Okay.  And I guess the answer is, he

16 will give him credit if he establishes that he made the

17 payments.

18        MR. KRIK:  I object.

19        THE COURT:  No, he may not say that.  I don't know

20 what he's going to say but I'm really -- I'm going to tell

21 you both.  I'm concerned.  If $30,000 of payments was made,

22 somebody better tell me something about where they went.

23 That's all I'm telling you.  If those payments were made,

24 I'm not sure what kind of weight I'm giving because this is

25 a court of equity.  I'm telling you counsel, there is no way

1   if I get some proof of 30,000 that I'm just going to say

2   they went poof.  I'm going to send you back somewhere.  You

3   got -- this is not -- that's not how I operate, and this

4   isn't a "I got you."

5          The same way if he didn't make that $30,000 worth

6   of payments, or whatever he said, then you're not getting

7   credit for -- he wouldn't get credit for them, because what

8   I'm noticing is, that judge didn't even have a hearing.  She

9   didn't ask for evidence.  All it is, somebody said I made

10  them, and she made a ruling.  Did anybody put anything into

11  evidence?  I don't know.  I don't know.

12         So that's why I really want to know, were these

13  payments made or not, and that's going to be an issue.  So,

14  Mr. Weiser is saying he don't know anything about them, and

15  he hasn't seen them.  But more importantly, he didn't go

16  back to look to see if they were, because he believed it had

17  already been addressed.

18         So, Mr. Scholl, his -- his answer is, he hasn't

19  seen them.  They don't know what you're talking about, and

20  it's your burden to show that they were made.

21         MR. SCHOLL:  All right.  Well, we're going to call

22  Mr. Bravo.

23         THE COURT:  Are you finished with Mr. Weiser?

24         MR. SCHOLL:  I do have another question.  I have

25  another question.

```
 1              THE COURT:  Yeah, go ahead.  I'm sorry.  I'm just
 2   getting a little -- let me apologize.  It's getting close to
 3   the end of the day; my patience is a little short.  So I
 4   apologize to everybody.
 5              Go ahead.
 6   BY MR. SCHOLL:
 7   Q    All right.  You did attach the answer and new matter
 8   that was filed in response to the motion.  Can I just ask
 9   you this?  Was there ever any answer filed to the new
10   matter?
11   A    That's a -- a question to me?
12   Q    Yes.
13   A    What was the question?
14   Q    Was there ever an answer filed to the new matter that I
15   filed in the answer to the motion to assess?
16   A    I'm not sure, but I don't recall any.  I'm not sure.
17   Q    All right.  Thank you.
18              MR. SCHOLL:  All right.
19              THE COURT:  All right.
20              MR. SCHOLL:  I don't -- questions.  Thank you.
21              THE COURT:  All right.  All right.  Any other
22   witness, Mr. Scholl?
23              MR. SCHOLL:  I want to call Mr. Bravo, yes.
24              Mr. Bravo -- I think he's already been sworn, Your
25   Honor.  Should -- do you have to swear him again?
```

1          THE COURT:  John, do we need to swear him in, or

2    did you release him?  Well, yeah, let's just do it because

3    it's in this hearing.  Let's -- let's swear him in again.

4          MR. SCHOLL:  Okay.

5                 WITNESS, GABRIEL BRAVO, Sworn

6    (Oath administered)

7          THE WITNESS:  Yes.

8          THE CLERK:  Could you once again please state and

9    spell your name for the record?

10          THE WITNESS:  Gabriel Bravo.

11          MR. SCHOLL:  Spelled the same as before.  And

12    could you please state your address again for the record?

13          THE WITNESS:  1168 South 9th Street.

14          THE COURT:  Thank you very much.

15                 DIRECT EXAMINATION

16    BY MR. SCHOLL:

17    Q    Mr. Bravo, you're familiar with the proof of claim

18    filed in this case by EZ Cashing, are you not?

19    A    Yes.

20    Q    Do you think that the claim is correct?

21    A    Yes.

22    Q    Well, do you think they've given you all the credit

23    that you're entitled to?

24    A    No, I did not.

25    Q    All right.  Did you make payments after the entry of

In Re: Gabriel Bravo

160

1  the judgment during the 2017 bankruptcy case?

2  A    Yes, I did.

3  Q    Are -- is -- I think all of those are attached on one

4  exhibit, if I'm not mistaken.  I can go around and get my

5  numbers correct.

6           COURTROOM DEPUTY:  Those are 1 through 5.

7           MR. SCHOLL:  They're 1 through 5.  D-1 through D-

8  5.  Can we have those produced?  All right.

9  BY MR. SCHOLL:

10 Q    Can you see the D-1 through D-5?  I don't see the

11 document itself.  Oh, here it comes.

12          THE COURT:  Okay.  Here we go.

13          MR. SCHOLL:  All right.

14          THE COURT:  Are we starting from 1?

15          MR. SCHOLL:  Right.  They're all on one.  All

16 these are on one.

17          THE COURT:  No, no, with the number 1, the -- D-1,

18 D-2.  Where you want to start?

19          MR. SCHOLL:  Well, it's D-1 through D-5.

20          THE COURT:  Okay.

21 BY MR. SCHOLL:

22 Q    Do those D-1 through D-5 reflect payments that you made

23 to EZ Cashing?

24 A    Yes, I make all those payments to EZ Cashing.

25 Q    And how many were there?  Do you remember?

 1  A    Not exactly how many, but there is a lot of payment.

 2  Q    All right.  And -- well, there's five exhibits.  Is it

 3  your testimony that you've made five payments?

 4  A    There's more.  More than --

 5  Q    Are we talking about --

 6          THE COURT:  Are we talking about --

 7          MR. SCHOLL:  -- '17.

 8          THE COURT:  Mr. Scholl, can you go through each

 9  one of them for me?  Just make my life easier.

10          MR. SCHOLL:  Okay.

11  BY MR. SCHOLL:

12  Q    We're just talking about the 2017 case, not the 2018

13  case.  We're going to get to that.  We put one exhibit here

14  that has five receipts on it.  Are those the receipts of the

15  payments that you made during the 2017 case to EZ Cashing?

16          MS. SMITH:  Judge would like you to mention each

17  of the five.

18          MR. SCHOLL:  Maybe go through each one.  Yes.

19          THE COURT:  That's what I said.

20          MR. SCHOLL:  All right.

21          THE COURT:  Start from the top.  All right.

22          MR. SCHOLL:  All right.

23  BY MR. SCHOLL:

24  Q    The top one looks to be dated 4 --

25          THE COURT:  Well, ask him.

```
 1            MR. SCHOLL:  4/2 --
 2            THE COURT:  No, no, ask him what's the first one.
 3            MR. SCHOLL:  All right.
 4  BY MR. SCHOLL:
 5  Q    Can you read it?  I mean, I've got a pretty good eye.
 6  A    Yeah.  The --
 7  Q    Can you read the payment date?
 8  A    Yeah, that's a -- it's in March of 2018.
 9  Q    And what's the amount?
10  A    700 and something.  Is that right?
11  Q    I think it's -- here, let me get it a little closer to
12  you.  720?
13  A    Yeah.  It looks like.
14  Q    Okay.
15  A    No.
16  Q    How about D-2?  What's the date and the amount of that?
17  A    That one --
18            THE COURT:  D-2, down at the -- highlight them for
19  him, John.  Down at the bottom here.  D-2 and then across
20  the bottom, because they're hard to see.
21            THE WITNESS:  I don't see.
22            THE COURT:  Right here -- oh.  Right here.  You
23  see what -- yeah, those.  Can you rub that line?
24            THE WITNESS:  720.
25            THE COURT:  That rule.  The date -- the dates too,
```

1   John.  Yeah.  Okay.  Because they're hard to see.

2           All right, Mr. Bravo.

3           MR. SCHOLL:  Date and the amount of --

4           THE COURT:  (Indiscernible.).

5           MR. SCHOLL:  -- payment.

6           THE COURT:  Okay.  Well, which one we talking

7   about now, Mr. Scholl?

8           MR. SCHOLL:  Two.

9           THE COURT:  D-2?  Let's go to D-2, John.

10          MR. SCHOLL:  Right here.

11          THE WITNESS:  Yeah.  Yeah, 720.

12          THE COURT:  Okay.  And what's the date of that?

13          THE WITNESS:  It's not too clear.  I believe it's

14  like 12 or 11/14.  I cannot read it.  It's not too clear.

15          THE COURT:  If I were to tell you it says 12 -- it

16  says 20 -- go back down, John.  D-2 says 2017-12-06.

17  (Indiscernible.).

18          MR. SCHOLL:  Well, he showed us the next one, so

19  all right.

20  BY MR. SCHOLL:

21  Q   Does that say 2017, she asked you, does that say 2017 --

22          THE COURT:  Would that ring a bell for you when it

23  was paid?

24          THE WITNESS:  It 720, no?

25  BY MR. SCHOLL:

Case 20-12962-amc Doc 20-133H  Filed 01/08/21   Entered 01/04/23 11:06:22   Desc Main
Document    Page 164 of 228
In Re: Gabriel Bravo

164

1  Q    Yeah, that's the amount.  You've already said that.

2  But what's the date?

3  A    The date, not too clear.

4        THE COURT:  Okay.  He can't read the date.  Okay.

5  Let's go to D-3.  What's D-3?

6  BY MR. SCHOLL:

7  Q    D-3.  The next one under here.  How much is that?

8  A    So it's this amount.  It's 720, right?

9  Q    You have to testify.

10  A    7 -- 720.

11  Q    Right.  What's the date?

12  A    I believe it said like November 1st of 2019.  '18.

13  Q    Are you looking at this?

14  A    No, I'm looking at here.

15        THE COURT:  You're looking at the date that says

16  November 1st, '17.  Okay.  I see what he's looking at.

17  Okay.

18        MR. SCHOLL:  He's looking at the written --

19  handwritten date below that.  No.

20        THE COURT:  Okay.

21  BY MR. SCHOLL:

22  Q    But what's the date of the money order?

23  A    Not too clear for me.

24        THE CLERK:  Judge, just so you know

25  (indiscernible).

 1              MR. SCHOLL:  My eyes aren't too good, but it looks

 2     like 2017-12-06.  That sound right.

 3              THE COURT:  What were you saying, John?  John was

 4     saying something.

 5              THE CLERK:  Ours is cut off, so I don't see that

 6     information next to --

 7              THE COURT:  Wait a minute.  Are we looking at D

 8     what?  What are we looking at, D-3?

 9              THE CLERK:  I'm assuming this would be below here.

10              THE COURT:  D-3 doesn't have -- D-3 just says

11     January 2018 mortgage.  Doesn't say the bottom.  Go up,

12     John.  That's it.  Doesn't have an amount or a date on D-3,

13     Mr. Scholl.

14              MR. SCHOLL:  All right.

15     BY MR. SCHOLL:

16     Q    But that was a payment you made; is that right?

17              THE COURT:  D-4.

18              THE WITNESS:  Yeah.

19              THE COURT:  Go to D-4.

20     BY MR. SCHOLL:

21     Q    How about D-4?

22              THE COURT:  That one at the top.

23              MR. SCHOLL:  We seem to have somehow skipped over

24     D-4.

25              THE COURT:  All the way at the top.

Case 20Case020-cv-04320bk37H FileDocument 03/31 Entered 01/04/03/21Page 06822of 265c Main
Document    Page 166 of 228
In Re: Gabriel Bravo

166

```
 1              MR. SCHOLL:  D-4 is at the top, right?  Okay.

 2   BY MR. SCHOLL:

 3   Q    How much is that one?

 4   A    720.

 5   Q    And can you tell us the date?  Again, the date that --

 6   the money order, not the date that you might have written on

 7   the top.

 8   A    No, it came out really bad.  This -- it looks like

 9   January -- February of --

10   Q    Right here.

11   A    -- 2019.  '18.

12   Q    Can you read it?

13   A    No.  No, I can't.

14   Q    You must need glasses.  (Indiscernible.)

15          THE COURT:  Okay.  Well, it says what it says.

16   Okay.

17          MR. SCHOLL:  It says what it says.  Okay.

18   BY MR. SCHOLL:

19   Q    Now -- all right.  Let's go to -- that was your

20   payments during the 2017 case; is that right?

21   A    Uh-huh.

22   Q    Did you ever get any refunds of any of those payments?

23   A    No.

24   Q    Did Mr. -- EZ Cash -- EZ Cashing or Mr. Weiser ever

25   tell you not to make the payments?
```

1   A    No, he didn't.

2   Q    Okay.  Did you continue to make payments when you

3   started the case in 2018?

4   A    Yeah.

5   Q    Okay.  So that brings us to D-6.

6          MR. SCHOLL:  D-6.  We need D-6.  Yes, that was it.

7   He'll get it.  All right.  Now that's the -- all right.

8   BY MR. SCHOLL:

9   Q    D-6 is a letter and then also a receipt down below.

10         THE COURT:  Well, ask him what -- Mr. Scholl, ask

11  Mr. Bravo, does he recognize D-6 and what are they.

12         MR. SCHOLL:  All right.

13  BY MR. SCHOLL:

14  Q    Mr. Bravo, does that look familiar to you?

15  A    The check?  Yeah, I sent it.

16  Q    Okay.  Well, let me ask you this, in the 2018 case, did

17  you have your lawyer send payments in the beginning?

18  A    I don't think so.  I don't remember.

19  Q    Okay.  Are those your money orders from October?

20  A    These not too clear.

21         MS. SMITH:  Okay.  The clerk will present the

22  document, David.

23         THE COURT:  All right.  So one -- John, can we

24  turn that other one around, or are we stuck with it the way

25  it is?  But let's deal with the thousand first.  Okay?

1              MR. SCHOLL:  All right.

2              THE COURT:  Okay.  What's the date of that?  Mr.

3    Bravo, do you see the date of that 1,000-money order?

4              THE WITNESS:  It's not too clear.  I don't -- I

5    cannot read.

6              MR. SCHOLL:  All right.  Okay.  She's trying to

7    make it bigger.  How about now?

8              THE WITNESS:  No, no, I can't.

9              MR. SCHOLL:  You can't read that?

10             THE COURT:  Well, if he can't, he can't.  It says

11   what it says.  Okay.

12             THE WITNESS:  Oh, 2018.  10.

13             THE COURT:  Okay.

14             THE WITNESS:  So it will be what?  First is the

15   year and then the month?

16             MR. SCHOLL:  First is the year, then the month,

17   then the day.  That's right.

18             THE WITNESS:  Then the date, right?

19   BY MR. SCHOLL:

20   Q    Is the year not 2018?

21   A    Yeah.

22   Q    Is the month not 10?

23   A    I can't see.

24             THE COURT:  All right.  He can't see, he can't

25   see.  But it's $1,000 money order.

```
 1  BY MR. SCHOLL:

 2  Q    All right.  But these are payments that you made; is

 3  that right?

 4  A    Yeah.

 5  Q    Okay.  Hold on.  Maybe if I get my --

 6           THE COURT:  And then, what's the other one?

 7           MR. SCHOLL:  -- documents out of the way here.

 8  There's a bunch of documents that's --

 9           THE COURT:  Uh-huh.

10           MR. SCHOLL:  -- in front of us (indiscernible) on

11  the chair here.

12           THE COURT:  Okay.

13           MR. SCHOLL:  We got them out of the way.

14  BY MR. SCHOLL:

15  Q    Okay.  But you did make a payment in the month after

16  the case was filed; is that right?

17  A    Yes.  Yes, I did.

18  Q    All right.  And that -- those are the receipts for that

19  payment; is that right?

20  A    Yeah.

21  Q    It's actually two payments of 1,288.  Okay.  Then we

22  see Exhibit D-7.  D-7 purports to be a letter, and it's

23  transmitted to EZ Cashing.  And it says, enclosed are two

24  money orders totaling 1,288.  Do you believe that in fact

25  that 1,288 that was sent to Mr. --
```

In Re: Gabriel Bravo

170

1   A     Yes, it was.

2   Q     -- EZ Cashing under the cover of that letter?

3   A     Yeah.

4   Q     And that was November stamped, right?

5   A     Yeah.

6   Q     Okay.  It also says further, it says, "Mr. Bravo

7   advises that he will be sending you the December payment

8   shortly."

9         Did you send the December payment?

10  A     Yes, I did.

11  Q     Okay.  All right.

12        Next exhibit.  This would be D-8.  All right.  That

13  letter is -- makes reference again to the payment in

14  December.  I don't think we have anything further, do we,

15  from December 2018?

16  A     We sent this payment too.

17  Q     Okay.  So there was a payment --

18             THE COURT:  Wait a minute.

19             MR. SCHOLL:  -- in December; is that right?

20             THE COURT:  Mr. Scholl, can I see D-7?

21             MS. SMITH:  I think there has been a duplicate.

22             THE COURT:  Yes, I think they are.

23             MR. SCHOLL:  But it defers to the December

24  payment.

25             THE COURT:  But this is the November --

 1              MR. SCHOLL:  You did make a December --

 2              THE COURT:  -- and we will be sending it.  So that

 3  was the November payment on a letter dated 12/5 for 1,288.

 4              MR. SCHOLL:  Fine.  Okay.

 5              THE COURT:  And D-8 seems to be -- which number

 6  are we at now?  D-8, John?

 7              MR. SCHOLL:  Yes.

 8              THE COURT:  Yes, that.

 9              MR. SCHOLL:  So I was just asking, did you make

10  the payment shortly thereafter, which he said would be made

11  in that letter.

12              THE COURT:  Oh, okay.  So -- okay.  So that's a

13  12/5 letter again.  Okay.  This letter.

14              MR. SCHOLL:  (Indiscernible.)

15              THE COURT:  Okay.  Now what's next?

16  BY MR. SCHOLL:

17  Q    Did you make the December 21 --

18  A    Yes, I did.

19  Q    Okay.  I don't know if we have another receipt from

20  that one, so let's go on to the next one, which would be

21  D-9.

22              THE COURT:  Okay.

23  BY MR. SCHOLL:

24  Q    All right.  And D-9, was that another payment that you

25  made?  Can you tell us again -- I don't know if you can --

Case 20-12626-cv-04020-KBH   Document   Filed 01/03/21   Entered 01/04/23   Page 172 of 265 Main
Document     Page 172 of 228
In Re: Gabriel Bravo

172

 1  can you see the amounts on these payments?

 2  A    Yeah, $1,000.

 3  Q    How about the other one?

 4  A    The other one is --

 5  Q    Do you see the amount?

 6  A    Oh, you know -- you know why?  Because I sent two

 7  different checks.  The payment, it was for $1,288, so I sent

 8  two --

 9  Q    So you made two payments.

10  A    Yeah.

11  Q    Well, that's what you said --

12  A    Two checks.  I sent two checks.

13  Q    -- I think we're going to see that on every month.  But

14  okay.  But you said you sent --

15          MS. SMITH:  It's 1,000.

16  BY MR. SCHOLL:

17  Q    You did send two --

18  A    Yes.

19  Q    -- in January; is that correct?

20  A    I sent two checks on --

21  Q    For January.

22  A    -- the -- in December.

23  Q    These are actually dated February, but they were the

24  January payment; is that right?

25  A    You remember I send it -- I used to send a payment for

Case 2Ca1e9262dnu-0x802o-4837H Dedun1e0/8/431 Entered01/04/03/23Pa3Ge0632ofo265sc Main
Document    Page 173 of 228
In Re: Gabriel Bravo

173

1    1,288.

2    Q    Yes.

3    A    So what happened --

4    Q    That's what we're going through here.

5    A    A the post office --

6              THE COURT:  Mr. --

7              THE WITNESS:  -- I cannot buy more than $1,000, so

8    I used -- I bought it two checks.

9              MR. SCHOLL:  Okay.

10             THE WITNESS:  One for the thousand and one for

11   288.

12             MR. SCHOLL:  All right.

13             THE WITNESS:  But that's what I show here, 1,000,

14   then 288.

15   BY MR. SCHOLL:

16   Q    All right.  And the dates of those payments -- I don't

17   know if you can see any of these dates because apparently

18   you can't see it.

19   A    Well, it looks like --

20   Q    It looks to me like it says 20091 --

21             THE COURT:  So how many are in D -- how many

22   payments are in D-9?

23             MR. SCHOLL:  How many so far?  Well, we have

24   October, November, December.

25             THE COURT:  No, no, no.  D-9.  D-9 is two check --

In Re: Gabriel Bravo

174

1  to payments, right, one for 1,000 and one for 288.

2        MR. SCHOLL:  For 288.

3        THE COURT:  Okay.  All right.

4        MR. SCHOLL:  In other words, he paid 1,288.

5        THE COURT:  Okay.

6        MR. SCHOLL:  All right.  Now we can go to the --

7  BY MR. SCHOLL:

8  Q    And you did pay 1,288 --

9  A    Yeah.

10 Q    -- in January.  Okay.

11 A    I'm sorry.  If you see here --

12 Q    Next one --

13 A    -- I wrote it here, payment of January 2000

14 (indiscernible).

15 Q    I see you wrote that, but let's look at the receipts

16 instead.

17     Did you send 20 -- did you send payments for February?

18 A    That (indiscernible) will be for --

19 Q    How much is the amount?  Can you see the amount?

20 A    1,288.

21 Q    Okay.

22        THE COURT:  Where are we at?  Are we -- this is

23 D-8, isn't it?  Or is this D-9?  That's D-9, which we just

24 went over, right?

25        MS. SMITH:  You have to advance it to D-10.  We

1   should be on D-10.

2          THE COURT:  You want to go to D-10.

3          MR. SCHOLL:  No, I think we finished with 9.  That

4   was another payment.  Okay.

5          THE COURT:  All right.  Let's go to D-10.

6          MR. SCHOLL:  D-10.

7          THE COURT:  Uh-huh.

8          MR. SCHOLL:  All right.

9   BY MR. SCHOLL:

10  Q    How much in the amount were the D-10 payments?

11  A    Let me see.  This is for 1,000.

12  Q    And the other one?

13  A    The other one, yeah, 288.

14  Q    All right.  So that was made for February; is that

15  right?

16  A    Yes.  For -- it's January.

17         THE COURT:  That's January.

18         THE WITNESS:  (Indiscernible.)

19         THE COURT:  That's a repeat of D-9.

20         MR. KRIK:  Correct.

21         MR. SCHOLL:  All right.

22         MS. SMITH:  All right.  So --

23         MR. SCHOLL:  Okay.

24         THE COURT:  So this is a repeat of D-9.  All

25  right.  Let's go to D-11.

1   BY MR. SCHOLL:

2   Q     All right.  D-11.  Now you're going to look at D-11.

3   Can you see the amounts of the D-11 payments?

4   A     288, this one.

5   Q     Yeah.  I think there's one lower here.  Hold on.  Hold

6   it.  It wasn't pulled up yet.  Oh, there it is.

7   A     And this one here, 1,000.

8   Q     And that was for --

9   A     February.

10  Q     Okay.  Because you have here on the side, you have

11  here, payment for February.

12  A     Yeah.

13  Q     But it was actually made in the beginning of March.  Is

14  that right?

15  A     Probably.  Yeah.

16  Q     Okay.

17  A     I don't know.

18  Q     All right.  Next -- next receipt would be D-12.  D-12.

19  Okay.  What are the amounts of the payments in D-12?

20  A     288.

21  Q     And then, is there another payment?

22  A     1,000.

23  Q     Okay.  And that was made when?

24  A     Let's see.  For -- in (indiscernible) -- it's not too

25  clear here.

In Re: Gabriel Bravo

```
 1   Q    All right.  Well --

 2              MS. SMITH:  It is, right here.

 3              MR. SCHOLL:  You can't read that?

 4              THE WITNESS:  No.

 5              MR. SCHOLL:  All right.  Well, (indiscernible).  I

 6   submit to you this is April -- April payments, Your Honor.

 7              THE COURT:  There's a date on there.  Okay.  Next.

 8   BY MR. SCHOLL:

 9   Q    Next would be D-12?  Am I at 12?

10              THE COURT:  13.

11              MR. SCHOLL:  13.  Sorry.  Okay.  D-13.

12   BY MR. SCHOLL:

13   Q    How much are those payments?

14   A    288.

15   Q    All right.  There's another one below.

16   A    288.

17   Q    Hold on.  We don't have the other payment yet.  There.

18   A    1,000.

19   Q    So you paid 1,288 there.

20   A    Yeah.  Yeah.

21   Q    Is that right?

22   A    Yeah.

23   Q    Okay.

24   A    That's for the month of April.

25   Q    Okay.  All right.  Go to D-14.  D-14, how much are the
```

Case 20-12628-bdc-04320-13H Filed 01/03/21 Entered 01/04/03/21 13:06:22 of 265 Main
Document    Page 178 of 228
In Re: Gabriel Bravo

178

 1  payments there?  Hold on, we don't have them up yet.  Here

 2  we go.

 3  A    288.

 4  Q    And this lower one?  Hold on just a sec.  How much is

 5  that?

 6  A    1,000.

 7  Q    All right.  And that's -- is in what month?  Can you

 8  see when the payment for that was made?

 9  A    June.  That's part for the payment of June.

10  Q    Okay.  All right.  Can we go to the next number, which

11  I believe is 15?  No, we're done with D-10.

12          THE COURT:  Are we in 15, John?

13          MR. SCHOLL:  Yeah, I don't think we did this one

14  yet, 15.  I'm pretty sure we did not.

15          THE COURT:  Okay.

16          MR. SCHOLL:  I think the last -- 14.

17  BY MR. SCHOLL:

18  Q    14 is -- what amounts are the payments in 2000 -- in

19  D-14?

20  A    That's 288.

21  Q    Yeah.

22  A    288.

23  Q    (Indiscernible) coming down.

24  A    And 1,000.

25  Q    And that was for what month?

```
 1   A     July.

 2   Q     July.  Okay.  All right.

 3         THE COURT:  Where was the June payment, because

 4   I'm lost?  May.  That was July payment?  It was made July

 5   30th, 2019.  And I have January, February, March, April,

 6   May.  D-14.  Can we go back to D-14?

 7         MR. SCHOLL:  Yes.

 8         THE COURT:  D-14.  Where's that at, John?  That

 9   was for what month?  That was for June?

10         THE WITNESS:  For June.

11         MR. SCHOLL:  Yeah, that's for June.

12         THE COURT:  All right.  Well, where is --

13         MR. SCHOLL:  June 21st, right?  And it's again,

14   two payments, 1,000, 288?

15         THE WITNESS:  Yeah, two -- 1,288.

16   BY MR. SCHOLL:

17   Q     All right.  So you paid that for June?

18   A     Yeah.

19   Q     And we already did July now, so I guess we should --

20   A     Yeah.

21   Q     -- go forward to the next --

22         THE COURT:  John -- hold on.  John, can you go to

23   13 for a quick minute?  Yeah, okay.  It was April.  All

24   right.  I'm not losing my mind.  Okay.

25         MR. SCHOLL:  Well, he writes April on it, but it
```

Case 20-12262-mdc   Doc 20-1337   Filed 01/03/21   Entered 01/03/21 13:06:52   Desc Main
Document    Page 180 of 228
In Re: Gabriel Bravo

180

 1  was actually made, apparently, in May.  You know, because --

 2          THE COURT:  I know, but I'm tracking all of them.

 3  It says --

 4          MR. SCHOLL:  Yeah.

 5          THE COURT:  -- April 2019 payment.  I don't see

 6  the June one.  Okay.  Well, June.  I don't see May, but

 7  maybe you have an answer.  All right.  Let's go.

 8  BY MR. SCHOLL:

 9  Q    All right.  Let's go to the next one.

10  A    288.

11  Q    Yeah, what is it --

12          THE COURT:  D-16.

13          MR. SCHOLL:  Yeah, we're done with that one.

14  Okay.  Next -- next one.

15          THE COURT:  D-16, John.

16          MR. SCHOLL:  D-16.  All right.

17  BY MR. SCHOLL:

18  Q    You see the dates and the amounts on those?

19  A    1,000.

20  Q    Yeah.  Can you see that date?  I don't know if you can

21  see any --

22  A    (Indiscernible).

23  Q    -- of the dates, but how about the amounts?

24  A    288.

25  Q    Okay.  So those are two.  And those --

 1  A    Yeah.

 2  Q    -- that, I think purport to be the August payments.

 3  Okay?

 4  A    I wrote it here on the side.

 5  Q    All right.  Next would be the 18th.

 6         THE COURT:  D-17?

 7         MR. SCHOLL:  D-17.  Yep.  Oh, you're right.  D-17.

 8  BY MR. SCHOLL:

 9  Q    Here's D-17, Mr. Bravo.  What are the amounts of those

10  payments?

11  A    1,000.  288.

12  Q    Okay.  That was made for -- that one.  I think we're in

13  --

14  A    I wrote it on the --

15  Q    -- August?

16         THE COURT:  That's September payment, it says.

17  September payment.

18         THE WITNESS:  Payment in September, yeah.

19  September.

20         MR. SCHOLL:  Okay.

21         THE COURT:  That's what it says.

22         THE WITNESS:  Yeah.

23         MR. SCHOLL:  All right.

24  BY MR. SCHOLL:

25  Q    But again, it's 1,000 and 288, right?

1    A    Yeah.

2    Q    Okay.  Now --

3    A    I send the two checks.  One check for 1,000, and one

4    check for 288.

5    Q    Right.  Right.  Well, you did that every month.  Okay.

6              THE COURT:  Okay.  D-18.

7              MR. SCHOLL:  Okay.  D-18.

8              THE COURT:  Or D-19?

9    BY MR. SCHOLL:

10   Q    Can you see the amount of the payment?

11   A    288.

12             THE COURT:  Well D -- wait a minute.  Didn't we

13   just do two -- D-18?  Am I missing something?  Nope.  Never

14   mind.  D-18.  Hold on, counsel.  I'm on another page.  Okay.

15   Okay.

16   BY MR. SCHOLL:

17   Q    Yep.

18   A    And 1,000.

19   Q    All right.  And that's for October, right?

20   A    (Indiscernible.)

21   Q    No, that's not going to help you.

22   A    I wrote it on the side.

23   Q    You didn't write it on all of them.

24   A    Yeah.  What it says here?  October.  Yeah, October.

25   Q    All right.  That's October's payment.  All right.

Case 20-13262-adv-04320-137 Filed 01/03/23  Entered 01/04/23 Page 06 of 265c Main
Document    Page 183 of 228
In Re: Gabriel Bravo

183

```
 1  Next, we're at 18, I believe.

 2          THE COURT:  D-18.  We just did D-18.

 3          MR. SCHOLL:  Oh, okay.  D-19.

 4          MS. SMITH:  Sorry.

 5          MR. SCHOLL:  D-19.

 6          THE COURT:  Now we want D-19.  And counsel, it's

 7  past 5:00, so we've got to figure out how much longer are we

 8  going to go.  Where's my -- let me -- uh-oh.

 9          MR. SCHOLL:  Well, we only have about six or seven

10  more payments.

11          THE COURT:  All right.  I'm just saying.  Go

12  ahead.

13          MR. SCHOLL:  If that's helpful.  All right.

14          THE COURT:  That is --

15          MS. SMITH:  There's 27.

16          THE COURT:  Is that --

17          THE WITNESS:  288.

18  BY MR. SCHOLL:

19  Q    And then the other one?

20  A    1,000.

21  Q    And that's for November, right?

22  A    I think so.  Hold on.

23  Q    Let's see 19.

24          THE COURT:  Wait a minute.

25          MR. SCHOLL:  Yeah, that number -- the amount you
```

Case 20-12629-dc-04320-137H Filed 01/03/21 Entered 01/04/23 17:13:00 692 of 265c Main
Document    Page 184 of 228
In Re: Gabriel Bravo

184

 1  put over there doesn't make any difference.  It's a question

 2  of when did you make the payment.

 3           MS. SMITH:  The judge is following that as well.

 4           THE COURT:  I'm following.  We good.

 5           MR. SCHOLL:  In fact, he wrote 2017 on that.  I

 6  don't know what --

 7           THE COURT:  I know.

 8           MR. SCHOLL:  -- (indiscernible) 17 on it.

 9           THE COURT:  All right.

10           MR. SCHOLL:  19.

11           THE COURT:  All right.  Now we -- is there a D-20?

12           MR. SCHOLL:  All right.  D-20.

13           MS. SMITH:  D-20.

14           MR. SCHOLL:  All right.

15           THE WITNESS:  1,000.

16  BY MR. SCHOLL:

17  Q    And the other one?  Hold it.  He has to bring it down.

18  A    288.

19  Q    And that was in December.

20  A    December.

21  Q    Is that right?  2019.  All right.  I don't remember

22  what number we're at.   20?

23           THE COURT:  Yes, we're at 20.

24           MR. SCHOLL:  All right.  Number 20.  We'd like to

25  see 20.  Well, or 21.

In Re: Gabriel Bravo

```
 1              THE COURT:  That's 20.

 2              MR. SCHOLL:  No, that was 20.

 3              THE COURT:  21.

 4              MR. SCHOLL:  This is 21.  Okay.

 5              THE COURT:  Uh-huh.

 6  BY MR. SCHOLL:

 7  Q    How much is that?

 8  A    1,000.

 9  Q    All right.  They don't seem to (indiscernible).

10  A    288.

11  Q    Yeah.  Okay.  All right.  So that's for January.

12  A    Yeah.

13  Q    All right.

14  A    Of 2020.

15  Q    Yeah.  Or -- you're almost at the end of the 20 -- the

16  1,288 payments.

17              MS. SMITH: (Indiscernible.)

18              MR. SCHOLL:  All right.  Next?

19              THE COURT:  So that was for January, that payment?

20  For 2020.

21              MR. SCHOLL:  All right.  We're now at February.

22              MS. SMITH:  D-22.

23  BY MR. SCHOLL:

24  Q    D-22, February 2020.

25  A    1,000.
```

1  Q    You see that one?

2  A    288.

3  Q    Right.  Okay.  And that's February?

4  A    Yeah, of 2020.

5  Q    All right.  Now, I think after February, you didn't

6  make any more 1,288 payments; am I right?

7  A    Not too many.

8  Q    Did something happen in March of 2020?

9  A    The pandemic probably.

10  Q    Right.  I believe that's correct.

11         MS. SMITH:  D-24.

12  BY MR. SCHOLL:

13  Q    D-24.  But you did make some payment, right?

14  A    Yeah.

15  Q    All right.  And how much is that payment?

16         THE COURT:  Wait a minute.  What happened to D --

17  did I miss D-23?  I must have.  I clearly did.

18         MR. SCHOLL:  You probably did, yeah.

19         MS. SMITH:  Yes, ma'am.  We missed it.  Sorry.

20         THE CLERK:  I think it might be a duplicate of 22,

21  Judge.

22         MR. SCHOLL:  Right.  So that's that --

23         THE COURT:  I have 22, February 23rd, 2020.  Okay.

24         MR. SCHOLL:  Okay.

25         THE COURT:  Do we have a D-23?  Or is D-20 --

Case 20-19262-EPK Doc 137 Filed 01/03/21 Entered 01/04/23 23:13:07 Desc Main
Document    Page 187 of 228
In Re: Gabriel Bravo

187

 1              MR. SCHOLL:  All right.

 2                THE COURT:  Wait.  Is D-23 February?

 3                THE CLERK:  I think it's a duplicate, Judge.  It's

 4   the same thing.

 5                THE COURT:  Okay.  All right.  Never mind.

 6                MR. SCHOLL:  Well, you can tell by looking at the

 7   number of the money orders.  Some -- if they -- if they're

 8   the same, it's obviously the same money order.  The number

 9   is the same.

10                THE COURT:  Mr. Scholl, I would appreciate it if

11   you didn't give me duplicates.  You're confusing me here,

12   and you --

13                MR. SCHOLL:  Well, we tried not to do it.  We --

14                THE COURT:  I'm easily confused.  Okay.  Now, so

15   the last payment is D-22 and 23, which are the same.  Okay.

16                Now, what's after 23?

17   BY MR. SCHOLL:

18   Q    Okay.  Now, 23.  What's that one?

19                MS. SMITH:  24, John?  That's it?

20                THE COURT:  Wait.  (Indiscernible.)

21                MR. SCHOLL:  We don't have a 24.

22                THE COURT:  Okay.  You got any after that?

23                MR. SCHOLL:  Yes.

24                MS. SMITH:  Yes.  Through 27.

25                MR. SCHOLL:  Not too many more.

| 1  | THE COURT:  Oh, it's fine.  I'm just trying to |
| 2  | make sure.  Where's D-27? |
| 3  | MR. SCHOLL:  Yeah.  Well, no, by this time, I'm |
| 4  | sure you want to know whether we're going to get to the end. |
| 5  | By MR. SCHOLL: |
| 6  | Q    Here we go.  D-25.  Mr. Bravo, did you make payments in |
| 7  | May of 2020? |
| 8  | A    Yeah. |
| 9  | Q    How much were those payments? |
| 10 | A    One check for 1,000. |
| 11 | Q    Right. |
| 12 | A    And the other one for -- it is 140. |
| 13 | Q    40. |
| 14 | A    Oh, 40. |
| 15 | MS. SMITH:  $40. |
| 16 | THE WITNESS:  Okay. |
| 17 | BY MR. SCHOLL: |
| 18 | Q    So in -- you only made 1,040 in May; is that right? |
| 19 | A    Probably, yes. |
| 20 | Q    Okay.  Well, that was after the pandemic.  You were |
| 21 | struggling at that point. |
| 22 | All right.  So let's see the next one.  D-26.  Dated |
| 23 | July 16th. |
| 24 | A    40. |
| 25 | Q    What's that one? |

Case 20-19262-bkc-JKH-04320-1337H Document 01/08/43 Entered 01/04/03/2 Page 0302 of 265c Main
Document    Page 189 of 228
In Re: Gabriel Bravo

189

1  A    40.  40.

2  Q    All right.  Okay.

3  A    1,000.

4  Q    Okay.  And that was in July, right?

5  A    Yeah.

6  Q    Okay.  Now, I don't know if we have any more, do we?

7         MS. SMITH:  27.

8         MR. SCHOLL:  27.

9         MS. SMITH:  That's the final one (indiscernible)

10  that we have.

11        MR. SCHOLL:  Yep.  I'm told that's the final one

12  by my --

13        THE COURT:  It's okay.

14        MR. SCHOLL:  -- assistant.

15  BY MR. SCHOLL:

16  Q    And that's for how much, Mr. Bravo?

17  A    288.

18  Q    Well, is there a later one?

19  A    And then 1,000.

20  Q    All right.  So you made that one for 1,288, huh?

21  A    Yeah.

22  Q    Not quite sure why, but okay.

23        THE COURT:  And that was dated -- wait a minute.

24  That was dated -- that was in October of '17.  Okay.  That's

25  the date.  We're still in 20 -- wait.  We're in 2019.  Did

 1  we go backwards?

 2        MR. SCHOLL:  That doesn't seem to jive with what

 3  we have there.

 4        THE COURT:  Right, because we're in 2020 right

 5  now.  So that would be --

 6        MR. SCHOLL:  No, it's --

 7        THE COURT:  -- October 17, 2019.  That is D-18.

 8        MR. SCHOLL:  Yeah, and I'd have to say, it doesn't

 9  look like that one is for that period.

10        THE COURT:  No, it's for D-18.  I have October 17,

11  2019, 1,288.

12        MR. SCHOLL:  Well, we're already -- he already had

13  that one and (indiscernible).

14        THE COURT:  Right.  So I don't know what that's

15  supposed to be.  So 2017 --

16        MR. SCHOLL:  All right.

17        THE COURT:  -- and '18 are the same.  Okay.

18        MR. SCHOLL:  Right.  I don't know if we have any

19  more.

20        THE COURT:  All right.

21        MR. SCHOLL:  (Indiscernible.)

22        THE COURT:  All right.

23        MR. SCHOLL:  I think the later things are just the

24  plans.

25        THE COURT:  Okay.

1          MR. SCHOLL:  And they're relevant to the -- in the

2    sales agreement, the final sales agreement.

3          MS. SMITH:  Those are all of the receipts we have.

4          MR. SCHOLL:  That's all the receipts.

5    BY MR. SCHOLL:

6    Q    So that's all the receipts, right, Mr. Bravo?

7    A    Yeah.

8    Q    Now, let me ask you.  You made those payments 1,288,

9    for many of the months.  I'm not sure --

10   A    Yeah.

11   Q    -- it was for every month.  There may have been one or

12   two that were duplicates, but did you ever -- were you ever

13   told not to pay them?

14   A    No.

15   Q    Did you ever get any of the money back?

16   A    No.

17   Q    Did Mr. Weiser or EZ Pay ever say that you weren't

18   going to get any credit for those payments?

19   A    No, they never told me.

20   Q    Did you assume that you would get credit for it?

21   A    Of course.

22   Q    Okay.  Have you gotten any credit?

23   A    No.

24   Q    All right.

25         MR. SCHOLL:  I don't know that I have any further

Case 20-13926-cv-0432-KBH  Document 14  Filed 01/08/21  Entered 01/04/23 21:13:03  Desc Main
Document    Page 192 of 228
In Re: Gabriel Bravo

192

1  questions for Mr. Bravo.

2  THE COURT:  Cross-examine?

3  MR. SCHOLL:  Okay.

4  MR. KRIK:  Yes, Your Honor.

5  THE COURT:  Uh-huh.

6  MR. KRIK:  Thank you.

7  CROSS-EXAMINATION

8  BY MR. KRIK:

9  Q   Mr. Bravo, I'd like to introduce you to the Document C-

10 8 if I would.  Mr. Bravo, while that's being pulled up, you

11 would agree that you are -- outside of this bankruptcy, you

12 are the defendant in the state court foreclosure action?

13 A   Say that again, please?

14 MR. KRIK:  I'm sorry.  I can't see Mr. Bravo as

15 well on the screen.  Is there any way to get him on the

16 screen?

17 MR. SCHOLL:  All I can do is move a little bit.

18 MR. KRIK:  Thank you.  Thank you.

19 BY MR. KRIK:

20 Q   Mr. Bravo, do you agree that you are involved in a

21 state court foreclosure action?

22 A   When?

23 Q   Do you -- well, let me rephrase.  Do you agree that EZ

24 Cashing is trying to foreclose on the property?

25 A   I think so.  Who else?

Case 20-19262-nc-04320-KBH   Document 11-03/43   Eitered 01/04/03/23 Page 0208 of 265c Main
Document    Page 193 of 228
In Re: Gabriel Bravo

193

1    Q    Do you agree that you consented to a judgment in 2016?

2    A    I don't know.

3    Q    You're not sure if you agreed to a judgment in the

4    foreclosure case in the past?

5            MR. SCHOLL:  That's what he said.

6            MR. KRIK:  Oh, I'm sorry.  I thought he said he

7    wasn't sure.  Okay.  All right.

8            MR. SCHOLL:  He said he wasn't.

9            MR. KRIK:  I'm sorry?

10           MR. SCHOLL:  He wasn't sure.

11           MR. KRIK:  Oh, okay.  All right.

12   BY MR. KRIK:

13   Q    What you have -- what is marked as Exhibit C-8, have

14   you ever seen plaintiff's motion to reassess damages before?

15   A    Well --

16   Q    I'm sorry, I didn't -- is that no?

17   A    No, I don't know.  You --

18   Q    So you -- all right.  You don't know if you've seen

19   plaintiff's motion to reassess damages before.

20       Did you file an answer in response to this motion to

21   reassess damages?

22   A    Well, I don't -- I don't remember.

23   Q    Okay.  Can I go to, please, Paragraph 11 of this

24   document?

25       Do you understand that the plaintiff sought to amend

 1  its judgment to add certain amounts to its judgment and

 2  claim?  Is that -- do you understand that?

 3  A    No.

 4  Q    No.  Okay.  Do you disagree with the amount that the

 5  plaintiff was seeking to receive?  Do you disagree with the

 6  amount that EZ Cashing wants to get?

 7  A    I think so.

 8  Q    Okay.  All right.

 9        MR. KRIK:  Can I introduce Exhibit C-9?

10      (Pause)

11        MR. KRIK:  Thank you.  Can we go to the first

12  page?

13  BY MR. KRIK:

14  Q    Mr. Bravo, do you recognize -- do you recognize this

15  document as your answer to EZ Cashing's motion to reassess

16  damages?

17  A    Well, not -- you know, my English is poor.  How can you

18  expect to, you know, read something like this?

19  Q    Well, you did file this pleading on your behalf, is

20  that correct?  This was filed on your behalf?

21  A    (Indiscernible) yes.

22  Q    Okay.

23        MR. SCHOLL:  Answer the best you can, Mr. Bravo.

24  I don't want you to guess or make anything up, though.

25          THE WITNESS:  Uh-huh.  Uh-huh.

 1  BY MR. KRIK:

 2  Q    Okay.  So are you agreeing that this document was filed

 3  on your behalf?

 4           MS. SMITH:  If you know.

 5           THE WITNESS: (Indiscernible.)

 6           MR. KRIK:  I'm sorry.  Is he being told what to

 7  say?  I don't understand if he's being told --

 8           THE COURT:  Do you know --

 9           MS. SMITH: (Indiscernible) I said --

10           THE COURT:  -- do you know --

11           MS. SMITH:  I'm sorry.  I'm sorry.  I said, "if

12  you know," and I should not have said that.  If you know, I

13  said.

14           THE COURT:  Okay.

15           MS. SMITH:  Please pardon me.

16           THE COURT:  All right.  Mr. Bravo, do you

17  recognize this or do you know anything about this?

18           THE WITNESS:  Well, I don't remember.  You know,

19  this (indiscernible).

20           THE COURT:  Okay.  So you -- okay.  All right.

21  BY MR. KRIK:

22  Q    Okay.  Can we go to Paragraph 11 of this?  Mr. Bravo,

23  do you recognize that in Paragraph 11, you indicated that

24  you believed that there were numerous payments that you were

25  not credited for?

In Re: Gabriel Bravo

1   A    Again, I'm sorry.  I didn't -- I cannot read correct

2   English.  How could you expect me to read something like

3   this?

4   Q    Well, my question is did --

5           THE COURT:  So just to -- so, Mr. -- so let me

6   (indiscernible).  Mr. -- do you know this was filed?  Have

7   you seen this before?

8           THE WITNESS:  I don't remember.

9           THE COURT:  Okay.

10          MR. KRIK:  Okay.

11          THE COURT:  All right.

12  BY MR. KRIK:

13  Q    But you do agree that you just -- that you are

14  disputing the amount that EZ Cashing is asking for?

15  A    Yes, I do because they are not crediting my payments.

16  Q    Okay.  And the document on the screen right now, the

17  last sentence of Paragraph 11 -- and I -- for the sake -- if

18  the Court will allow, I will read it for you.

19      If you can agree, does it say that defendants have made

20  numerous payments to the plaintiff which are not credited?

21  A    Well, I make a lot of payments and it's never been

22  credited.

23  Q    Okay.  Did you attach any of the exhibits that you just

24  went through, any of the receipts to your response in state

25  court?

Case 20-12962-amc  Doc 433  Filed 01/04/23  Entered 01/04/23 13:08:22  Desc Main
Document    Page 197 of 228
In Re: Gabriel Bravo

197

1  A    I don't remember.

2  Q    Is there any reference to those documents?

3  A    I don't remember.

4  Q    Okay.  Do you see a reference to any of those documents

5  in this paragraph?

6  A    I don't -- I don't remember.

7  Q    Okay.  I'll give you a moment.  I'd like you to take a

8  look through this document, the Paragraphs 1 through --

9  until the end.  And tell me if you see any evidence of you

10 attaching or providing the state court with documents or

11 evidence supporting your claim.  If you could take a moment

12 and let me know if there's any evidence or any indication

13 that you provided the state court with information about

14 these alleged payments?

15 A    You know, I don't understand very clear your question,

16 sir.

17 Q    I'm -- well, I'd like you to look and tell me whether

18 or not you gave the state court documentation to support

19 your claims that payments were not credited.

20 A    I don't remember.

21 Q    Okay.

22 A    That's all I can tell you is; I don't remember.

23 Q    Well, would you agree that the document marked as C-9

24 is a complete copy of your response to the motion to

25 reassess damages?

1  A    That's from -- that's from 2017.  I don't remember.

2  That was while ago.

3  Q    No, is from 2021.  You're being shown the document in

4  its entirety, and I'm asking you if this -- if there was

5  anything else that you left off of this document.

6  A    I don't know.

7  Q    (Indiscernible.)

8          THE COURT:  He doesn't know.

9          MR. KRIK:  Okay.  Okay.  Can we go back to the

10 verification on this -- on that, if you can go down a little

11 bit?  Okay.

12 BY MR. KRIK:

13 Q    Do you agree whether or not your client -- I mean, I'm

14 sorry, your attorney communicated with you about this --

15 about this filing?

16 A    Say that again, please?

17 Q    Is it your testimony that you did not review your

18 motion -- your answer to the motion to reassess damages?

19         MR. KRIK:  Your Honor, if there's a language

20 barrier, I'm surprised we don't have a --

21         THE COURT:  Well, counsel, he did not say he did

22 not review it.  He said he didn't remember.  That's a big

23 difference between not remembering and not reviewing.

24 You've never asked him he didn't review it.  He said he

25 don't remember.  Now if you want to ask him, did you review

 1  it, go ahead.

 2          MR. KRIK:  Yes.  Mr. Bravo --

 3          THE COURT:  Mr. Scholl, are you listening?  I

 4  shouldn't have to be saying this.

 5  BY MR. KRIK:

 6  Q    Mr. Bravo, did you review your answer to reassess to

 7  this motion before you filed that --

 8  A    I don't remember.  I don't remember.

 9  Q    Okay.  All right.

10          MR. KRIK:  Can we go to the new matter, please?

11  That's a page or two above.  Right there is good.  Thank

12  you.

13  BY MR. KRIK:

14  Q    Mr. Bravo, Paragraph 18 states that you sent payments

15  to the creditor from October of 2018 through March of 2020,

16  that you were not given credit for.  Is that your assertion?

17  Did you make that claim?

18  A    Well, we sent the payments, but EZ Cashing didn't ever

19  credit.

20  Q    Okay.  That is the issue that you raised in this

21  paragraph?

22  A    Well, I cannot read English.  I told you already.  I'm

23  sorry.

24  Q    Okay.  Do you -- how did you -- in the course of the

25  state court case or the bankruptcies, how are you

```
 1   understanding the pleadings filed on your behalf?  How do

 2   you understand what you're filing?

 3   A    Well, I tried to -- to understand it most I can.

 4   Q    Are they being read to you?

 5   A    In court?

 6   Q    Before you file, are your -- was this read to you?

 7   A    (Indiscernible.)

 8   Q    Okay.  All right.  Is it -- do you -- and you've

 9   already -- okay.  Did you at any time -- are you familiar

10   with -- go with C-10, please.  Can we move to C-10?

11              MR. SCHOLL:  Familiar with what?

12              MS. SMITH:  C-10.

13              THE COURT:  C-10.

14   BY MR. KRIK:

15   Q    Mr. Bravo, have you ever seen a copy of this document?

16   A    I don't remember seeing that.

17   Q    Okay.  Do you know if your -- if you or anyone on your

18   behalf ever filed a motion to reconsider this order?

19   A    I don't remember.  I don't remember.

20   Q    Okay.  Do you know whether or not any -- you or anyone

21   on your behalf filed a motion for clarification of this

22   order?

23   A    I don't remember.

24   Q    And do you know whether you or anyone on your behalf

25   ever filed an appeal of this order?
```

In Re: Gabriel Bravo                                    201

1   A    I don't remember.  That was in 2015.

2   Q    No, sir, this is 2021.  Does that change your answer?

3   A    Every time I looked at -- I was looking at here, where

4   it says (indiscernible).  See, that's why I told you, my

5   English is too poor.

6   Q    Okay.  Let me back up.  I'm going to represent to you

7   that the document in front of you was dated June 2nd of

8   2021.  Do you see that date?  Handwritten.  June 2nd.

9   A    Yeah.

10   Q    Yes.  Okay.  Knowing that this document says 2021, do

11   you still answer the same, that you do not remember whether

12   or not your attorney appealed this order for anyone on your

13   behalf?

14   A    Well, I don't know what this is.

15   Q    Okay.  Well, I need to preserve a record here, so I'm

16   just trying to understand.  Knowing that the document -- if

17   you assumed that this document is from 2021, do you still

18   believe that no one, you or anyone else, no one filed an

19   appeal for this order; is that correct?

20   A    I'm sorry, but I will -- I will prefer to ask more

21   questions to Mr. (indiscernible).

22          THE COURT:  No, you can't ask anybody any

23   question.  If you don't remember or you don't know, just

24   say, I don't know, I don't remember, or I don't recall.

25          THE WITNESS:  Okay.

```
 1              THE COURT:  Or I don't know.

 2              THE WITNESS:  All right.

 3              THE COURT:  There's nothing -- if you say you

 4   don't know, you don't know.  I mean, no shame in saying you

 5   don't know.

 6              THE WITNESS:  Okay.  Okay.

 7   BY MR. KRIK:

 8   Q    Can you just state for the record whether you know or

 9   not?

10   A    I don't know.

11   Q    Okay.  All right.

12        And 2021 order, no one reconsidered it, correct?

13   A    I don't know.

14   Q    And 2021 order, no one asked for clarification; is that

15   correct?

16   A    I don't know.

17   Q    Okay.

18              MR. KRIK:  That is all the questions I have for

19   the witness.

20              THE COURT:  All right.

21              Any redirect, Mr. Scholl?

22              MR. SCHOLL:  Just a couple things.

23                      REDIRECT EXAMINATION

24   BY MR. SCHOLL:

25   Q    Mr. Bravo, can you read or write English?
```

1   A    No.

2   Q    So when you got -- did you get some documents that

3   related to the state court case, the motion to -- what did

4   you do when you got those documents?

5   A    I brang (sic) it to you.

6   Q    Okay.  And when I filed responses, did I discuss them

7   with you first?

8   A    Yeah.

9   Q    Okay.  So you knew what we were answering, right?

10  A    Yeah.

11           MR. SCHOLL:  No further questions.

12           THE COURT:  All right.  Anything further from

13  anybody?

14           MR. KRIK:  No evidence, Your Honor.  Only our

15  closing.

16           THE COURT:  Oh, well, we've got to try to move

17  some documents in first because I don't have any documents

18  here.

19           Mr. Scholl, what documents do you want to move

20  into evidence?

21           MR. SCHOLL:  I move into evidence, D-1 through D-

22  30.  That's the entire package.

23           THE COURT:  Okay.  (Indiscernible.)

24           MR. SCHOLL:  Although, I will say that --

25           THE COURT:  Wait a minute.  Whoa.  What is D-30,

In Re: Gabriel Bravo

204

 1  because the furthest I went up to was D-27.  What's 28, 29,

 2  and 30?

 3          MR. SCHOLL:  Well, they relate more to the other

 4  motion.

 5          THE COURT:  All right.

 6          MR. SCHOLL:  They are the agreement of sale, the

 7  final agreement of sale, and the --

 8          THE COURT:  Okay.  So --

 9          MR. SCHOLL:  -- two -- two plans.  So they're

10  really not --

11          THE COURT:  Okay.

12          MR. SCHOLL:  -- (indiscernible).

13          THE COURT:  So D-1 through 27 is what you want to

14  admit here?

15          MS. SMITH:  Yes, ma'am.

16          MR. SCHOLL:  Those are receipts.  Yes.  We're

17  offering them.

18          THE COURT:  Mr. Krik, any objection?

19          MR. KRIK:  A general objection to them being

20  considered as evidence at this time?  Yes, on the grounds

21  that the matter has already been adjudicated, but --

22          THE COURT:  Other than that issue, do you object

23  to them being admitted?

24          MR. KRIK:  Well, I do on the fact that the debtor

25  himself said that he did not write or understand them, so I

In Re: Gabriel Bravo

205

 1  don't feel any --

 2          THE COURT:  No, you didn't ask him did he -- did

 3  not write or understand with respect to those receipts.

 4  That was something else, counsel.  I can go back to my notes

 5  and you did not ask him anything about did he understand,

 6  did he write them, any of those questions with respect to

 7  those receipts.

 8          Now, that's after the fact that he may have said

 9  that, but you didn't ask him that.

10          MR. KRIK:  Okay.  And there's no objection.

11          THE COURT:  All right.  They're admitted.

12      (Debtor's Exhibit D-1 through D-27 admitted in

13  evidence)

14          THE COURT:  Anything else, Mr. Scholl?

15          MR. SCHOLL:  No, Your Honor.

16          THE COURT:  All right, Mr. Krik, what do you want

17  to admit into evidence in opposition to this proof of claim?

18          MR. KRIK:  To the proof of claim objection, I

19  would like to admit Exhibits C-8, 9, and 10, as well as the

20  proof of claim filed, which is listed as C-26.

21          THE COURT:  All right.  Mr. Scholl, any objection

22  to C-8?  What's C-8 again?

23          MR. KRIK:  I'm sorry, and C-27.  C-8 is the motion

24  to reassess damages in state court.

25          THE COURT:  Any objection, Mr. Scholl?

1          MR. SCHOLL:  Well, if we got them all in and we

2     talked about them, I won't object any further.

3          THE COURT:  Okay.

4          MR. SCHOLL:  Although, I think that they were not

5     certified.  I'll just note that.

6          THE COURT:  Well, we -- what about -- no, so they

7     weren't, but Mr. Weiser talked about the motion to assess.

8     He was familiar.

9        (Creditor's Exhibit C-8 admitted in evidence)

10         THE COURT:  What about -- what was C-9?

11         MR. KRIK:  C-9 was the debtor's response to that

12    motion with new matter.

13         THE COURT:  All right.  And the debtor didn't know

14    anything about it.  So are you -- so I'm -- you're okay with

15    that, Mr. Scholl?

16         MR. SCHOLL:  Yep.  Yes.

17       (Creditor's Exhibit C-9 admitted in evidence)

18         THE COURT:  Okay.  And C-10 is what?

19         MR. KRIK:  C-10 is the state court's order of June

20    2nd, 2021.

21         THE COURT:  Okay.  Admitted.

22       (Creditor's Exhibit C-10 admitted in evidence)

23         THE COURT:  And what's C-26?

24         MR. KRIK:  26 is the creditor's proof of claim.

25         THE COURT:  Okay.  That's admitted.

1          Any -- well, any objection, Mr. Scholl?

2          MR. SCHOLL:  No, I think it's part of the record

3     automatically, as is my --

4          THE COURT:  So you wouldn't have objected anyway.

5     All right.  And then --

6          MR. SCHOLL:  My objection is (indiscernible) my

7     record, my objection in, but I'm sure that the Court will

8     note it since that's the pleadings that bring us here for

9     the hearing.

10       (Creditor's Exhibit C-26 admitted in evidence)

11         THE COURT:  All right.  What's 27, Mr. Krik?

12         MR. KRIK:  And 27 is the receipt for a post

13    reassessment payment that was stated by the creditor.

14         THE COURT:  The $500?

15         MR. KRIK:  Yes.

16       (Creditor's Exhibit C-27 admitted in evidence)

17         THE COURT:  Okay.  All right.  Anybody want to

18    make some arguments, because it's 5:40?  I mean, I pretty

19    much know what you're -- let me just tell you --

20         MR. SCHOLL:  Just a brief argument, Your Honor,

21    yes.

22         THE COURT:  What?

23         MR. SCHOLL:  Yes.

24         THE COURT:  All right.  Go ahead.

25          CLOSING ARGUMENT ON BEHALF OF THE DEBTOR

In Re: Gabriel Bravo

208

 1              MR. SCHOLL:  All right.  Yeah, I think you have to

 2    weigh Mr. Weiser's answers.  He doesn't know what he got or

 3    he didn't get.  He said he don't know of one payment.  He

 4    couldn't say that I got one payment, or I didn't get one

 5    payment, or that I got 17 of them and I just disregarded

 6    them all.

 7              It's very clear that he didn't make any refunds,

 8    and he accept --

 9              THE COURT:  Well, that -- before we get there, Mr.

10    Scholl, the issue is, am I bound by -- what exactly was this

11    Court decision.  And what it is, am I bound by?  Is it

12    *Collette* (ph), *Rooker Feldman*, res judicata, collateral

13    estoppel?  Am I bound by that?

14              MR. SCHOLL:  Well, it's none of the above.  *Rooker*

15    *Feldman* is a very narrow doctrine and only applies when

16    there's a direct attack made on a court order.  I'm not

17    making a direct attack on a court order.  I'm merely stating

18    that apparently the court order did not reference one very

19    important area, and that is the payments.

20              THE COURT:  So you believe there is no collateral

21    estoppel or --

22              MR. SCHOLL:  Excuse me?

23              THE COURT:  -- res judicata?

24              MR. SCHOLL:  Well, I don't think it's res judicata

25    or collateral estoppel either, because the issues simply

1  weren't addressed.

2          THE COURT:  Well, then if it wasn't addressed then

3  there's no collateral estoppel or res judicata.

4          MR. SCHOLL:  That's what I said.  I don't think it

5  is.

6          THE COURT:  That's -- yeah, but you're saying you

7  don't believe it.  Oh, okay.  So you don't believe they

8  apply because they weren't adjudicated?

9          MR. SCHOLL:  Right.

10          THE COURT:  Not that -- okay.

11          MR. SCHOLL:  The problem is, I'm not -- the

12  problem is, when you make a decision on reassessment, I

13  would think you would credit payments, but I couldn't find

14  any decision that says one way or the other that that's what

15  (indiscernible).

16          THE COURT:  I mean, I don't know what they did or

17  didn't do.  My question is, you believe that it wasn't

18  litigated, and because it wasn't litigated, there's no

19  collateral estoppel, no res judicata.  You don't believe

20  there's *Rooker Feldman* because it's not a direct attack on

21  that order.  Nobody is saying don't impose the order, which

22  is the 168.  You believe that that should be reduced by the

23  payments.  They're going to tell me why not, and they

24  believe that -- I guess it's not -- I'm not attacking that

25  order, am I?

Case 20-19262-2nd-cv-04320-137H Document 06/23/21 Entered 01/04/23/21 age 0225 of 265 Main
Document    Page 210 of 228
In Re: Gabriel Bravo

210

 1          Are you saying that order is wrong?

 2          MR. SCHOLL:  I'm saying that the perception of the

 3   reassessment appeared to be not to include payments, and

 4   even the ones that Mr. Krik said that he made, that he

 5   received that were supposed to be deducted or taken off.  So

 6   I have to believe the --

 7          THE COURT:  Well, you would also agree -- back up.

 8   Then you would also agree that the payments that they were

 9   looking for weren't addressed either, were they?

10          MR. SCHOLL:  The payments they were looking for.

11          THE COURT:  The additional payments.

12          MR. SCHOLL:  What additional payments?  They

13   weren't looking for any additional payments.

14          THE COURT:  Yes, they were.  If you look at it,

15   they were asking for principal and interest.  They asked for

16   $19,000 extra dollars for post-judgment amounts, and they

17   gave credit for which -- for some amount which, you know, if

18   these receipts are right, I don't know what happened to all

19   those other proofs, but that's a whole 'nother issue.

20          You would agree, then, the only thing the -- the

21   only thing that that court said was, you got the 168.  It

22   didn't say what happened to the additional 19, did it?  You

23   would agree with that?

24          MR. SCHOLL:  What are you -- the first part of

25   your question?  I don't understand what --

```
 1          THE COURT:  My question is, is that if it's only
 2   the first half that was -- which was the 168, the creditor
 3   was asking for an additional $19,000, which they didn't get,
 4   or you believe that that was disallowed or wasn't addressed,
 5   or what?
 6          MR. SCHOLL:  It was all addressed.  There was --
 7   essentially it was the issue whether Stenarto applied or
 8   not, which this Court had before too, and the state court
 9   had it as well.  And the thing that -- the point that I'd
10   make is that the order that the judge entered was exactly
11   the amount of the judgment plus the interest that we thought
12   it should be.  She wasn't trying to determine anything about
13   the payments.
14          Now, whether she should have -- (indiscernible)
15   judgment.
16          THE COURT:  Well, the question is whether --
17   doesn't matter whether she should have.  The question is
18   whether she did, for my purposes.  And they're saying she
19   did by the fact that she didn't give it to you.  That's
20   their position.  Okay?
21          MR. SCHOLL:  It's counter-intuitive, just like the
22   argument that I think Mr. Weiser is making.  I got payments
23   and, you know, I don't know how many --
24          THE COURT:  Well, I'd like to know what happened --
25          MR. SCHOLL:  -- (indiscernible) --
```

Case 20-19262-RBH Doc 13 Filed 01/04/23 Entered 01/04/23 13:08:22 Desc Main
Document      Page 212 of 228
In Re: Gabriel Bravo

212

 1          THE COURT:  -- (indiscernible).

 2          MR. SCHOLL:  -- back, and I think I credited him,

 3  but he doesn't show anywhere where he credited him one

 4  payment.

 5          THE COURT:  Okay.  Well, whether he did or didn't,

 6  I don't know.  Well, I don't see anything, at least on that

 7  post-assessment.  I don't see any credit for any of those

 8  payments, unless Mr. Weiser is saying he didn't get them,

 9  but you mailed -- some of them were mailed directly by you.

10  At least two or three of them.

11          MR. SCHOLL:  Well, I filed the new matter, it was

12  never answered.

13          THE COURT:  I know.  No answer to new matter.

14          MR. SCHOLL:  Little late.  So does that mean that

15  it's -- that I admitted it?  I don't think.  Yeah.

16          THE COURT:  Well, when you don't answer new

17  matter, they're deemed admitted, isn't it?

18          MR. SCHOLL:  Yes, I think it is.

19          THE COURT:  Well, I don't know what that means.  I

20  don't know what that means, because I wasn't the judge.  You

21  know?  Listen, I sometimes say too much.  I just had a half

22  a day on something I probably should have never said that

23  people want to use to say I could give them something else,

24  when I should have just left it to that and the other issue

25  would have been gone.

In Re: Gabriel Bravo

213

```
 1           But anyway, all right, Mr. Scholl, I get your
 2   position.
 3           Mr. Krik, you believe that this is what,
 4   collateral estoppel --
 5           CLOSING ARGUMENT ON BEHALF OF THE CREDITOR
 6           MR. KRIK:  Thank you.
 7           THE COURT:  -- res judicata --
 8           MR. KRIK:  Thank you.
 9           THE COURT:  -- Rooker Feldman?  Which one?
10           MR. KRIK:  Well, Your Honor, I have to -- I have
11   to say I think all apply.  If we take a look at the
12   circumstances -- and I will be brief -- we have a claim for
13   an amount due on a mortgage foreclosure.  We have an issue
14   of whether or not certain matters were credited or not.
15   Both those claims --
16           THE COURT:  Mr. Krik, answer me.  What happened to
17   those payments?
18           MR. KRIK:  I believe -- well, Mr. Weiser has
19   testified that he -- that he applied anything he received.
20           THE COURT:  Where on your papers did he apply
21   them, because he never did on those papers.  Where on the
22   papers --
23           MR. KRIK:  I understand that.  I understand that.
24           THE COURT:  -- that he filed with the court?
25   Where are they?
```

In Re: Gabriel Bravo

214

```
 1          MR. KRIK:  (Indiscernible.)

 2          THE COURT:  Where are they on the papers that were

 3  filed with the Court?

 4          MR. KRIK:  They're not listed on the document

 5  filed with the Court, and that's why there was opposition.

 6          THE COURT:  But the -- but that's -- that didn't

 7  answer my question, counsel.  Did he receive those payments

 8  or not?

 9          MR. KRIK:  I don't have record of that, and Mr.

10  Weiser indicated and testified that he's not aware.  When I

11  filed the motion --

12          THE COURT:  So those receipts and the -- because

13  this concerns me and I'm (indiscernible).

14          MR. KRIK:  Those receipts -- sorry.

15          THE COURT:  Those receipts, Mr. Scholl sent at

16  least two of those for $1,288, and I don't see anywhere on

17  the papers that were filed with -- when was the judgment

18  entered?

19          MR. KRIK:  The reassessment of damages was entered

20  on June 2nd of 2021.

21          THE COURT:  And at least two of those letters went

22  from Mr. Scholl in 2020, for -- two of them for $1,288.  I

23  didn't see them anywhere on the assessment.

24          MR. KRIK:  I understand that, and Mr. Weiser

25  testified to that effect.
```

In Re: Gabriel Bravo

215

1       THE COURT:  That what, that he didn't get them, or

2  that he didn't recall getting them?

3       MR. KRIK:  I don't remember what his testimony

4  was.  I can go back and -- honestly, I don't know.  That's

5  why he answered them.

6       Your Honor, what I'm -- what our position is, is

7  that those issues were raised.  No evidence of these -- none

8  of these receipts that are here were attached to the state

9  court.  This is essentially --

10       THE COURT:  Whether -- were they require -- well,

11  let me just ask you this, counsel.  You get a default

12  judgment, am I bound by that?

13       MR. KRIK:  If it's not appealed and there's no

14  petition to open, I believe that that would be a -- I

15  believe that that would be a final and appealable order.

16       THE COURT:  Well, counsel, it may not be binding

17  on my -- have you looked at the case law that says what

18  happens with default judgments?

19       MR. KRIK:  Yes, I understand that there are

20  certain --

21       THE COURT:  And they say they have to be actually

22  litigated.  Does it not say?  In order for me not to look at

23  it, it has to be something that was actually litigated

24  between the parties before the Court?

25       MR. KRIK:  Correct.  Correct.  Correct.  I don't

 1  disagree with that.  And here, you had a response filed.

 2  You had a response filed without evidence, and you had --

 3          THE COURT:  Well, how are you going to file a

 4  response without evidence.  Evidence is at a trial.  You

 5  don't put evidence at a -- in a response.  Are you required

 6  to put your evidence in a response?

 7          MR. KRIK:  No, but the judge had the -- had the --

 8  Judge Patrick ruled on this in her -- in the way she saw fit.

 9  I'm not saying whether she -- if she (indiscernible) --

10          THE COURT:  But that's the point, counsel.  The

11  point of the matter is how she saw fit, is that binding on

12  me?

13          MR. KRIK:  Yes.  Your Honor, I believe it is.

14          THE COURT:  And it's binding because it was

15  actually litigated?

16          MR. KRIK:  Yes, because it was ruled -- both

17  parties had an opportunity to present their case.

18          THE COURT:  Counsel, you didn't even file a

19  response to new matter.  Did you?

20          MR. KRIK:  But -- Your Honor, I understand that,

21  but that doesn't mean that the Court didn't consider that

22  the -- the issue.

23          THE COURT:  Counsel, it's not about whether she

24  considered it.  It was whether it was actually litigated.

25          MR. KRIK:  Understood.

1        THE COURT:  It's the same thing in a default

2   judgment.  When you file a default judgment, the court

3   probably considers it.  I do it when I do a default

4   judgment.  I go and I say, motion filed, no answer, default

5   judgment.  Not actually litigating, I'm giving a default.

6        The cases are pretty clear that when it is not

7   actually litigated, I'm not bound by that.  And so the

8   question for me in this case is whether it was actually

9   litigated.  What that judge chose to do --

10        MR. KRIK:  That's fine.  I was just --

11        THE COURT:  And I'm not --

12        MR. KRIK:  I was --

13        THE COURT:  -- and I'm not saying -- and that's

14   the point of the matter.  What does actually litigated mean?

15   And there are some cases, and I'm going to go back and see

16   what the cases say, because counsel, I can tell you what

17   troubles me more than anything.  What troubles me more than

18   anything is when I look at that document, that court didn't

19   take any evidence.  And when you file a response, my -- I

20   don't know what state law -- because state law may have some

21   different rules, but when you file a response in my court,

22   you're not required to attack anything.  You can if you

23   want, but you're not required to.

24        And so the same way if you file a response to a

25   matter and you don't put it in evidence in my court, good

1  for you, but it's not evidence.  It's just pleadings.  It's

2  just a pleading.

3        So when the pleadings are closed and I want to say

4  -- I want to issue a judgment, I can do whatever I want.  It

5  troubles me you didn't file a response so it's unclear to me

6  whether the pleadings were even closed before the judge

7  ruled.  I'm not saying the judge couldn't rule.  She can do

8  whatever she wants.

9        The question is, what am I going to do with it?

10  What am -- what effect am I going to do with that judgment

11  if I say again, a motion for a default judgment.  If you

12  come to me and you say, Judge, you know, this wasn't

13  actually litigated, you should -- I'm not saying that I'm

14  not going to respect it.  It's just, do I get to say it was

15  res judicata, collateral estoppel?  I'm not saying I'm not

16  recognizing the judge.  Judge issued a judgment.  What am I

17  going to do with it?  Am I going to look at some issues that

18  the Court didn't look at because it wasn't actually

19  litigated, which is a little weird as far as I'm concerned

20  because when you tell me I can't undo a judgment, but then

21  the case law says if it's not actually litigated, then I can

22  do something.  That's kind of like a dichotomy if you ask

23  me.

24        So where I am -- and, counsel, more important to

25  me, you didn't put on one iota of evidence that Mr. Weiser

1   didn't get those payments, so you can say whatever you want.

2   This is a court of equity.  This is -- if Mr. Weiser didn't

3   get the payments, he didn't get them.  But this is a court

4   of equity.  If he got those payments and they weren't on

5   there and it wasn't actually litigated because the judge

6   didn't get any evidence and there was no response, how in

7   the world am I going to be bound by that?  That is really

8   what troubles me.

9        What troubles me more than anything is, I never

10  once heard him say, I didn't get those payments.  I don't

11  know.  I don't recall.  I gave him credit for a couple of

12  payments.  So those are a substantial amount of payments

13  that were made during a bankruptcy.  I'm -- you know, as I

14  said -- I'm sorry.  I got distracted.

15       So the issue for me is, one, whether they -- I

16  have to make a determination whether they were actually

17  litigated.  If they were actually litigated, Mr. Scholl, you

18  didn't do anything, I'm sorry, not that (indiscernible).

19  I'll be honest.  I don't -- I'm not looking at this in a

20  positive way.  If this debtor made all these payments and

21  didn't get any credit, counsel, this is a, I got you.  I

22  don't like that.  I'm a court of equity.

23       If he didn't make the payments and came in here

24  and said, give me credit, I would say the same thing.  You

25  didn't make any payments.  Why should -- why should you get

1  credit for it?  That's the issue.

2        So the issue I have to figure out is, one, was

3  this actually litigated.  And if it was actually litigated,

4  Mr. Scholl, you better go on back to state court and ask

5  that judge to clarify for you, and maybe they will, maybe

6  they won't.

7        If it wasn't actually litigated, then I'm going to

8  hear it, and what I've heard is I heard.  I heard what I

9  heard, and see whether he gets credit for it or not, because

10  at the end of the day, Mr. Krik, either he made those

11  payments or he didn't.  And if he did make those payments,

12  how is Mr. Weiser or EZ Cash harmed for payments they got?

13  That's the up -- that's -- this is a court of equity now.

14  And so that's sort of what -- I may not even get to that,

15  because at the end of the day if I decide that this was

16  actually litigated, you know, that's something you guys have

17  to figure out what to do about.

18        And, Mr. Scholl, if you didn't do anything about

19  it and you had proof of payment and they issued and you

20  didn't do anything, well, that's something that's on you.

21  You know?  And I guess you'll figure out they got up -- they

22  got one.  But that's the other -- so for me, putting aside

23  the issue of whether he got it or not, which is troubling

24  for me, is whether this was actually litigated.  Again, you

25  guys want to brief that issue, because why should I be the

```
 1   one that have to the initial research?  I'm going to need a
 2   brief on the issue of what does it mean for actually
 3   litigated.
 4          And I see that all the time.  Typically not in
 5   proof of claims, but I see it in discharge litigation.  Was
 6   that actually litigated?  And if it was, is it something I
 7   -- litigated, I'm like great, I don't have to look at it.
 8          I also see them when people want to strike a
 9   default judgment and say, it wasn't actually litigated.
10   It's pretty easy when it's default.  That's a easy one.  It
11   clearly wasn't actually litigated, and that's what those
12   issues say, were they actually litigated.  If they were
13   litigated, I'm bound by it because the assumption is, is
14   that a court went through, they heard evidence, they did
15   what they had to do.  They made a decision.
16          I don't get to come back behind and say, did you
17   look at this and you did this?  Well, I'll come to a
18   different decision.  No, no, no, I don't get to do that.  So
19   that's why my first focus is, was it actually litigated?
20          So how much time you guys want -- because now we
21   done put off the issue on what does that mean for the
22   estate, how much time do you need for actually litigating,
23   because I don't know (indiscernible).
24          MR. SCHOLL:  Well, a little more than the other.
25   I'd say 30 days to that.
```

```
 1              THE COURT:  Yeah.  Okay.  30 days for that.  All

 2    right.  Does that work for you, Mr. Krik?

 3              MR. KRIK:  Yes, Your Honor.

 4              THE COURT:  Okay.  What's 30 days, Eileen?

 5              MR. SCHOLL:  Well, today's the 15th, so

 6    (indiscernible).

 7              THE COURT:  Oh, the Ides of March.  The Ides of

 8    March, March 15th.

 9              MR. SCHOLL:  Looks that way, except actually it's

10    less than that because February only has 28 days so --

11              THE COURT:  Oh, so we go to the 17th.

12              MR. SCHOLL:  Probably.

13              THE COURT:  Oh, I thought I was being smart.

14    March -- what day of the week is the 17th, Eileen?

15              THE CLERK:  Judge, I think Eileen might have

16    gotten kicked out.

17              THE COURT:  Yeah.  Eileen is smart.  She got out

18    of here.

19              COURTROOM DEPUTY:  Oh no, I'm here, Judge.

20              THE CLERK:  Well, the 17th -- oh, good.  The 17th

21    is a --

22              COURTROOM DEPUTY:  The 17th is a Thursday.

23              THE COURT:  Let's give them to the Friday.  March

24    18th, 5:00.

25              COURTROOM DEPUTY:  Yep.
```

1          MR. SCHOLL:  Oh, okay.  All right.  That sounds

2    fair.

3          THE COURT:  Well, I would tell you that -- you

4    know, I don't know how much money you guys are going to

5    spend on litigating -- I mean, filing briefs and all this

6    other stuff, but I would encourage you -- encourage you to

7    try to settle this matter.  I can't tell you what to do, but

8    I can tell you, Mr. Krik, if I find that this isn't actually

9    litigated, it is what it is.  Again.  And I'm going to tell

10   you again that I have Mr. Bravo's money orders.  I have Mr.

11   Scholl's correspondence transmitting money orders.  And I

12   have nothing, not in the motion for assessment or whatever,

13   saying that a credit was given for any of it.  So you guys

14   can take whatever my comments mean and ignore -- you can --

15   you don't have to do anything.  Again, I sometimes say more

16   than I should, but you guys can file your briefs and I will

17   rule accordingly, or you can try to -- try to work it out.

18   But we are where we are.

19          So March 18th at 20 -- at 5:00 p.m., simultaneous

20   brief on the issue of what judgments are bind -- whether

21   this was actually litigated such that the decision that the

22   reassessment amount are bounding -- binding on this Court,

23   and that's -- and if it is, then the proof of claim would be

24   the 168 plus interest.  You would agree, Mr. Scholl, that

25   interest would run until the date of the filing, correct?

Case 20-12262-hvc-04320-137H Filed 01/08/21 Entered 01/04/23 21:13:06 23:22 of 265c Main
Document    Page 224 of 228
In Re: Gabriel Bravo

224

```
 1              MR. SCHOLL:  Well, I think until the date of pay
 2   -- payment.
 3              THE COURT:  No.  The interest on the -- the
 4   interest would stop on the date of the -- of the filing, and
 5   then I guess you would have to figure out what's due and
 6   owing after that.  I mean, under a plan.
 7              MR. SCHOLL: (Indiscernible.)
 8              THE COURT:  Under a plan --
 9              MR. SCHOLL:  I can (indiscernible) --
10              THE COURT:  -- under --
11              MR. SCHOLL:  She has added on the interest post-
12   petition.
13              THE COURT:  Right.  You'd have to figure whatever
14   it is that's due and owing.  I don't know.  But they ran it.
15   That proof of claim ran until the date of the petition.
16   That's all I'm saying.  Now, what you've got to pay after
17   that, that's a whole different issue, but I'm saying the
18   proof of claim that you -- that is in question, ran interest
19   until the date of the petition, correct?
20              MR. SCHOLL:  Yeah.  I think that is true.
21              THE COURT:  Right.  That's what I'm saying.  So if
22   they're correct, and it's the 168, whatever the judge gave,
23   it would be that plus the interest to the date of the
24   petition, correct?
25              MR. SCHOLL:  That's right.
```

Case 20-12262-mdc Doc 437 Filed 01/08/23 Entered 01/04/23 Page 240 of 265 c Main
Document    Page 225 of 228
In Re: Gabriel Bravo

225

```
 1              THE COURT:  Okay.  So that if I -- if I overrule
 2    your objection, they would get the 168 plus the thousand,
 3    two thousand, whatever that interest is, right?
 4              MR. SCHOLL:  Well --
 5              THE COURT:  Correct?  If I overrule your
 6    objections, they get the 168 plus the interest to the date
 7    of the petition.
 8              MR. SCHOLL:  I don't think anything is 168, Your
 9    Honor.  I don't know where that number is coming from.
10              THE COURT:  What's the number?  The number --
11              MR. SCHOLL:  Their claim is in the 130s.
12              THE COURT:  No, I thought -- hold on.  Am I
13    missing something?  Why am I coming up with -- hold on.
14    136.  I'm sorry.
15              MR. SCHOLL:  Yeah.
16              THE COURT:  The proof of claim is for 139,854.
17    The reassessment was 136,865.70, plus the interest that ran
18    to the date of the petition.  Correct?
19              MR. SCHOLL:  I think that's right, although
20    frankly Mr. Krik has kept on adding it on.  But I think
21    he'll --
22              THE COURT: (Indiscernible.)
23              MR. SCHOLL:  -- he'll reconsider it in light of
24    your statements.
25              THE COURT:  I'm not -- I'm just telling you, if I
```

In Re: Gabriel Bravo

 1  overrule the objection --

 2          MR. SCHOLL: (Indiscernible) still adding in

 3  (indiscernible).

 4          THE COURT:  -- the interest -- you would agree

 5  that the 136,865.70, plus the interest that's listed on the

 6  proof of claim, that if I overrule the objection, I will

 7  allow the claim in those amounts.  The reassess amounts plus

 8  the interest, correct?

 9          MR. SCHOLL:  Correct.

10          THE COURT:  Right, Mr. Krik?

11          MR. KRIK:  Yes.

12          THE COURT:  Okay.  All right.  That's where are,

13  so you guys are going to file some briefs and I'll figure it

14  out.  Okay?

15          MR. KRIK:  Thank you, Your Honor.

16          THE COURT:  All right.  Thank you, counsel, and

17  thank you --

18          MR. SCHOLL:  What is the other --

19          THE COURT:  -- John, Eileen --

20          MR. SCHOLL:  -- what is the other brief?

21          THE COURT:  What, Eileen?

22          MR. SCHOLL:  Could I just have a reminder when our

23  other brief is due?

24          THE COURT:  I thought we put -- well --

25          COURTROOM DEPUTY: (Indiscernible.)

 1          MR. SCHOLL:  It's so long ago, I forgot, Your

 2   Honor.

 3          THE COURT:  I put that -- well -- I know.  Briefs

 4   are due March 1st, with a further hearing on March the 8th,

 5   and I will endeavor to have a ruling for you on March 8th on

 6   the issue of whether the stay applies to the debtor or that

 7   stay that terminated applied to the property of the estate.

 8          MR. SCHOLL:  Okay.

 9          THE COURT:  And then I guess at that point, I will

10   endeavor to try to rule on the motion to -- because the

11   automatic stay will extend to March 8th.  So I've got to --

12   so you guys have your work cut out for you.  I have some

13   breathing room on this -- on this actually litigated briefs.

14   That's not until sometime in March.  Okay.

15          MR. SCHOLL:  Okay.  Thank you, Your Honor.

16          THE COURT:  Thank you.  Good luck --

17          MR. KRIK:  Thank you.

18          THE COURT:  -- everybody and have a good evening

19   and a rest of the week.

20          MR. KRIK:  Thank you.

21          MR. SCHOLL:  Okay.

22          MS. SMITH:  Thank you, Your Honor.

23          THE COURT:  All right.  Thank you.  Have a good

24   day.

25          MS. SMITH:  Tomorrow, Mr. Krik.

1          MR. KRIK:  Yes, that's fine.

2          THE COURT:  All right.

3       (WHEREUPON, Court was adjourned at 6:00 p.m.)

4                      * * * * *

5

6

7

8

9

10          C E R T I F I C A T I O N

11

12          I, Nancy B. Gardelli, Federally Approved

13   Transcriptionist, of Acorn Transcripts, LLC, hereby certify

14   that the foregoing transcript is a correct transcript, to

15   the best of my ability, from the official electronic sound

16   recording of the proceedings in the above-entitled matter.

17

18   ACORN TRANSCRIPTS, LLC

19

20   /s/ *Nancy B. Gardelli*          Dated: December 28, 2022

21   Nancy B. Gardelli

22   www.acornfla.com

23

24

25

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

In re:                                                  : Chapter 13


Gabriel Bravo                                           : Bankruptcy 21−12926−mdc

          Debtor(s)

*NOTICE OF FILING OF TRANSCRIPT*
*AND OF DEADLINES RELATED TO RESTRICTION AND REDACTION*


A transcript of the proceeding held on February 15, 2022 was filed on January 3, 2023.

The following deadlines apply:

The parties have until 1/10/23 (seven (7) calendar days from the date of filing of the transcript) to file with the court a Notice of Intent to request Redaction of this transcript. The deadline for filing a request for redaction is 1/24/23 (21 days from the date of filing of the transcript).

If a Request for redaction is filed, the redacted transcript is due 2/3/23 (31 days from the date of filing of the transcript).

If no such notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is 4/3/23 (90 calendar days from the date of filing of the transcript) unless extended by court order.

To review the transcript for redaction purposes, you may purchase a copy from the transcriber (contact the court for contact information) or you may view the document at the clerk's office public terminal.


                    For the Court


Date: 1/3/23                                   Timothy B. McGrath
                                               Clerk of Court


                                               By:<u>John B.</u>
                                                   Deputy Clerk

1 ║ IN THE UNITED STATES BANKRUPTCY COURT

2 ║ FOR THE EASTERN DISTRICT OF PENNSYLVANIA

3

4 ║ ------------------------------
   ║                            §
5 ║ IN RE: GABRIEL BRAVO,        §
   ║                            §   CASE NO. 21-12926-MDC
6 ║              Debtor.        §   PHILADELPHIA, PA
   ║ ------------------------------

7

8
                      MOTION TO RECONSIDER HEARING
9

10                     United States Bankruptcy Court

11                     900 Market Street, Suite 400

12                     Philadelphia, PA  19107

13

14                     Tuesday, November 22, 2022
                        10:49 A.M.
15

16

17

18 ║ B E F O R E:

19 ║ HON. MAGDELINE D. COLEMAN,

20 ║ U.S. BANKRUPTCY JUDGE

21

22

23

24        Proceedings recorded by electronic sound recording;
           transcript produced by transcription service.
25

```
 1                          APPEARANCES:

 2

 3   FOR DEBTOR:                    DAVID SCHOLL, ESQ.
                                    AUTHERINE SMITH, ESQ.
 4                                  512 Hoffman Street
                                    Philadelphia, PA  19148
 5                                  (601)550-1765

 6

 7   FOR CREDITOR EZ CASHING LLC:   JUSTIN L. KRIK, ESQ.
                                    KRIK LAW
                                    P.O. Box 788
 8                                  Williamstown, NJ  08094
                                    (267)831-3180

 9

10   FOR U.S. TRUSTEE:             KENNETH E. WEST, EST.
                                    CHAPTER 13 TRUSTEE
11                                  200 Chestnut Street, Ste 502
                                    U.S. Customs House
12                                  Philadelphia, PA  19106

13

14   TRANSCRIPTION SERVICE:        ACORN TRANSCRIPTS, LLC
                                    3572 Acorn Street
15                                  North Port, FL  34286
                                    info@acornfla.com
16                                  www.acornfla.com
                                    1-800-750-5747
17

18

19

20

21

22

23

24

25
```

1

2                    C A L E N D A R

3

4  HEARING re MOTION TO RECONSIDER ORDER OF

5  OCTOBER 18, 2022 FILED BY GABRIEL BRAVO

6  REPRESENTED BY DAVID A. SCHOLL

7    - Granted in part/Denied in Part

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
   Transcribed by: Acorn Transcripts, LLC
24

25

1    <u>PHILADELPHIA, PA; TUESDAY, NOVEMBER 22, 2022; 10:49 A.M.</u>

2      (Call to Court)

3          THE COURT:  And, counsel, I would ask that you

4    keep your telephone on mute until your case is called.  I

5    would also ask that you please state your name for the

6    record before you speak, as we clearly cannot see who's

7    speaking, and I would ask that you wait your turn and not

8    speak over one another or the Court.

9          All right.  The first matter is Gabriel Bravo, and

10    that is a motion to reconsider the Court's order of October

11    18th.

12          Counsel for the movant.

13          MR. SCHOLL:  David Scholl.

14          THE COURT:  Counsel for any respondent.

15          MR. KRIK:  Yes.  Justin Krik on behalf of EZ

16    Cashing, LLC.

17          THE COURT:  Anyone else here on that matter?

18      (No audible response)

19          THE COURT:  Okay.  Mr. Scholl, you can go forward.

20          MR. SCHOLL:  Yes, Your Honor.  I think what's been

21    overlooked in this decision is the principle of fair dealing

22    that I think is implied between parties.  I think whenever

23    there's a transaction, commercial or a consumer transaction,

24    it's assumed that each party is going to deal fairly with

25    the other one.

In Re: Gabriel Bravo                                                    5

1          In this case specifically, we're dealing with the

2   fact that the debtor made significant payments to the

3   creditor, which the creditor did not deny, but very

4   evasively tried to suggest that it was irrelevant.  It's not

5   irrelevant.  In fact, it's one of the most important things

6   about a transaction.  You must give credit to a party who

7   makes payments, and that wasn't done.

8          And it continued.  In one paragraph I mention that

9   there was even a discussion regarding a payment that was

10  remitted after the state court order.  It was remitted in

11  December -- November, actually, of 2021.  It was a payment

12  in the amount of $500.  It was conceded that that payment

13  would have to be credited to the debtor if it were not

14  returned.  It was not returned.  It must be credited to the

15  debtor.  I think it was simply overlooked.  I don't think

16  the Court meant to deny credit for that.

17         But to me, it's only illustrative of the way that

18  this creditor has dealt with the debtor, which frankly is

19  fraudulent, and for that reason, when one party deals with

20  another party fraudulently, then the res judicata principles

21  do not apply.  And I cited a 7th Circuit case for that

22  principle.  The *Long* case, and I continue to cite that.  I

23  don't see any citation to the contrary to that case.  The

24  case isn't even mentioned in the response, although it's the

25  only case that we cited in our motion, and I don't think it

1   can be distinguished.

2           I believe that the Court should have given Mr.

3   Bravo credit for whatever payments it found that he made,

4   and that should include all the payments that he made, which

5   was a very significant amount.  Otherwise, what incentive is

6   there for anybody to make payments if you're not going to

7   get credit for them?

8           And I think everyone assumes, and I think any

9   normal mortgage company, and I attribute the issue here to

10  the fact that we have somebody who's not a -- not a

11  commercial -- common commercial mortgage company.  But, you

12  know, I don't excuse him.  I think he's trying to get away

13  with something.  He's trying to get away with not crediting

14  Mr. Bravo for anything that he's made, even though he knows

15  he's made them famous, and it's just outrageous.  You cannot

16  deal with somebody that way.  That is totally unfair, and

17  the Court cannot tolerate it, and it cannot grant relief or

18  issue an order that allows a party to benefit from that sort

19  of conduct.  And of course, it's carried on even through the

20  payments that we made in November, which is outrageous.

21          And there's no answer, and they haven't given an

22  answer, and they can't.  They can't because they know that

23  Mr. Bravo has made the payments and they know they haven't

24  credited him, and it's simply outrageous to think that they

25  can continue in that course of conduct.  The Court cannot

1   tolerate that, and the Court must, we allege, revise the

2   order of October 28th to recognize the principles that I'm

3   articulating.

4            THE COURT:  Okay.  Mr. Krik, any response?

5            MR. KRIK:  Yes, Your Honor.  Thank you.

6            As indicated in our -- in the response, we don't

7   believe, first, that the debtor has brought any new facts or

8   new law that has arisen since the hearing that would give

9   rise to reconsideration on that -- those principles.

10           However, it should also be noted that the

11  allegations of fraud are just that.  They are the theory of

12  the defendant, when in actuality, the defendant put on this

13  argument in state court regarding the credit of payments,

14  and where the debtor has specific procedures for dealing

15  with grievances involving fraud.  The first being to file an

16  action or bring a claim for fraud within a two-year statute

17  of limitations in Pennsylvania.

18           The alleged payments that we're even talking

19  about, for argument's sake, were allegedly made and not

20  credited in 2017 and 2018.  So on that alone, there is no

21  claim for fraud that's not outside the statute of

22  limitations, but --

23           THE COURT:  But let me just ask you this, Mr.

24  Krik.  Was he given credit or --

25           MR. KRIK:  Yes.

1          THE COURT:  -- not?  Was he given credit or not?

2    Yes or no?

3          MR. KRIK:  Your Honor, I -- Your Honor, I don't

4    have that answer.  I've asked my client for the accounting

5    and he provided the numbers that he provided.  What I'm

6    saying, respectfully, is that --

7          THE COURT:  Did you provide -- counsel.  Counsel.

8          MR. KRIK:  Yes.

9          THE COURT:  Did you --

10         MR. KRIK:  Yes.

11         THE COURT:  -- provide that to Mr. Scholl?

12         MR. SCHOLL:  Excuse me?

13         MR. KRIK:  The only accounting we provided was in

14   our motion to reassess damages.  That is what I was provided

15   by the client at that time, so that was after the alleged

16   payments were given.  Those were all pleadings filed of

17   record with the Court, verified by my client if not, and

18   again, the recourse that would have been on them should have

19   taken place.

20         But -- and I'm not trying to avoid your question,

21   because I give very good deference to Your Honor's opinion,

22   but that is, respectfully -- the notion being is that it can

23   only be an opinion because a factual record was put into

24   place in the state court.  The fact that it may have been

25   devoid of enough evidence to back up Mr. Bravo's claim in

1   the motion, or the fact that no appeal or no argument was

2   made on that, means that this -- the factual discussion

3   shouldn't make it in front of the Court.  And the argument

4   that res judicata is precluded by a fraud, it has to be

5   noted that there is a huge distinction between the *Long* case

6   cited by the debtor and this case.

7           In that case, the court held -- and first, that

8   was an SDCPA consumer credit transaction, which should be

9   notable, but in that case, where the court said that fraud

10  gave rise to -- or precluded res judicata, was specifically

11  intrinsic fraud.

12          Intrinsic fraud being a fraud that actually

13  prevented the defendant from participating in the trial and

14  circumvented a trial on the merits, preventing the court

15  from acquiring jurisdiction.  Basically, in the *Long* case

16  that was cited, the defense -- the plaintiff obtained a

17  judgment by telling the defendant that they didn't have to

18  come to court, misapplied or misrepresented the documents to

19  be signed, which turned out to be a consent judgment, and

20  then essentially kept the defendant from even raising

21  claims.

22          Here, we have the complete opposite.  Again, the

23  claim for fraud available in 2017 or '18, when Mr. Bravo

24  felt that he wasn't given credit.  It was argued before the

25  state court that credit was due.  If there was a fraud

1   claim, that could have been brought.

2          The idea that years later someone can come back

3   and allege fraud, just allege it, whether there's an

4   insinuation of it or not, but just allege it without any

5   factual evidence on the record, in state court especially,

6   is, we don't believe, appropriate.

7          And in conclusion of that, the idea being that the

8   state court ruled -- and also remembering that the state

9   court failed to give the creditor credit for charges that it

10  believed it was due as well.

11         So to come to a conclusion of fraud versus, again,

12  a decision by the state court to not give this credit, and

13  impose the responsibility on my client that it made that

14  decision when the court had the opportunity to make that

15  decision and did, is inappropriate.

16         So we don't believe that the allegation of fraud,

17  even if you accepted it as true, which we again object, is

18  not to the level of fraud, or the type that the *Long* case

19  applies.

20         THE COURT:  Okay.  What about that $500 post-

21  judgment payment?

22         MR. KRIK:  Well, Your Honor, I don't -- we never

23  had a problem.  We did say to him that we would give him the

24  500, whether your order says it or not, that is

25  (indiscernible)**16:54.

1        THE COURT:  But why didn't you tell me that --

2   counsel.  Why didn't you tell me that at the time of the

3   hearing, that you are willing to reduce whatever your --

4   $500?

5        MR. KRIK:  Well, I believe at the hearing, if I'm

6   correct, we did not object to that part of it.  And I don't

7   have any issue with that.  And that has been -- you know,

8   there is a payoff that is showing in this matter to the

9   title company reflecting that $500.

10       THE COURT:  Okay.  Mr. Scholl.  I mean, I'm sorry,

11  Mr. Krik, was there anything else that you wanted to say as

12  to why you think that I not -- I shouldn't reconsider my

13  order?

14       MR. KRIK:  No, Your Honor.  I believe that that is

15  our argument.

16       THE COURT:  You know, let me be frank.  This

17  leaves a nasty taste in my mouth, because I'm not quite sure

18  that Mr. Bravo was given credit.  But that being said, Mr.

19  Scholl, I'm not quite sure what, if anything, I can do about

20  that.  Mr. Bravo had an opportunity in state court to

21  challenge the calculations.

22       Now if he's alleging that the calculations that

23  were given were fraudulent, and that the judgment was

24  therefore obtained by fraud, that's a whole different story,

25  but you need to go somewhere else to get that adjudicated.

1    I don't review state court decisions.

2           But what I'm hearing from Mr. Krik, is that the

3    parties had an opportunity to litigate that exact issue

4    before the state court, and the state court elected to give

5    -- not give credit for the alleged payments.

6           I don't know what you guys want me to -- Mr.

7    Scholl there's not much I can do, because again, if the

8    payments were made or not made, some other court has made

9    that decision.  I can't overrule the state court.

10          Now there isn't anything stopping the parties from

11   going back to the state court or doing -- and I'm not even

12   sure you have a remedy there, so I'm not even suggesting

13   that there is a remedy there.  But if there is any question

14   to be made with respect to whether the judgment amount

15   appropriately gave Mr. Bravo credit, that court either

16   considered it and didn't give him credit, or didn't get it

17   and therefore didn't give credit.

18          But I can't go back and undo -- because even in

19   the *Long* case, where they said that the judgment was

20   obtained by -- was void because it was obtained by fraud,

21   and therefore the state court didn't even have a

22   jurisdiction, I don't know if it just stands for the

23   proposition that if you get a judgment by fraud it has no

24   res judicata effect, and therefore, you have to -- does that

25   then require me to do something with respect to how if I

 1  find it was fraud?  I'm not quite sure, because that would

 2  entail me trying to figure out what the state court did.

 3          And in those cases, there was a judgment, and then

 4  the defendant, in a subsequent state court, they -- he was

 5  -- the issue was that the judgment that was being asserted

 6  was obtained by fraud.

 7          So my position, at this point, is that I don't

 8  know what the state court did.  I don't get to say whether

 9  it was by fraud or not because that state court is the one

10  who issued the decision.  That state court is the one who

11  would know whether they considered the debtor's position

12  that he wasn't given credit for everything.

13          And you know, I've seen the evidence, but it

14  doesn't matter what I've seen.  I'm not the one who gets to

15  say that I get to ignore the state court decision, because

16  I'm bound by certain principles.  And one of those

17  principles is res judicata, complaining about the same issue

18  which whether the payments that were made were given credit

19  -- given credit for, and that my decision would then

20  basically overrule the state court, and I don't have the

21  authority or the capacity to do any of that.

22          So whether the -- whether the debtor was properly

23  given credit, I can't do anything.  This isn't like it's a

24  default judgment where it's a whole different issue.  The

25  debtor participated, and if the debtor felt that the

1  judgment was fraudulent because proper crediting hadn't been

2  done, the -state court is the more appropriate place for

3  that challenge.  I don't get to say anything.

4          So unfortunately, Mr. Scholl, I'm going to have to

5  overrule your motion for reconsideration with -- except the

6  $500, which Mr. Krik has said that you would get credit for.

7  You, meaning Mr. Bravo, would get credit for.  I mean, I'm

8  pretty sure my footnote in my ruling kind of expressed what

9  I thought, but my thoughts are just that, my thoughts.  I

10 can't do anything with it.  So that's where we are.

11         MR. SCHOLL:  Well, I'm certainly glad to hear,

12 contrary to his answer, that Mr. Krik is willing to grant

13 the $500 to Mr. Bravo, but it's a very consistent, you'll

14 notice that he never answered your question, did you get the

15 money, and did you refund it.  He never gave an -- and he's

16 not going to give you an answer.  He's going to evade you,

17 which is of course fraudulent, and it's outrageous that he

18 continues to --

19         MR. KRIK:  I object.  I object to that

20 characterization --

21         THE COURT:  All right.  Wait a minute.

22         MR. KRIK:  -- Your Honor.

23         THE COURT:  Wait a minute.

24         MR. SCHOLL:  You can object to it, but --

25         THE COURT:  Wait a minute.

 1            MR. SCHOLL:  -- it's a crime.

 2            THE COURT:  Mr. Krik.

 3            MR. SCHOLL:  You're interrupting me, for one

 4   thing.

 5            THE COURT:  Mr. Scholl, nobody's supposed to

 6   interrupt Mr. Krik.  You respond to that.  I will say that --

 7            MR. SCHOLL:  Well, he interrupted me.

 8            THE COURT:  Well, I'm telling him not to interrupt

 9   you.  And, Mr. Krik --

10            MR. SCHOLL:  Okay.  Thank you.

11            THE COURT:  I get to interrupt you.

12            I told Mr. Krik to wait his turn, but, Mr. Scholl,

13   I will just tell you that, you know, like you, Mr. Krik only

14   represents his client and he can only give us what his

15   client tells him.

16            And I have heard from his client, and I already

17   know the answer, but I can't do anything with it.  Okay?  It

18   is what it is.

19            MR. SCHOLL:  Well --

20            THE COURT:  I'm sorry.

21            MR. SCHOLL:  I think you can.  You can.  You're

22   not as powerless as you're indicating you are.  And it's out

23   -- and I continue to say that it's outrageous that he would

24   continue to engage in fraud, even in this hearing, which

25   he's doing once again.  It's simply outrageous, and I've

1  never had a creditor behave in that way in any court, and

2  I'm shocked by it, and I'm shocked that it continues to

3  date.

4          I'm thankful for the willingness to credit the

5  $500, which of course was never done up to now.  And I'll be

6  glad -- the other thing I just mentioned, there was also a

7  suggestion by Mr. Krik that the deposit that we put in

8  wasn't going to be sufficient to cover his entire claim, and

9  if we have the settlement on the 23rd, it clearly is.  So I

10  just thought I'd mention that since the 23rd is the

11  settlement, which is tomorrow.  I would hope that he would

12  advise the settlement agent that Mr. Bravo is entitled to

13  $500, which he hasn't done up until now.

14          And as far as the other -- there's one other

15  aspect of the settlement tomorrow that I'm just going to

16  mention, and that is my attorney's fees, which I filed an

17  application and a certificate of no objection, and I would

18  hope that the court will enter the order so that I can get

19  paid at the settlement tomorrow, which was what was

20  contemplated.

21          THE COURT:  Right.  And, Mr. Scholl, even if that

22  order isn't entered by tomorrow, they can escrow it and

23  release it to you is soon as it's entered.

24          MR. SCHOLL:  Okay.

25          THE COURT:  I'm just not sure where it

1  (indiscernible) today.  So I get it.

2        And again --

3        MR. SCHOLL:  Okay.  Thank you.

4        THE COURT:  All right.  Mr. Krik, your turn.

5        MR. KRIK:  Yes, Your Honor, I just -- I need to

6  put on the record my objection to being characterized as,

7  you know, carrying out a fraud on this court.  You know, at

8  this -- as you indicated, I am working with the information

9  provided, and you spoke with the creditor directly, and I

10 would appreciate if I am not personally defamed in this

11 courtroom.

12        The amount due and the payoff, is not in excess of

13 the amount in escrow.  There is money coming back, and I'm

14 sure that Mr. Scholl and I will confirm the payoff amount

15 this afternoon, to include the $500.  And that is all I

16 have, Your Honor.

17        THE COURT:  Right.  And it is what it is.  And

18 again -- so, Mr. Scholl, I get that you think I have a lot

19 of power, but I am kind of restricted, and I don't want to

20 go down the road where, you know, if there is an allegation

21 of fraud, the debtor has remedies in state court.  He can go

22 there.  I just don't have the power to overturn the state

23 court judgment, and the place to assert fraud is there.

24        Again, I have my own thoughts on this, but they're

25 just thoughts that I can't do anything about, because it's

1   not my judgment.  I would hope that if I issued a judgment

2   and the parties took it to state court, that the state court

3   would respect my judgment, and if the parties had any issue

4   with it, they would come back to me.  And I'm going to give

5   that same deference to the state court.

6           The state court issued a decision based on

7   whatever information was provided, and came to some sort of

8   decision.  And if somebody didn't like that decision, they

9   had options, the same way they would have options with me

10  and my judgment.  So that's where we are.

11          The parties -- the settlement is tomorrow.  You

12  can figure out what you want to do with respect to that.

13          Mr. Krik has indicated that -- so, Mr. Scholl,

14  what that means is I will grant in part and deny in part,

15  your motion for reconsideration.  I will deny your motion to

16  the extent it seeks to change any amount of the $500.  I

17  will grant the motion that the debtors -- that the claim

18  should be reduced by the $500 as conceded by the claimant.

19  Okay?  And that's what my order is going to say.

20          Do you guys need that by tomorrow?  I'm not quite

21  sure we can fashion it by then, or I will try, or

22  everybody's comfortable for now with the ruling on the

23  record?

24          MR. KRIK:  Your Honor I am comfortable --

25          MR. SCHOLL:  Okay.  Thank you, Your Honor.

In Re: Gabriel Bravo

```
 1              MR. KRIK:  -- with the ruling on the record.
 2   Thank you.
 3              THE COURT:  Mr. Scholl?
 4              MR. SCHOLL:  Yes.  Yeah, I think that we'll be
 5   able to get the title company to act on that.  I think it
 6   will be sufficient.
 7              THE COURT:  All right.  Well good luck at the
 8   close -- yes, Eileen, I'm sorry --
 9              THE CLERK:  Judge, this is Eileen.  On that motion
10   to reconsider, Mr. Scholl never submitted an order.
11              THE COURT:  Oh, well Mr. Scholl, I would ask you
12   issue an order, and one that provides --
13              THE CLERK:  There is an order on the response
14   filed by Mr. Krik, so --
15              THE COURT:  Well, why don't, Mr. Scholl, you
16   submit an order that says exactly what I just said upon
17   consideration of the motion to reconsider my order of
18   October 18, 2022, and after response by parties and hearing
19   thereon, it is hereby ordered that one, that the motion is
20   granted in part, denied in part.
21              You can put the granted first.  It's granted the
22   claim shall be reduced by $500 and the debtor will be given
23   credit as agreed or conceded by the movant.  The motion is
24   denied in all other respects.  I guess it's just easier to
25   put it in that way.  Okay?
```

```
 1              You can submit that order to Ms. Godfrey.  That
 2   would be helpful.  Okay?
 3              MR. SCHOLL:  All right.  Okay.
 4              MR. KRIK:  Thank you, Your Honor.
 5              MR. SCHOLL:  Thank you.
 6              THE COURT:  Thank you.  Good luck to Mr. Bravo.
 7   All right.  Thank you.  Unless you have anything further,
 8   you may be excused.
 9              MR. KRIK:  Thank you.
10              THE COURT:  Thank you.
11              MR. SCHOLL:  Thank you.  Nothing further.
12          (WHEREUPON, Court was adjourned at 11:13 a.m.)
13                          * * * * *
14
15                  C E R T I F I C A T I O N
16              I, Nancy B. Gardelli, federally approved
17   transcriptionist of Acorn Transcripts, LLC, hereby certify
18   that the foregoing transcript is a correct transcript, to
19   the best of my ability, from the official electronic sound
20   recording of the proceedings in the above-entitled matter.
21
22   ACORN TRANSCRIPTS, LLC
23   /s/ Nancy B. Gardelli        Dated: December 28, 2022
24   Nancy B. Gardelli
25   Court Approved Transcriptionist
```

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

In re:                                                   : Chapter 13

Gabriel Bravo                                            : Bankruptcy 21−12926−mdc

         Debtor(s)

### *NOTICE OF FILING OF TRANSCRIPT*
### *AND OF DEADLINES RELATED TO RESTRICTION AND REDACTION*

A transcript of the proceeding held on November 22, 2022 was filed on January 3, 2023.

The following deadlines apply:

The parties have until 1/10/23 (seven (7) calendar days from the date of filing of the transcript) to file with the court a Notice of Intent to request Redaction of this transcript. The deadline for filing a request for redaction is 1/24/23 (21 days from the date of filing of the transcript).

If a Request for redaction is filed, the redacted transcript is due 2/3/23 (31 days from the date of filing of the transcript).

If no such notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is 4/3/23 (90 calendar days from the date of filing of the transcript) unless extended by court order.

To review the transcript for redaction purposes, you may purchase a copy from the transcriber (contact the court for contact information) or you may view the document at the clerk's office public terminal.

For the Court

Date: 1/3/23                                    Timothy B. McGrath
                                               Clerk of Court

By: <u>John B.</u>
                Deputy Clerk