## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN THE MATTER OF:** | **CIVIL ACTION** <br> **NO.  22-4820** |
| **BRAVO** | **BANKRUPTCY** <br> **NO.  21-12926** |

### MEMORANDUM

**HODGE, J.**                                                        **March 20, 2024**

Presently before this Court is Debtor-Appellant Gabriel Bravo's appeal from the October 18, 2022 Order of Chief United States Bankruptcy Judge Magdeline D. Coleman of the United States Bankruptcy Court for the Eastern District of Pennsylvania, which overruled Bravo's objection to Creditor-Appellee's Proof of Claim, and the November 22, 2022 Order, by the same, which granted in part and denied in part Bravo's motion for reconsideration. This Court has jurisdiction over this bankruptcy appeal pursuant to 28 U.S.C. § 158(a). Having considered fully the briefs and the record on appeal, and having determined that oral argument is not necessary in this case,[1] this Court affirms the Bankruptcy Court Orders of October 18, 2022 and November 22, 2022 for the reasons set forth below.

## I.      BACKGROUND[2]

### A.      Philadelphia Court of Common Pleas Proceedings

Debtor-Appellant Gabriel Bravo ("Bravo") and his wife, Guadalupe Bravo, operated a restaurant in the Italian Market area of Philadelphia. (Dist. ECF No. 8 at 7.) On January 31, 2006,

---

[1] *See* Fed. R. Bankr. P. 8019(b)(3).

[2] This Court's pagination is based upon the CM/ECF docketing system from two cases: (1) *In re: Gabriel Bravo* in the United States Bankruptcy Court for the Eastern District of Pennsylvania, Case No. 21-12926 ("Bankr. ECF"), and (2) *Bravo v. E-Z Cashing, et al.* in the

Bravo took out a $71,250 loan from Interbay Funding, LLC ("Interbay") secured by the Bravos' property at 1122 South 9th Street, Philadelphia, Pennsylvania 19147 ("the Property"). (Dist. ECF No. 2-1 at 56.)

On August 30, 2006, Interbay assigned the loan to Bayview Loan Servicing, LLC ("Bayview"). (Dist. ECF No. 2-1 at 60–62.) On June 3, 2015, Bayview filed a Civil Action in Mortgage Foreclosure in the Court of Common Pleas of Philadelphia County, Pennsylvania ("CCP"). (Dist. ECF No. 2-1 at 255; Dist. ECF No. 8 at 7; Dist. ECF No. 5 at 7.) On November 29, 2016, the CCP issued a Consent Order which granted an *in rem* judgment in mortgage foreclosure against Bravo in the amount of $105,613.62, together with interest accruing at a per diem of $19.83 from November 1, 2016 to the date of a sheriff sale. (Dist. ECF No. 2-1 at 25; Dist. ECF No. 8 at 7; Dist. ECF No. 5 at 7.) Prior to the scheduling of a sheriff's sale, Bayview assigned the mortgage foreclosure to Creditor-Appellee E-Z Cashing, LLC ("E-Z Cashing"). (Dist. ECF No. 2-1 at 266.)

The Property was initially sold to a third party at a sheriff's sale on July 11, 2017. (*Id.* at 264.) On August 21, 2017, however, the CCP vacated the sale upon a Motion to Set Aside by the purchaser. (*Id.* at 178, 266.) Four days before the second sheriff's sale, Bravo filed his Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania, staying the sheriff's sale. (Dist. ECF No. 2-1 at 178; Dist. ECF No. 8 at 7-8; Dist. ECF No. 5 at 7.) A stay was in place over the course of two bankruptcy proceedings;[3] the sheriff's sale was eventually rescheduled for November 2, 2021. (Dist. ECF No. 2-1 at 178, 279.)

---

United States District Court for the Eastern District of Pennsylvania, Case No. 22-4820 ("Dist. ECF").

[3] The bankruptcy proceedings are discussed in more detail infra. (*See* Section I.B.)

On February 23, 2021, E-Z Cashing filed a Motion to Reassess Damages in the CCP. (*Id.* at 177–87.) E-Z Cashing argued that the new damages total should be reassessed at $153,035.25. (*Id.* at 179.)

| | |
|---|---|
| Consent Judgment (ordered 11/29/16) | $ 105,613.62 |
| Interest on Consent Judgment (from 11/1/16) ($19.83 per diem) | $ 31,252.08 |
| **Sub-Total** | **$ 136,865.70** |
| Total Post-Consent Judgment Charges[4] | **$ 19,049.55** |
| **SUB-TOTAL** | **$ 155,915.25** |
| Less Payments Received 4 payments of $720.00 each | ($ 2,880.00) |
| **TOTAL** | **$ 153,035.25** |

(*See id.*) Notably, E-Z Cashing subtracted four payments it conceded that Bravo made of $720.00 each, totaling $2,880.00. (*Id.*)

Bravo responded to the Motion to Reassess Damages by filing an Answer with New Matter. (*Id.* at 78.) In the Answer, Bravo argued that, under *In re Stendardo*, 991 F.2d 1009 (3d Cir. 1999), none of the Post-Consent Judgment Charges asserted by E-Z Cashing could be collected except for post-judgment interest at the Pennsylvania statutory rate.[5] (*Id.* at 83.) In the New Matter accompanying the Answer, Bravo asserted that he actually made six $720 payments during the

---

[4] "Post-Consent Judgment Charges" including (1) an advance of 2017 real estate taxes totaling $2,488.89 plus interest at $0.466 per diem totaling $272.14, (2) insurance costs totaling $4,339.00 plus interest totaling $450.14, (3) attorneys' fees totaling $7,823.78, (4) inspection fees totaling $600, and (5) miscellaneous fees totaling $3,075.60. (Dist. ECF No. 2-1 at 179.)

[5] Bravo asserted that the charges E-Z Cashing requested were not otherwise collectible because (1) Bravo had paid the 2017 real estate taxes and insurance himself, (2) the amount of attorneys' fees demanded was not supported by evidence, (3) the "inspection fees" were grossly excessive, and (4) there were no receipts or descriptions of the "miscellaneous fees" sought by E-Z Cashing. (Dist. ECF No. 2-1 at 83.)

First Bankruptcy, so E-Z Cashing had failed to credit him for two of the six payments. (*Id.* at 80.) Bravo also raised that E-Z Cashing failed to credit him for several other payments made according to his bankruptcy proceedings. (*Id.*) Overall, Bravo argued that the CCP should reassess the damages in an amount not more than $105,681.70. (*Id.*)

| | |
|---|---|
| Consent Judgment (ordered 11/29/16) | $ 105,613.62 |
| Interest on Consent Judgment (from 11/1/16) ($19.83 per diem) | $   31,252.08 |
| **Sub-Total** | **$ 136,865.70** |
| | |
| Less Payments Received | |
| 6 payments of $720.00 each | ($    4,320.00) |
| $1,288.00 per month for 18 months [from October 2018 through March 2020] | ($ 23,184.00) |
| $1,000.00 per month for 8 months [from April 2020 through November 2020] | ($   8,000.00) |
| **Sub-Total** | **($ 35,504.00)** |
| **Altered Sub-Total[6]** | **($ 31,184.00)** |
| | |
| **TOTAL** | **$ 105,681.70** |

(*See id.*)

On June 2, 2021 by Order of Judge Paula A. Patrick, the CCP granted E-Z Cashing's Motion to Reassess Damages. (*Id.* at 23). The CCP issued an order reassessing the damages to $136,865.70. (*Id.*). It did not issue an opinion explaining its decision. (*See id.*) However, the Damages Reassessment Order stated that CCP's decision was made "upon consideration of Plaintiff's Motion to Reassess Damages . . . and the response[.]" (*Id.*) Bravo did not file for reconsideration nor did he appeal the CCP's Damages Reassessment Order. (Dist. ECF No. 8 at 9.)

---

[6] For unknown reasons, Bravo does not include the six payments of $720.00 each ($4,320.00) in his calculation of what the reassessment of damages amount should be. (Dist. ECF No. 2-1 at 80.) Even in his Objection to E-Z Cashing's Proof of Claim, Bravo still only seeks Post-Judgment Payments totaling $31,184.00, which is not inclusive of the $4,320.00 figure. (Bankr. ECF No. 18 at 2; Dist. ECF No. 2-1 at 65.)

4

**B.      Bankruptcy Court Proceedings**

Meanwhile, on October 31, 2017, Bravo filed a Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania ("the First Bankruptcy"). (Dist. ECF No. 8 at 7-8; Dist. ECF No. 5 at 7.) The First Bankruptcy was dismissed on September 6, 2018. (Dist. ECF No. 8 at 8; Dist. ECF No. 5 at 7.) On September 7, 2018, Bravo filed a second Chapter 13 Bankruptcy Petition ("the Second Bankruptcy"). (Dist. ECF No. 8 at 8; Dist. ECF No. 5 at 7.) The Second Bankruptcy was dismissed on November 2, 2020. (Dist. ECF No. 8 at 8; ECF No. 5 at 7.) After the June 2, 2021 Damages Reassessment Order and rescheduling of the sheriff's sale, Bravo filed a third Chapter 13 Bankruptcy Petition ("the Third Bankruptcy") on October 28, 2021. (Dist. ECF No. 2-1 at 3; Dist. ECF No. 8 at 9; Dist. ECF No. 5 at 8.)

Subsequently, on November 1, 2021, E-Z Cashing filed a Proof of Claim ("the Claim") against Bravo, asserting a claim of $139,800.54. (Dist. ECF No. 2-1 at 19-22; Dist. ECF No. 8 at 9; Dist. ECF No. 5 at 8.) E-Z Cashing asserts the Claim was based on the June 2, 2021 Damages Reassessment Order plus interest at six percent since that date. (Dist. ECF No. 8 at 8–9.) On November 19, 2021, Bravo filed an Objection to the Claim ("the Claim Objection") on the grounds that the Damages Reassessment Order did not consider any post-judgment payments that Bravo made to E-Z Cashing ("Post-Judgment Payments"), which Bravo argued it had asserted in the New Matter before the CCP. (Bankr. ECF No. 18; Dist. ECF No. 2-1 at 64.) Bravo asserted that the Post-Judgment Payments totaled $31,284.[7] (Bankr. ECF No. 18 at 2; Dist. ECF No. 2-1 at ECF 65.) Additionally, Bravo asserted that at least an additional $500 should be deducted, because it alleged that E-Z Cashing had agreed to compensate Bravo in that amount for stay violations but

---

[7] The discrepancy of $100.00 is de minimis and is likely the result of scrivener's error.

5

failed to do so. (Bankr. ECF No. 18 at 3; Dist. ECF No. 2-1 at 66.) On December 13, 2021, E-Z
Cashing filed a response to the Claim Objection, arguing that the reassessment of Bravo's damages
was binding on the Bankruptcy Court because Bravo's claim for uncredited Post-Judgment
Payments was already litigated in the CCP. (Bankr. ECF No. 29; Dist. ECF No. 2-1 at 360.)

Following an evidentiary hearing on February 15, 2022, the Bankruptcy Court directed the
parties to submit additional briefing regarding whether the "Post-Judgment Payments issue was
actually litigated before and decided by the [CCP]." (*See* Bankr. ECF No. 106 at 2; Dist. ECF No.
2-1 at 361.) In his supplemental brief, Bravo argued, *inter alia*, that the Bankruptcy Court should
not permit E-Z Cashing to continue engaging in fraudulent conduct if another logical explanation
for the CCP's Damages Reassessment Order exists. (Bankr. ECF No. 64 at 3; Dist. ECF No. 2-1
at 345.) Bravo posited that the only logical conclusion is that the CCP considered post-judgment
payments to be outside of the scope of the damages reassessment process, and as such, the
Damages Reassessment Order cannot be considered a determination of the Post-Judgment
Payments. (Bankr. ECF No. 64 at 4; Dist. ECF No. 2-1 at 346.) Overall, Bravo argues that E-Z
Cashing's claims should be deducted by at least $30,507[8] and the interest should be recalculated.
(Bankr. ECF No. 64 at 6; Dist. ECF No. 2-1 at 348.) In its supplemental brief, E-Z Cashing argued
that the CCP Damages Reassessment Order was the result of both the state court's adjudication of
E-Z Cashing's Motion to Reassess and Bravo's Answer with New Matter. (Bankr. ECF No. 65 at
2; Dist. ECF No. 2-1 at 351.) E-Z Cashing argued furthermore that, because the issue of the
uncredited post-judgment payments was already litigated, the doctrines of res judicata, collateral
estoppel, and *Rooker-Feldman* barred the Bankruptcy Court's reassessment of damages up to the

---

[8] This updated figure is based on the evidence that Bravo presented at the evidentiary
hearing. (*See* Bankr. ECF No. 64 at 2; Dist. ECF No. 2-1 at 344.)

date of the June 2, 2021 Damages Reassessment Order. (Bankr. ECF No. 65 at 2; Dist. ECF No. 2-1 at 351.)

On October 18, 2022, the Bankruptcy Court held that, under the doctrine of res judicata, Pennsylvania claim preclusion applied to bar the Claim Objection. (Bankr. ECF No. 106 at 4; Dist. ECF No. 2-1 at 362.) Furthermore, the Court reasoned that Bravo could have litigated the Post-Judgment Payments in the CCP in connection with the Damages Reassessment Order but failed to do so. (Bankr. ECF No. 106 at 5; Dist. ECF No. 2-1 at 364.) The Bankruptcy Court added that "[w]hether the [CCP] considered and rejected the Post-Judgment Payments, or alternatively did not consider them at all because [Bravo] failed to properly follow Pennsylvania procedure in asserting them, [did] not change the fact that they arose from the same claim and cause of action[.]" (Bankr. ECF No. 106 at 5; Dist. ECF No. 2-1 at 364.)

On October 30, 2022, Bravo filed a Motion for Reconsideration of the Bankruptcy Court's decision to overrule the Claim Objection. (Bankr. ECF No 111; Dist. ECF No. 2-1 at 366.) Bravo argued that the Court neglected to credit Bravo for the $500 payment made to E-Z Cashing after the filing of the Third Bankruptcy. (Bankr. ECF No. 111 at 2; Dist. ECF No 2-1 at 369.) Bravo argued furthermore that res judicata should not apply because where alleged fraudulent activity by a creditor in not crediting payments of a debtor is at issue, courts must refrain from applying res judicata to "serve the ends of the perpetuator [sic] of fraud." (Bankr. ECF No. 111 at 5; Dist. ECF No. 2-1 at 369.)

Following a Reconsideration Hearing on November 22, 2022, the Bankruptcy Court granted Bravo's motion as to the $500 payment he made to E-Z Cashing. (Bankr. ECF No. 118; Dist. ECF No. 2-1 at 381.) The Bankruptcy Court specified that Bravo would be granted the credit "as settlement." (Bankr. No. 118; Dist. ECF No. 2-1 at 381.) The Bankruptcy Court denied the

motion in all other respects "for the reasons stated on the record" of the oral argument. (Bankr. ECF No. 118; Dist. ECF No. 2-1 at 381.) On December 30, 2022, the Bankruptcy Court filed an Order explaining its November 2022 Order in more detail. (Bankr. ECF No. 134; Dist. ECF No. 2-1 at 384.) This timely appeal of the Bankruptcy Court Orders followed. (Dist. ECF No. 1.)

## II.     LEGAL STANDARD

District courts have appellate jurisdiction over final judgments, orders, and decrees of a bankruptcy court. *See* 28 U.S.C. § 158(a)(1). This Court reviews the bankruptcy court's findings of fact under a clearly erroneous standard and its conclusions of law under a *de novo* standard. *In re Sager*, No. ADV. 13-361, 2015 WL 1650654, at *1 (E.D. Pa. Apr. 13, 2015) (*citing In re Sub Micron Sys.Corp.*, 432 F.3d 448, 545 (3d Cir. 2006)). A district court may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand for further proceedings. *See* Fed. R. Bankr. P. 8013.

## III.    DISCUSSION

This case presents two issues on appeal. The first issue is whether the Bankruptcy Court correctly determined that res judicata barred Bravo from arguing that he was entitled to receive credit for payments that he made to E-Z Cashing during the first two bankruptcy proceedings. The second issue on appeal is whether E-Z Cashing's failure to credit payments constituted fraud or improper conduct, such that res judicata should not have been applied by the Bankruptcy Court.

### A.     Res Judicata

The first issue is whether the Bankruptcy Court correctly determined that res judicata barred Bravo from arguing that he was entitled to receive credit for payments that he made to E-Z Cashing during the first two bankruptcy proceedings. This issue is a question of law which the Court will review *de novo*. *See In re Arctic Glacier Int'l, Inc.*, 901 F.3d 162 (3d Cir. 2018), *as*

*amended* (Oct. 24, 2018) (reviewing a bankruptcy court's and district court's application of res judicata *de novo*); *see also In re RBGSC Inv. Corp.*, 253 B.R. 352, 363 n.16 (E.D. Pa. 2000) (reviewing a bankruptcy court's application of res judicata *de novo*). This Court must apply Pennsylvania claim preclusion law to determine the preclusive effect of a Pennsylvania judgment. *See McNasby v. Crown Cork and Seal Co., Inc.*, 888 F.2d 270, 276 (3d Cir. 1989). The invocation of res judicata requires that the two actions at issue share an identity of: "(1) thing sued upon or for; (2) cause of action; (3) persons and parties to the action; and (4) capacity of the parties to sue or be sued." *O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1065 (3d Cir. 1991) (citing *McNasby*, 888 F.2d at 276). Additionally, "[r]es judicata applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995). However, a natural extension of this rule is that res judicata does not apply to claims that could not be litigated. *See Merritts v. Richards*, 62 F.4th 764, 776 n.6 (3d Cir. 2023) (first citing *Balent*, 669 A.2d at 313) ("Another consequence of the inability to adjudicate just-compensation claims in the condemnation action is that those claims are not precluded under Pennsylvania law.").

In the appeal, Bravo argues that the Bankruptcy Court erred in concluding that Bravo's Claim Objection was barred by res judicata because, as Bravo contends, the "thing sued upon" and the "cause of action" in the CCP case are not the same as those in the bankruptcy case. (Dist. ECF No. 5 at 11). Bravo concedes that the parties and their respective capacities are identical, but he argues that the reassessment of damages in state court was distinct from the determination of a proof of claim in a bankruptcy case for the purposes of res judicata. (*Id.* at 14.) Specifically, Bravo argues that the "thing sued upon" and the "cause of action" cannot be said to be the same because bankruptcy courts are "obliged to consider the obligations of the debtor, and the credits to which

the debtor is entitled from the creditor." (*Id.* at 15.) In contrast, Bravo argues that it is likely that the CCP believed its only duty was determining "the gross amount that the Bravos were obliged to pay"—which would explain why the CCP did not credit any payments, not even what E-Z Cashing conceded. (*Id.*) As such, Bravo argues that the Post-Judgment Payments were not actually litigated and, further, res judicata applying to claims that "could have been litigated" only applies when it is the fault of the litigant for not raising a claim, not when it is a court that does not address a claim. (*See id.* at 17 ("What happened here is that the CCP simply failed to rule on an issue which had been adequately and squarely raised before it but which it failed to 'litigate' or decide, for reasons which are unknown and possibly unknowable.").)

E-Z Cashing counters that the Bankruptcy Court did not err in applying the doctrine of res judicata to Bravo's Claim Objection. (Dist. ECF No. 8 at 11.) E-Z Cashing argues that the "thing sued upon, being the payments and amount of the Judgment, were the same as raised in the Claim Objection[.]" (*Id.* at 13.) E-Z Cashing further argues that each element for determining "whether the causes of action are identical for purposes of res judicata" is also met. (*Id.* at 13–14 (citing *O'Leary*, 923 F.2d at 1065) ("[W]hether (1) the acts complained of and the demand for relief are the same; (2) the theory of recovery is the same; (3) the witnesses and documents necessary at trial are the same; and (4) the material facts alleged are the same.").) Regarding whether the Post-Judgment Payments were actually litigated, E-Z Cashing argues that "[t]here can also be no dispute that the factual issues of uncredited payments were submitted for determination, and actually determined, by the state court." (*Id.* at 15.) Further, E-Z Cashing argues that "the Damages Reassessment Order became a final and conclusive order" and Bravo "did not avail himself of any available recourse[.]" (*Id.* at 15–16.)

Upon review, this Court agrees with the Bankruptcy Court. First, this Court finds that there is a shared identity of the thing sued upon or for. In the CCP, E-Z Cashing sought a reassessment of the damages owed to it pursuant to Bravo's default on a loan. In response to the motion to reassess damages, Bravo asserted that his Post-Judgment Payments should be deducted from the amount due. In the bankruptcy court, E-Z Cashing filed a proof of claim based on the judgment it received from the CCP. In response, Bravo filed an objection to the claim, asserting that the same Post-Judgment Payments should be deducted from E-Z Cashing's claim. As such, the Court agrees with E-Z Cashing that the "thing sued upon, being the payments and amount of the Judgment, were the same as raised in the Claim Objection[.]" (*Id.* at 13.)

Second, this Court finds that there is a shared identity of the causes of action. E-Z Cashing asserts the correct test for determining whether the causes of action are identical:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

*O'Leary*, 923 F.2d at 1065 (quoting *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)). Each of these criteria are met. The act complained of is E-Z Cashing's failure to credit Bravo for the Post-Judgment Payments that he made. The demand for relief in both the CCP and the Bankruptcy Court was for the respective court to deduct Bravo's Post-Judgment Payments from the amount of debt due to E-Z Cashing. The theory of recovery is likewise the same, that the debtor is entitled to credit for payments they made to the creditor. The witnesses, documents, and material facts to demonstrate payment are also the same; the presence of this element is obvious in Bravo's argument in that he is raising the same payments from before because he alleges that the CCP did not consider these payments in its reassessment of damages.

Third, this Court finds that the Post-Judgment Payments were actually litigated or could have been litigated. It is clear from Bravo's Answer with New Matter—and Bravo admits (*See* Dist. ECF No. 5 at 17 ("Here, however, the Debtor clearly raised the issue of his payments which had not been credited to the Bravos to the CCP.").)—that the issue of the Post-Judgment Payments was put forth before the CCP for consideration, and this satisfies this Court that the issue of Post-Judgment Payments was actually litigated. *See Abdulhay v. Bethlehem Med. Arts, L.P.*, 425 F. Supp. 2d 646, 656 (E.D. Pa. 2006) (quoting *O'Leary*, 923 F.2d at 1066) ("An issue is actually litigated when it is properly raised by the pleadings or otherwise, and is submitted for determination, and it is determined."). Bravo presumes that "[t]he CCP simply failed to 'actually litigate' the issue of the Bravos' credit for the payments made" because the CCP "believed that its only duty was to determine the gross amount that the Bravos were obliged to pay to EZ on its judgment, without giving any credit for payments made." (*Id.* at 15, 17.) If state courts never consider crediting payments or perhaps cannot consider crediting payments, then this Court would be willing to accept the presumption that the claim was not "actually litigated" and that the CCP did not (because it could not) consider the Post-Judgment Payments. *See, e.g.*, *Merritts*, 62 F.4th at 776 (finding that as a matter of Pennsylvania procedure, "the state-court ruling in the condemnation proceeding did not (and could not) resolve any just compensation claims," and as such, *Rooker-Feldman* and preclusion doctrines could not apply). However, there is no support for such a presumption as state courts may (and have) credited payments to a debtor; though, this Court highlights that in each of the cited instances at least some of the payments were credited by the creditor first. *See, e.g.*, *In re MDC Sys., Inc.*, 488 B.R. 74, 94 (Bankr. E.D. Pa. 2013) (discussing the state court's judgment which adopted the creditor's calculation of unpaid rent reduced by credits to the debtor); *EMC Mortg., LLC v. Biddle*, 114 A.3d 1057, 1059 (Pa. Super. 2015) (ruling

on the trial court's judgment which adopted the creditor's calculation for reassessment of damages, including credits to the debtor). While it is notable that the CCP failed to credit the Post-Judgment Payments raised by Bravo, it is equally notable the CCP did not credit the payments conceded by E-Z Cashing either. (*Compare* Dist. ECF No. 2-1 at 23 (Damages Reassessment Order for $136,865.70), *with* $133,985.70, the amount of reassessed damages if the four payments of $720 each were deducted.) Ultimately, this Court agrees with the Bankruptcy Court's conclusion on this issue: "Whether the Pennsylvania Court considered and rejected the Post-Judgment Payments, or alternatively did not consider them at all because the Debtor failed to properly follow Pennsylvania procedure in asserting them, does not change the fact that they arose from the same claim and cause of action as the Claimant's and could have been litigated in connection therewith." (Bankr. ECF No. 106 at 5.)

Further, this Court rejects Bravo's contention that the application of res judicata to claims that "could have been litigated" only applies when it is the fault of the litigant for failing to raise a claim, and not when it is the result of a court's oversight, because here Bravo's own litigation strategy led to the current procedural posture of this case. Indeed, the CCP's failure to credit Bravo's Post-Judgment Payments could have been litigated on appeal but Bravo inexplicably let his right to appeal lapse. *See EMC Mortg., LLC*, 114 A.3d at 1061 ("Accordingly, the trial court's [reassessment of damages] order constituted a final order and we have jurisdiction to entertain Appellant's appeal."); *see also In re MDC Sys.*, 488 B.R. at 92 ("If the State Court erred, the remedy was to seek reversal on appeal."). Bravo fails to explain why he could not and did not resort to the reconsideration or appeals process, and it perplexes this Court that Bravo failed to take advantage of these remedies. Thus, this Court finds that "could have been litigated" does not end at the trial court level; if a claim could have been appealed but it was not, then it could have

been litigated but it was not. *See Morgan Guar. Tr. Co. of New York v. Mowl*, 705 A.2d 923, 928 (Pa. Super. Ct. 1998) (citing *Laconis v. Burlington County Bridge Commission*, 400 Pa.Super. 483, 583 A.2d 1218 (1990)) ("Where a party fails to appeal a final order, it operates as res judicata on the issues decided.").

Therefore, this Court affirms the Bankruptcy Court as each element of res judicata applies, and as such, Bravo is barred from relitigating the alleged Post-Judgment Payments.[9]

**B.     Fraud or Improper Conduct**

The second issue on appeal is whether the Bankruptcy Court erred in denying Bravo's motion for reconsideration because E-Z Cashing's failure to credit payments constituted fraud or improper conduct, such that res judicata should not have been applied by the Bankruptcy Court. "The standard of review of a bankruptcy judge's denial of a motion for reconsideration is whether the bankruptcy judge abused his discretion." *Marta Group, Inc. v. County Appliance Co., Inc.*, 79 B.R. 200, 205 (E.D. Pa. 1987) (citing *In Re W.F. Hurley, Inc.*, 612 F.2d 392 (8th Cir. 1980)). "Judicial discretion is abused only when the court acts in an arbitrary, fanciful or unreasonable manner or where it uses improper legal standards, criteria or procedures." *In re Merritt*, 555 B.R. 471, 476 (E.D. Pa. 2016), aff'd, 702 F. App'x 90 (3d Cir. 2017) (citing *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 167 (3d Cir. 2001)). "A motion to alter or amend a judgment must

---

[9] In different regards, the conduct of both parties is baffling. There is strong evidence that Bravo made Post-Judgment Payments to E-Z Cashing, and E-Z Cashing even concedes that some payments were made—though there is a great disparity between the alleged payments and the conceded payments. It is perplexing that E-Z Cashing allegedly failed to credit thousands of dollars and instead has allegedly misappropriated these funds. Yet, it is equally baffling that Bravo did not seek reconsideration or an appeal of the CCP's Damages Reassessment Order as soon as Bravo believed that the CCP did not credit any payments. However baffling the action or inaction of the parties, these facts do not, and cannot, change what this Court or the Bankruptcy Court were permitted to rule on. Res judicata precludes the courts from relitigating the Post-Judgment Payments.

be based on at least one of the following three (3) grounds: (1) an intervening change in controlling law; (2) new evidence not previously available; or (3) the need to correct a clear error of law or fact or prevent manifest injustice." *In re Deitch*, 513 B.R. 878, 879–80 (Bankr. E.D. Pa. 2014) (citations omitted). Bravo sought reconsideration based on the third ground that the Bankruptcy Court needed to correct a clear error of law or fact or prevent manifest injustice.

In the appeal, Bravo argues that even if the elements for res judicata were met, E-Z Cashing's conduct by not crediting all of Bravo's payments constitutes fraud, such that res judicata should not apply. (Dist. ECF No. 5 at 20.) In response, E-Z Cashing argues that none of the grounds for amending a judgment are applicable and the Damages Reassessment Order was not obtained through fraudulent means. (Dist. ECF No. 8 at 17–19.)

Upon review, this Court finds that the Bankruptcy Court did not abuse its discretion in denying in part Bravo's motion for reconsideration. This Court agrees that the facts in this matter are distinct from the facts in *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 561–62 (7th Cir. 1999). In *Shorebank*, "the Seventh Circuit found that res judicata did not apply to a state court judgment against a tenant where the landlord had effectively fraudulently induced the tenant not to participate in or defend the action." (Bankr. ECF No. 134 at 4.) In this case, Bravo has not established that the Damages Reassessment Order was procured by fraud. Further, the issue regarding the great disparity between E-Z Cashing's motion for reassessment and Bravo's Post-Judgment Payments was put forth before the CCP made its determination. As such, this Court agrees that "the Pennsylvania Court presumably considered [the Post-Judgment Payments] when issuing the order, [and] there is no basis for asserting that the judgment was procured by extrinsic fraud." (*Id.*)

Therefore, this Court affirms the Bankruptcy Court because the order denying in part Bravo's motion for reconsideration was not arbitrary, fanciful, or unreasonable in any manner.

**IV.     CONCLUSION**

This Court affirms the Bankruptcy Court's Orders of October 18, 2022 and November 22, 2022. An appropriate order follows.


**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**

16